PRO-PER
nistrative Segregation
5 Broder bl. 9-B-14
CA. 94568



FILED
AUG 1 9 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

MMC
530

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF

CALIFORNIA

**MMC**

E-filing     **CV   08      3961**     **(PR)**

NO.

RE ROBERT J ALEXANDER III      } PETITION FOR WRIT
HABEAS CORPUS                  } OF HABEAS CORPUS
            Petitioner.        } MEMORANDUM OF POINTS
                               } AND AUTHORITIES IN
                               } SUPPORT THEREOF

itioner has been unlawfully detained By Region II DAPO Parole
nts; By way of false reports, falsifying documents, and
Entrapment. Their actions being unlawful and non-authorized
justified by governing laws of the U.S. Constitution or
e State of California constitution. By acting outside their
ole Agent authority. Therefore operating as a seperate entity
ilizing Santa Rita Jail as a unlawful detention facility. Further
e Parole Authority; B.P.H & Cal-fap denied me my turn of the
vocation process at the jail. Many of the Valdivia Settlement
-pap attorneys are un-ethically participating in filing my writs.
H. Parole authority has done away with Administrative Remedies
2. County Superior Court, allows for the Attorney General
neglect filling court responses in mandated time-frames
conventing the Cal. Rules of Court in the process.
. County Sheriff's Dept. refuse to process I.F.P. applications.
oes a Pro-Per law-library, copy machine, or type writer exist
0. maintains a computer

# STATEMENT OF FACTS

On 3-21-08 after a Parole Revocation hearing. B.P.H. 'Parole-Authority' dismissed frivolous charges against Petitioner; upon taperecorded hearing with Deputy Commissioner Debra Star. Where it was revealed that Pleasanton Police, and DAPO agent Snyder mis-represented the facts. Resulting in the immediate release without any new conditions from the Parole Authority. On 3-24-08 Petitioner reported to SLD Region II office for initial interview upon release. Where it was discovered that DAPO preemptively altered my special conditions of parole, discharge of parole date, as well as other legal documents. Altogether, violating Due process rights of liberty interest. On 3-26-08, DAPO arrested Petitioner and subjected Petitioner to the custody of Ala. county Sheriff's Dept. for the charge of refusing to sign amended condition of parole. claiming that conditions were amended on 3-21-08 by 'Parole Authority' B.P.H.; D.C. Debra Star. When in fact they were not. Also disregarding the fact that Petitioner check-in and signed initial interview paperwork on 3-24-08. Had that been un-true Petitioner would've been

tinued:

After being in custody for two weeks, DAPO charges Petitioner with additional new charges. At the Probable Cause hearing with D.C. Cone, 1) Refusal to Sign COP (2) battery on Spouse (3) First degree burglary. D.C. Cone makes recommendation for a Revocation hearing. On 7-24-08 Petitioner files a Petition for Writ of Habeas Corpus in the Ala. County Superior Court. There-fore Controlling case Docket # H25646 Attmp. murder is back in the jurisdiction for the judicial review of petition. On 7-29-08, the 'Parole Authority' BPH, disregarded this fact, and revoked Parole Status for 11 months (flat-time) & an additional year of parole. Along with officially amending Condition of Parole to have no contact with my common law wife & mother of child, whom I have been living with for some time. On May 6, 2008, Superior Court of California, Alameda County, ordered the Respondent to file an informal response to Petitioner Petition. Respondent's informal response due May 27, 2008. On May 22, 2008, Petitioner filed a suplemental writ, raising additional Challenge to Revokation hearing. As well as Ethics violations in regards to (CAL PAP) Attorney Mark Cumming, Parole Authority, Due process violations, raising Ethical review to the Court & State bar Association. Including area other, in re. ROBERT ALEXANDER, # H25646. Therefor failed to adress pertenant issues raised in both petitions Those issues being, witness tampering, falsifying documents

On June 17, 2008, plaintiff, a California prisoner incarcerated at Santa Rita county Jail, and proceeding pro se, filed civil rights action pursuant to 42 U.S.C. § 1983. No. C 08-2987 MM ROBERT J. ALEXANDER, V. STATE OF CALIFORNIA, et al. Note: Both civil actions filed in the U.S. District Court for the Northern District of California. The Informal response filed by Respondent on June 20th, 2008 was late not making the deadline for June 18, 2008 Pursuant to the June 2, 2008 court order by the Honorable Larry J. Goodman. Violation of Cal. Rules of Court, rule 8.55.1(b)(2),(h). However the petition was DENIED. Disregarding the Cal. rules of court. and Mandatory language of (SHALL) in both court orders. 1) May 6th, 2008: due date May 27th, 2008 And order June 2, 2008: due date June 18, 2008. In the meantime, numerous I.F.P. applications have been deficient due to ALA. county Sheriffs Dept. deputies having no regard for the U.S. District court order Dated July 17, 2008. Since then Plaintiff, has been rehoused in Administrative Segregation, without an explanation as to why. The facts evolving both civil complaints evolve around the issues in this Federal writ. However I the Petitioner & Plaintiff do not have access to retain copies of Petitions filed in both State & U.S. District Courts. As for I.F.P. Applications, it is addressed that there is an ongoing issue evolving that as well. Maxine M. Chesney United States District J.J.

## PAROLE AUTHORITY

BPT; Administrative board responsible for Setting parole dates, establishing parole length and conditions. Persons under BPT jurisdiction are adult felons committed by Superior Courts to the Director of Corrections under Penal code Section 1168 and 1170. BPT, actions include parole revocation decisions, denial of parole, Suitability for life prisoners, or parole conditions set by BPT. CDCR is responsible for Some other aspects of parole, including determining location of parole and most parole Conditions, and Such actions Should be appeald using the 602 inmate appeal process. However, a prisoner or parolee who is challenging an action of the BPH, does not generally need to exhaust administrative remedies. As of May 2004, the BPH does not have any general administrative appeal process. §2245 GENERAL *Title 15 CRIME PREVENTION AND CORRECTIONS*; At all hearings, prisoners located in California Shall have the rights enumerated in 2245 through 2255. *The prisoner is responsible for bringing to the attention of the hearing panel any issues pertaining to his rights under this article or any failure to comply with these rules.* §2249; *A prisoner Shall have the right to present relevant documents to the hearing Panel. They may cover any relevant matters, Such as mitigating circumstances, disputed facts or release planning.* §2235; No decision Shall be based upon information that is not available

# CONTENTS

## I

Petitioner contends that; DAPO Agents are in error to insinuate that they are 'Parole Authority'. Therefore they did not have the authority to preempt B.P.H. & CDCR, by altering gov. documents being the conditions of Parole. § 104.02 Parole Administration; The Parole Authority Grants, Suspends, and Revokes Parole for State Prisoners. County Boards of Parole Commissions Regulate Parole for Persons in city & county Custody.[1] Parole Authority; For purposes of Penal Code Sections 3000 et seq., the Board of Parole Hearings: BPH. (Formerly the Board of Prison Terms) is considered the "Parole Authority" The Parole Authority reviews a prisoner's request for reconsideration of denial of good-time credit, setting of the length of conditions of Parole and the Suspension or revocation of Parole.

## II

§ 104.01 Definition & Purpose; Parole is a period of Conditional Liberty Granted in order to Facilitate the Prisoner's Rehabilitation. Petitioner has been denied this Liberty & right to a review of the State's parole procedures under the Due Process Claus. A parolee has a liberty interest in Parole when it is mandated by statute on certain conditions, and is entitled to a review of the State's parole procedures under the due process clause. By DAPO Agents violating the 'Revocation Extension' Process which affects the state of liberty of parole of

If you refuse to sign your 'Parole conditions' or refuse to sign forms related to P.C. Section 290 registration requirements. This is called;

- - - {Revocation Extension.} - - -

In order to extend your revocation term, the BPH has to provide Prisoner with notice of the charges against you, and the opportunity for a hearing on those charges. The state Prisoner is provided an attorney if they are facing a revocation extension. The attorney will help them understand the process, and decide whether the Prisoner should accept the BPH.'s Revocation Extension Assessment {or screening offer} The MAXIMUM time you can have your Parole Extended is 180 days. However!!! § 104.05 Express conditions(a) III Authority to impose conditions (B) Meeting to set conditions; Parole normally involves the requirement that the parolee abide by certain rules as a condition of his or her release from prison The California Board of Parole Hearings has discretion to impose such conditions on any prisoner in granting him or her Parole. It must also review prisoner's request for reconsideration of Parole conditions. AT LEAST 30 DAYS BEFORE his or her good-time release date, the date on which a prisoner who has accumulated the maximum number of good-time & work-time credits would be released, the Dept. of Corrections & Rehabilitation must meet with the prisoner and inform him or her, using guidelines set by the 'Parole Authority', of the conditions of Parole. DAPO, had disregarded this factual guidlines. Also the fact that

## IV

According to DAPO documentation, the agents have changed my Discharge of Parole date numerous times; as well they have altered it's Conditions of Parole, and convictions information. On one document DAPO agent Snyder not only altered my initial Parole date year from 2005 to 2006. And also wrote as fact; that since then has had 4 Four new Convictions! when in fact the guidline instructions on every [CDC 1521(B)] Summary of Parole Adjustment (EVALUATION) is to cover the period from date of last release to current report. Including Positive and negative factors of this release and community programs available in lieu of revocation etc. DAPO agents have also altered the Last Revocation Release date as well as Initial Parole Date. (See. Exhibits) CDC 1502 (B) Charge reports also all CDC 1521-B Summary of Parole Adjustment report Special Conditions of Parole Sections. They have been altered every which way since DAPO agent Snyder has been my parole agent.

When Petitioner filed a Petition for the Writ of habeas corpus on 4-24-08; Therefore placing the jurisdiction of the controlling case # H25646 subject to the committing Superior Court for Review. That being ALA. County Superior Court, Dept # 9 honorable Judge Goodman Prior to the Revocation hearing on April 29th, 2008. The Parole Authority disregarded this filing & pursued to revoke Parole Status for 11 months & extend 1 yr. Parole. Once the controlling case # H25646 was back on the committing court docket for review. The Parole Authority Should've postponed all revocation proceedings. To do so, in turn Supersedes the judicial authority of the Superior Court. That would in turn violate Ex Post Facto Sentencing Scheme. The persons under the Parole Authority Jurisdiction are adult felons committed by Superior Courts to the Director James Tilton, Now Matthew Cate under P.C. §§ 1168 and 1170 Sentencing Scheme. The rules regarding the effect of Sentencing on a prisoners parole release date are: A person Sentenced to imprisonment for a year and a day, Sentenced under P.C. § 1170 (determinate Sentencing law) for a crime committed on or after July 1, 1977, or Sentenced under Penal Code Section 1168 (indeterminate Sentencing law) for

The MAXIMUM parole term for these persons is three years, except that for a person sentenced for certain sex crimes offenses, the maximum parole period is 5 Five years. However, the 'Parole Authority' may for good cause, waive parole and discharge the inmate from custody at the time set for Parole. DAPO agents violated Due Process, by fraudulently altering my file with false conditions & dates that wasn't amended by BPH, Parole Authority. Deputy Commissioner Debra Starr, dismissed all charges and released me forthwith on 3-21-08. On March 24th, 2008 I reported and was processed at DAPO unit office by Unit Supervisor Agent BenT. where I signed my Parole conditions and submitted a drug screen test. I was therefore in compliance at the time of the unlawful arrest by DAPO agents on March 26th, 2008. The unlawful system of relief adopted by the California Dept. of Corrections & BPH 'Parole Authority, Put into effect Due to a stipulated order for Permanent Injunctive Relief, by the federal court by way of the Valdivia v. Schwarzenegger Settlement. In which DAPO & Parole Authority have made a way to circumvent the 6th & 14th Constitutional Right to Due Process. Eliminating any way for inmate appeals challenging the Revocation actions

The Parole Authority, BPH/CDCR have not been in compliance with the 'Stipulated order for Permanent Injunctive Relief' The Deputy Commissioners always interpreted this order. They failed to dismiss my charges when there was a definite lack of probable cause to proceed, and lack of the authority for DAPO agents to have me unlawfully detained. Even when they illegally tried to force me to sign a fraudulent Amendment, non BPH. or CDCR Authorized Special condition of Parole. Further once at the Revocation Hearing; Deputy Commissioner failed to acknowledge the fact that I had a right to cross examin the Agent of Record: Agent Snyder. Who was Subpoenad to appear. Agent Snyder failed to comply with the order to appear. Niether did Deputy Commissioner comply with the basic standards of being neutral & detached, fair & impartial. Deputy Commissioner James Martin was using agresive tone towards myself and the witnesses. He disregarded direct evidence that verifys witness tampering by DAPO Agent Snyder. Being overtly partial toward DAPO. Even going off record for 30 min. To allow DAPO agents to review my file and come up with a Satisfactoty reason he could use to justify them preempting the BPH. Parole Authority. He had a disregard for the 'State witnesses' Sworn statements and notorized affidavids describing foul play by DAPO. And inquiring how to make formal complaints. All is on record on the March 21, 2008 Revocation & April 29, 2008 Revocation

# PRAYER FOR RELIEF

Petitione is without remedy save by writ of habeas corpus.

WHEREFORE, petition prays the court:

ISSUE A WRIT OF HABEAS CORPUS;
DECLARE THE RIGHTS OF THE PETITIONER;
REVERSE The good-cause finding of D.C. Martin;
subpeana the court record & petitions filed in lower court;
subpeana the records & tape recording of BPH Revocation;
appoint counsel award reasonable attorney fees; and
issue an immediate order of release pending proceedings.

DATED: 8-9-08

Respectfully Submitted,

ROBERT J. ALEXANDER III

CDC# P07071
PBN# AYC-552

Robert Joseph Alexander III, State:

the petitioner in this action. I have read the
going petition for writ of habeas corpus and the
is stated therein are true of my own knowledge,
pt as to matters that are therein stated on my
information and belief, and as to those matters I
ve them to be true.

clare under penalty of perjury that the
going is true and correct and that this
ration was executed at Dublin, CA on

Robert J. Alexander III

# BACKGROUND

In 1997, October 30th, Petitioner was charged with attempted murder. In 1998, Sept 11 Alameda County Superior Court. The honorable Dean Beaupre Dismissed those charges. However District Attorney had refiled new charges; the same charges prior to the dismissal; in Hayward municipal court. Appearing as the prosecution in both court rooms. His name being Robert Warren. Petitioner being Pro-Per. After the dismissal in Superior court-Oakland: First Docket #. Petitioner; Plea bargained to a mid-term 6 year assault with a deadly weapon & 3yr. enhancement for great bodily injury. Petitioner was sentenced in the Hayward Municipal court to a total of 9yrs. 85% with 3yrs. Parole. Petitioner paroled in December 2005, and has not been back to Prison since. Though he has been C.O.P. Violated by DAPO Numerous times within the last year. Some violations frivolous mostly being ajudicated in 30 days. Majority of the time DAPO charges being reduced, Dismissed, inaccurate and excessive in totality. Petitioner has maintained empl

# POINTS OF AUTHORITIES

Condition of Parole: Specific conditions regarding behavior during Parole

A parolee may be detained on one ground but have his or her parole revoked on another. However, the facts underlying the revocation must, however be determined at a preliminary hearing followed by a full revocation hearing. These facts must constitute good cause for revocation; a mere suspicion of complicity in the commission of an offense is not sufficient. Morrisey V. Brewer (1972) 408 U.S. 471, 483-489, 92 S.Ct. 2593, 33 L. Ed. 2d 484; See § 10:4.23 [2],[3].

FITH AMENDMENT due process requires that the parolee be accorded certain guarantees, including the right to a hearing. The parolee must have an informal fact-finding hearing, in the nature of a preliminary hearing, to determine whether the conditions of parole have, in fact, been violated. CALIFORNIA DEPT. OF CORRECTIONS & REHABILITATION D.O.M. Chpter. 8 - ADULT PAROLE OPERATIONS ARTICLE 3 ARREST AND PAROLE HOLD; 81030.1 Policy; A Parolee Shall be arrested and a 3056 parole hold placed when there is reasonable cause to believe a parolee has violated the conditions of parole. A parolee will not be arrested either as punishment or as a means as installing fear. Physical restraint may only be used on an inmate or parolee to make an arrest, Prevent an escape or prevent injury to persons or damage to property. A parolee hold shall be maintained only when it is determined that the Parolee's release from custody will pose a serious risk to the safety of other persons, the safety of the parolee the security of property or when ...

In Re Martinez (1970) 1 Cal. 3d 641, 650, 83 Cal. Rptr. 382, 463 P.2d 734, cert denied 400 U.S. 851 (1970) The Parole Authority may consider and act on a parolee's voluntary statement or confession made without the parolee first being appraised of his or her Miranda rights. At the trial on the offense constituting the Parole Violation, However, evidence siezed in violation of the parolee's constitutional rights will not be admissable. Due Process Clause of the 14th Amendment of the U.S. Constitution aplies to parole revocation proceedings. In some circumstances issues that were not previously addressed in the trial court and/or on direct appeal can be raised in a habeas petition as a claim of ineffective assistance of Counsel. (In re Seaton (2004) 34 Cal. 4th 193 [17 Cal. Rptr. 3d 633] In re Gay (1998) 19 Cal. 4th 771 [80 Cal. Rptr. 2d 765; In re Harris (1993) 5 Cal. 4th 813 [21 Cal. Rptr. 2d 373.

Title 15 §10422 Grounds for Revocation; Parole cannot be revoked without cause; It may be revoked for violation of a condition of Parole or for commission of a crime, even if the offense precede the granting of Parole, Penal Code §3063. In re Silverstien (1942) 52 Cal. App. 2d 725, 726-727, 126 P.2d 962, See also In re Naito (1986) 186 Cal. App. 3d 1656, 1661-1662, 231 Cal. Rptr. 506 (15 Cal. Code Reg. §2615 (a)(7), requiring parole officer to report parolee behavior exhibiting mental disorder, is constitutional and does not amount to unreasonable condition of Parole.) In re Melendez (1974) 37 Cal. App. 3d 967, 974-975, 112 Cal Rptr. 755 In re Tobin (1933) 130 Cal. App. 371, 372-374, 376, 20 P.2d 91 (Parolee discovered to have altered prison records. Morrisey v. Brewer (1972) 4 ...

[Williams v. Taylor (2000) 529 U.S. 362, 120 S.ct 1461.
Ed.2d 389] Federal courts have an independent respons-
ibility to interpret federal law. However, federal courts
may not grant a habeas petition on a claim that has
been denied in State court, unless the State court
decision was (1) Contrary to or involved an unreasonable
application of clearly established federal law as determined
by the United States Supreme court; or (2) was based
on an un-reasonable application of the facts in light
of the evidence. 28 U.S.C. §2254; Baker v. City of Blaine
(9th Cir. 2000) 205 F.3d 1138; Moore v. Calderon (9th circuit
1997) 108 F.3d 261. Peterson v. Lampert (9th Cir. 2003) F.3d
1073. A prisoner who is challenging a conviction or sentence
and who may someday want to raise those issues in
Federal Court, should make sure the State habeas
petition preserves the federal; Citation of federal
statutes, the U.S. Constitution or decisions of
federal courts are also acceptable ways to
make clear the federal nature of the claim.
In re Roberts (2004) 36 cal. 4th 575 (1 cal. Rptr 3d 458)
California Rules of court (CRC), rule 4.551 (a)(1)
when a prisoner wants to add more information-
particulary in a case involving prison or parole conditions
he or she should also submit a seperate petition and
memorandum of Points & Authorities. Documents and
sworn Statements of Supporting witnesses should
also be attached to the petition as exhibits.
Petitioner was Denied his due process Rights under
Wolff v. mcdonell (1974) 418 U.S. 539 Penal Code Section 2932
Subdivision (c) (3) and Title 15, cal. Admin. Code Section
3315. Ponte v. Rea K (1985) 105 S.ct. 2192, 2201. The court further
held that the Due process of the 14th Amendment does
require prison officials to state their reas...

Penal Code Section 118c, Perjury Section § 43
Police False Report. Penal code Section 39
Gov. Code of Function Duty and Responsibility
U.S. Constitutional Right to Petition the Govern-
ment for Redress of Grievance.

A prisoner is not required to accept any
condition of Parole imposed on Parole
  Penal Code § 2962, People v. Anzalone (1999) 19 Cal
4th 1074, 81 Cal. Rptr. 2d 315, 969 P.2d 160.
People v. Kocincac (2005) 29 Cal. 4th 1610, 131
Cal. Rptr. 2d 477, 67 P.3d 700 on Federal
habeas corpus, If the Federal court finds
that recision was without good cause and that
the prisoner is entitled to relief, and the time
in which both the original parole date and the
parole period to follow have long since passed,
the prisoner will be entitled to out right
release as relief without any period of parole.>
Penal Code 3047, 3063. [To] hold that the due Process
clause confers a circumscribed right on the inmate
to call witnesses at a disciplinary hearing and then
conclude that no explanation need ever be voiced
for the denial of that right... Would change an
admittedly circumscribed right into a privilege
conferred in the unreviewable discretion of
the disciplinary board. We think our holding in
Wolff, Supra, meant something more than that
'Ponte v. Real, Supra, at p 2197." "the doctrine of exhaustion
of administrative remedies has not hardened into
inflexable dogma. Ogo Associates v. City of Torrance (1974)
37 Cal. App 3d 830, 834 [112 Cal Rpt. Th

Pursuit of the Remedy would be Futile; In re Dexter (1979) 25 Cal. 3d 921 [160 Cal. Rptr. 118]; In re Thompson (1985) 172 Cal. App. 3d 256, 262-263 [218 Cal. Rptr. 192]; In re Reina (1985) 171 Cal. App. 3d. 638, 642 [217 Cal. Rptr. 535]; but see In re Serna (1978) 76 Cal. App. 3d. 1010 [143 Cal. Rptr. 350], or delay would result in irreparable injury; In re Serna (1978) 76 Cal. App. 3d. 1010, 1015-1016 [143 Cal. Rptr. 350] (Stephens J. disenting). A court has discretion to hear the case without requiring exhaustion of administrative remedies. Ultimately, the require- ment of exhausting administrative remedies Should not apply when "INJUSTICE MIGHT OTHERWISE RESULT; Greenblat V. Munro (1958) 161 Cal. App. 2d 596, 606. Penal Code § 3041. dicery; See In re Sturm (1974) 11 Cal. 3d 258, 272-273, 113 Cal. Rptr. 361, 521 P.2d 97; Due Process violated when denials of parole were discussed in not hearing interviews with counselor, but prisoner did not learn real reason for denial until he retained counsel); The purpose of Parole is priciarily rehabilitative, A prisoner is allowed to live outside prison subject to certain conditions in order to facilitate his or her reintigration into society. In short, given hope of limited freedom outside prison has a motive for good conduct. In addition, parole serves to alleviate the cost to society a... keeping... state... In addition, ur] decisions have respected the private realm of family life which the State cannot enter.

STATE OF CALIFORNIA
**CHARGE REPORT**
CDC 1502-B (08/05)

4/4

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DISTRIBUTION
ORIGINAL – C-FILE
1ST COPY – FIELD FILE
2ND COPY – PAROLEE

**REPORT TO:**  ☒ **BOARD OF PAROLE HEARINGS**

| CDC NUMBER | NAME: (LAST, FIRST, MI) | | NAME BOOKED AS | REGION/UNIT |
|---|---|---|---|---|
| P07071 | ALEXANDER, ROBERT | | SAME | II-SLD |

| ARREST DATE | ARRESTING AGENCY | BPH REFERRALS | | BOOKING NUMBER AND/OR LOCATION |
|---|---|---|---|---|
| 3-26-08 | DAPO | ☒ MANDATORY ☐ NON-MANDATORY | | ALACOJ AYC552 |

| ARREST CODE * | * ARREST CODES | | | |
|---|---|---|---|---|
| A | A    DAPO STAFF ALONE<br>AB   DAPO ASSISTED BY LAW ENFORCEMENT AGENCY | B    LAW ENFORCEMENT AGENCY ALONE<br>D    LAW ENFORCEMENT AGENCY WITH INFORMATION FROM DAPO | | |

| HOLD DATE | DISCOVERY DATE | HOLD REMOVED DATE | AGENT OF RECORD | CONTROLLING DISCHARGE DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|---|---|---|---|
| 3-26-08 | 3-26-08 | N/A | SNYDER | 2-25-09 | 1-10-09 | ☐ |

| CHARGES AND CODES | CHARGES AND CODES |
|---|---|
| C6: REFUSAL TO SIGN COND. OF PAROLE (996) | |
| 1. | 4. |
| 2. | 5. |
| 3. | 6. |

ATTORNEY COPY

| REASON FOR RETAINING PAROLE HOLD. PAROLEE DANGER TO | | DATE COPY GIVEN | NAME PERSON NOTICING PAROLEE |
|---|---|---|---|
| ☒ ABSCOND   ☒ SELF   ☐ PROPERTY – OTHERS   ☐ SAFETY – OTHERS | | | |

**SUPPORTING EVIDENCE:**

**CHARGE 1:** On 3-21-08, Subject's conditions of parole were amended to include a no contact, without prior written approval from DAPO, with Sevon Atias. On 3-26-08, Subject reported to the parole office as instructed and refused to sign amended C.O.P. Subject was taken into custody.

PAROLE AGENT'S RECOMMENDATION:

Retain hold.

| | PAROLE AGENT'S SIGNATURE | DATE |
|---|---|---|
| | J. Snyder | 3-26-08 |

| UNIT SUPERVISOR'S ACTION | | | | | |
|---|---|---|---|---|---|
| ☒ DECISION | ☒ REVIEW | ☒ RETAIN HOLD | ☐ RELEASE HOLD AS OF (DATE): | | ☐ CANCEL WARRANTS – WANTS |
| ☐ CONTINUE ON PAROLE | ☐ CONTINUE IN OUT-PATIENT STATUS | ☐ *DISCHARGE EFFECTIVE DATE: | | | ☐ RETAIN ON PAROLE |
| ☐ REINSTATE ON PAROLE AS OF (DATE) | ☐ TIME LOSS ☐ NO TIME LOSS | ☐ SUSPENDED/REINSTATE IN OPS AS OF (DATE) | ☐ REFER TO BPH | ☒ INVESTIGATE, SUBMIT APPROPRIATE REPORT BY (DATE) 4-4-08 | |
| SPECIAL CONDITION(S): | | | | ☐ ADD | ☐ DELETE |

| UNIT SUPERVISOR'S COMMENTS/RECOMMENDATION | | |
|---|---|---|
| ☒ I HAVE LOOKED AT THE INFORMATION. I BELIEVE THERE IS PROBABLE CAUSE TO MAINTAIN THE PAROLE HOLD | | |
| Retain Hold, Refer to BPH | | |
| | UNIT SUPERVISOR'S SIGNATURE | DATE |
| | J. BENT | 3-2 |

| PAROLE ADMINISTRATOR'S COMMENTS/DECISION | | |
|---|---|---|
| ☐ REFER TO BPH | ☐ *DISCHARGE EFFECTIVE DATE | FIELD ADMINISTRATOR'S SIGNATURE | DATE |

**BOARD OF PAROLE HEARINGS**
DECISION PROCESSING AND SCHEDULING UNIT
P.O. Box 4036
Sacramento, CA 95812-4036



April 9, 2008


Mr. Mark Demming, Attorney at Law
5414 Miles Avenue
Oakland, CA 94618


RE: Alexander, Robert - P07071

Dear Mr. Demming:

This will acknowledge the request to the Board of Parole Hearings concerning the
hearing held on April 29, 2008.

Enclosed is a copy of the above requested revocation hearing tape.

Sincerely,


Danny Davis, for
Eleanor Sandoval
Office Service Manager I

Enclosure

STATE OF CALIFORNIA
**CHARGE REPORT**
CDC 1502-B (08/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DISTRIBUTION
ORIGINAL – C-FILE
1ST COPY – FIELD FILE
2ND COPY – PAROLEE

**REPORT TO:** ☒ **BOARD OF PAROLE HEARINGS**

| CDC NUMBER | NAME (LAST, FIRST, MI) | NAME BOOKED AS | REGION/UNIT |
|---|---|---|---|
| P07071 | ALEXANDER, ROBERT | SAME | II-SLD |

| ARREST DATE | ARRESTING AGENCY | BPH REFERRALS | | BOOKING NUMBER AND/OR LOCATION |
|---|---|---|---|---|
| 2-16-08 | PLEASANTON PD | ☒ MANDATORY  ☐ NON-MANDATORY | | ALACOJ AYC552 |

| ARREST CODE | * ARREST CODES | | |
|---|---|---|---|
| B | A. DAPO STAFF ALONE  AB  DAPO ASSISTED BY LAW ENFORCEMENT AGENCY | B  LAW ENFORCEMENT AGENCY ALONE  D  LAW ENFORCEMENT AGENCY WITH INFORMATION FROM DAPO | |

| HOLD DATE | DISCOVERY DATE | HOLD REMOVED DATE | AGENT OF RECORD | CONTROLLING DISCHARGE DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|---|---|---|---|
| 2-16-08 | 2-16-08 | N/A | SNYDER | 5-16-09 | 1-10-09 | ☐ |

| CHARGES AND CODES | CHARGES AND CODES |
|---|---|
| C4: BATTERY ON SPOUSE (455) | 4. |
| 1. | 5. |
| 2. | 6. |
| 3. | |

REASON FOR RETAINING PAROLE HOLD;  PAROLEE DANGER TO
☒ ABSCOND   ☐ SELF   ☐ PROPERTY – OTHERS   ☒ SAFETY -OTHERS    | DATE COPY GIVEN | NAME OF PERSON NOTICING PAROLEE

**SUPPORTING EVIDENCE:**

CHARGE 1:  On 2-16-08, Subject was arrested by Pleasanton PD for the above charge.

FEB 2 8 2008

PAROLE AGENT'S RECOMMENDATION:

Retain hold.

| | PAROLE AGENT'S SIGNATURE  J. Snyder | DATE  2-19-08 |
|---|---|---|

UNIT SUPERVISOR'S ACTION
☒ DECISION   ☐ REVIEW   ☒ RETAIN HOLD   ☐ RELEASE HOLD AS OF (DATE):   ☐ CANCEL WARRANTS – WANTS
☐ CONTINUE ON PAROLE   ☐ CONTINUE IN OUT-PATIENT STATUS   ☐ *DISCHARGE EFFECTIVE DATE:   ☐ RETAIN ON PAROLE
☐ REINSTATE ON PAROLE AS OF (DATE):   ☐ TIME LOSS / NO TIME LOSS   ☐ SUSPENDED/REINSTATE IN OPS AS OF (DATE):   ☐ REFER TO BPH   ☒ INVESTIGATE, SUBMIT APPROPRIATE REPORT BY (DATE) 2-26-08
☐ SPECIAL CONDITION(S)   | ☐ ADD   ☐ DELETE

UNIT SUPERVISOR'S COMMENTS/RECOMMENDATION
☐ I HAVE LOOKED AT THE INFORMATION  I BELIEVE THERE IS PROBABLE CAUSE TO MAINTAIN THE PAROLE HOLD

| | UNIT SUPERVISOR'S SIGNATURE  K. Fitzpatrick | DATE  2-19-08 |
|---|---|---|

PAROLE ADMINISTRATOR'S COMMENTS/DECISION

| ☐ REFER TO BPH | *DISCHARGE EFFECTIVE DATE | FIELD ADMINISTRATOR'S SIGNATURE | DATE |
|---|---|---|---|

STATE OF CALIFORNIA
**CHARGE REPORT**
CDC 1502-B (08/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DISTRIBUTION
ORIGINAL - C/FILE
1ST COPY - FIELD FILE
2ND COPY - PAROLEE

**REPORT TO:** ☒ **BOARD OF PAROLE HEARINGS**

| CDC NUMBER | NAME (LAST, FIRST, MI) | NAME BOOKED AS | REGION/UNIT |
|---|---|---|---|
| P07071 | ALEXANDER, ROBERT | SAME | II/SAN LEANDRO |

| ARREST DATE | ARRESTING AGENCY | BPH REFERRALS | | BOOKING NUMBER AND/OR LOCATION |
|---|---|---|---|---|
| 12-12-07 | PLEASANTON POLICE DEPT | ☒ MANDATORY  ☐ NON-MANDATORY | | AYC552/SANTA RITA |

| ARREST CODE * | * ARREST CODES | | | |
|---|---|---|---|---|
| B | A    DAPO STAFF ALONE<br>AB  DAPO ASSISTED BY LAW ENFORCEMENT AGENCY | | B   LAW ENFORCEMENT AGENCY ALONE<br>D   LAW ENFORCEMENT AGENCY WITH INFORMATION FROM DAPO | |

| HOLD DATE | DISCOVERY DATE | HOLD REMOVED DATE | AGENT OF RECORD | CONTROLLING DISCHARGE DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|---|---|---|---|
| 12-12-07 | 12-12-07 | N/A | FITZPATRIC | 3-25-09(PTS) | 11-16-08 | ☐ |

| CHARGES AND CODES | CHARGES AND CODES |
|---|---|
| 1. ABSCONDING PAROLE SUPERVISION (021) | 4. |
| 2. | 5. |
| 3. | 6. |

| REASON FOR RETAINING PAROLE HOLD / PAROLEE DANGER TO | DATE COPY SERVED/MAILED TO NOTICING PAROLEE |
|---|---|
| ☒ ABSCOND  ☐ SELF  ☐ PROPERTY – OTHERS  ☒ SAFETY -OTHERS | DEC 2 4 2007   SANTA RITA D.R.U. |

**HIGH CONTROL CASE**

**CHARGE 1:** On 11-16-2007 The Board of Parole hearings acted on a miscellaneous Decision and Suspended the Subject's parole effective 11-19-2007. The Subject was arrested by Pleasanton Police Department on 12-12-2007.

PAROLE AGENT'S RECOMMENDATION:
Retain Parole Hold, Subject is a threat to abscond parole supervision.

| PAROLE AGENT'S SIGNATURE | DATE |
|---|---|
| *(signature)* C. Jobson | 12-12-07 |

| UNIT SUPERVISOR'S ACTION | | | |
|---|---|---|---|
| ☒ DECISION | ☐ REVIEW  ☒ RETAIN HOLD  ☐ RELEASE HOLD AS OF (DATE) | | ☒ CANCEL WARRANTS / WANTS |
| ☐ CONTINUE ON PAROLE | ☐ CONTINUE IN OUT PATIENT STATUS | *DISCHARGE EFFECTIVE DATE | ☐ RETAIN ON PAROLE |
| ☐ REINSTATE ON PAROLE AS OF (DATE) | ☐ TIME LOSS  ☐ NO TIME LOSS  ☐ SUSPENDED/REINSTATE IN OPS AS OF (DATE) | ☐ REFER TO BPH | ☒ INVESTIGATE, SUBMIT APPROPRIATE REPORT BY (DATE) 12-19-2007 |
| SPECIAL CONDITION(S) | | | |
| ☐ | | ☐ ADD | ☐ DELETE |

UNIT SUPERVISOR'S COMMENTS/RECOMMENDATION
☒ I HAVE LOOKED AT THE INFORMATION  I BELIEVE THERE IS PROBABLE CAUSE TO MAINTAIN THE PAROLE HOLD
Retain Parole Hold. Subject is a threat to Abscond.

| UNIT SUPERVISOR'S SIGNATURE | DATE |
|---|---|
| K. Fitzpatrick (AUS) *(signature)* | 12-12-07 |

PAROLE ADMINISTRATOR'S COMMENTS/DECISION

| ☐ REFER TO BPH | ☐ *DISCHARGE EFFECTIVE DATE | FIELD ADMINISTRATOR'S SIGNATURE | DATE |
|---|---|---|---|
| | | | |

STATE OF CALIFORNIA
**CHARGE REPORT**
CDC 1502-B (08/05)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DISTRIBUTION
ORIGINAL - C-FILE
1ST COPY - FIELD FILE
2ND COPY - PAROLEE

16/29

**REPORT TO:** ☒ **BOARD OF PAROLE HEARINGS**

| CDC NUMBER | NAME (LAST, FIRST, MI) | NAME BOOKED AS | REGION/UNIT |
|---|---|---|---|
| P07071 | ALEXANDER, ROBERT | SAME | II-SLD |

| ARREST DATE | ARRESTING AGENCY | BPH REFERRALS: | BOOKING NUMBER AND/OR LOCATION |
|---|---|---|---|
| 10-19-07 | DAPO | ☐ MANDATORY  ☒ NON-MANDATORY | ALACOJ AYC552 |

| ARREST CODE * | * ARREST CODES | | |
|---|---|---|---|
| A | A    DAPO STAFF ALONE | B    LAW ENFORCEMENT AGENCY ALONE | |
| | AB   DAPO ASSISTED BY LAW ENFORCEMENT AGENCY | D    LAW ENFORCEMENT AGENCY WITH INFORMATION FROM DAPO | |

| HOLD DATE | DISCOVERY DATE | HOLD REMOVED DATE | AGENT OF RECORD | CONTROLLING DISCHARGE DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|---|---|---|---|
| 10-19-07 | 10-19-07 | N/A | SNYDER | 2-25-09 | 9-16-08 | ☐ |

| CHARGES AND CODES | CHARGES AND CODES |
|---|---|
| C4: USE OF COCAINE (719) | |
| 1. | 4. |
| 2. | 5. |
| 3. | 6. |

| REASON FOR RETAINING PAROLE HOLD: PAROLEE DANGER TO | | | | DATE COPY GIVEN | NAME OF PERSON NOTICING PAROLEE |
|---|---|---|---|---|---|
| ☐ ABSCOND | ☒ SELF | ☐ PROPERTY – OTHERS | ☒ SAFETY -OTHERS | | |

**SUPPORTING EVIDENCE:**

CHARGE 1: On 10-19-07, Subject was taken into custody for the above charge.

**RECEIVED**

OCT 2 6 2007

**SANTA RITA D.R.U.**

PAROLE AGENT'S RECOMMENDATION:
Retain hold.

| | PAROLE AGENT'S SIGNATURE | DATE |
|---|---|---|
| | J. Snyder | 10-19-07 |

| UNIT SUPERVISOR'S ACTION | | | |
|---|---|---|---|
| ☒ DECISION | ☒ REVIEW | ☒ RETAIN HOLD | ☐ RELEASE HOLD AS OF (DATE) | ☐ CANCEL WARRANTS - WANTS |
| ☐ CONTINUE ON PAROLE | ☐ CONTINUE IN OUT-PATIENT STATUS | | *DISCHARGE EFFECTIVE DATE | ☐ RETAIN ON PAROLE |
| ☐ REINSTATE ON PAROLE AS OF (DATE) | TIME LOSS ☐  NO TIME LOSS ☐ | ☐ SUSPENDED/REINSTATE IN OPS AS OF (DATE) | ☐ REFER TO DMH | ☒ INVESTIGATE, SUBMIT APPROPRIATE REPORT BY (DATE) 10-29-07 |
| SPECIAL CONDITION(S) | | | ☐ ADD | ☐ DELETE |

UNIT SUPERVISOR'S COMMENTS/RECOMMENDATION
☒ I HAVE LOOKED AT THE INFORMATION. I BELIEVE THERE IS PROBABLE CAUSE TO MAINTAIN THE PAROLE HOLD

RETAIN PAROLE HOLD INVESTIGATE AND SUBMIT APPROPRIATE REPORT.

| | UNIT SUPERVISOR'S SIGNATURE | DATE |
|---|---|---|
| | G. Viera Rosa | 10-29-07 |

| PAROLE ADMINISTRATOR'S COMMENTS/DECISION | | | |
|---|---|---|---|
| ☐ REFER TO BPH | *DISCHARGE EFFECTIVE DATE | FIELD ADMINISTRATOR'S SIGNATURE | DATE |

STATE OF CALIFORNIA
**CHARGE REPORT**
CDCR 1502 (b) (02/05)

**PRIORITY** DISTRIBUTION:    CDCR
ORIGINAL - C-File
1ST COPY – Field File
2ND COPY - Parolee

**REPORT TO:** [X] **BOARD OF PRISON TERMS**

| CDC NUMBER | NAME (LAST, FIRST, MI) | NAME BOOKED AS | REGION/UNIT |
|---|---|---|---|
| P 0707l | ALEXANDER, ROBERT | SAME | II/HAYWARD |

| ARREST DATE | ARRESTING AGENCY | BPT REFERRALS: | BOOKING NUMBER AND/OR LOCATION |
|---|---|---|---|
| 7/18/06 | DUBLIN PD | [X] MANDATORY   [ ] NON-MANDATORY | SRS/AYC552 |

| ARREST CODE * | * ARREST CODES: | | |
|---|---|---|---|
| B | A    P&CSD STAFF ALONE | B    LAW ENFORCEMENT AGENCY ALONE | |
| | AB   P&CSD ASSISTED BY LAW ENFORCEMENT AGENCY | D    LAW ENFORCEMENT AGENCY WITH INFORMATION FROM P&CSD | |

| HOLD DATE | DISCOVERY DATE | HOLD REMOVED DATE | AGENT OF RECORD | CONTROLLING DISCHARGE DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|---|---|---|---|
| 7/18/06 | 7/18/06 | | J.C AGUILAR | 12/27/08 | 12/27/06 | |

| CHARGES AND CODES | | CHARGES AND CODES | |
|---|---|---|---|
| 1. C4 CRIMINAL THREATS 992 | | 4. | |
| 2. C4 MAYHEM 445 | | 5. | |
| 3. | | 6. | |

| REASON FOR RETAINING PAROLE HOLD: PAROLEE DANGER TO: | DATE COPY GIVEN TO PAROLEE | NAME OF PERSON NOTICING PAROLEE |
|---|---|---|
| [ ] ABSCOND  [ ] SELF  [ ] PROPERTY-OTHERS  [X] SAFETY-OTHERS | | |

ON 7/18/06, AOR WAS CONTACTED BY KAREN TYLER AND INFORMED THAT SUBJECT ATTEMPTED TO BURN HER HAIR. SUBJECT ALSO MADE THREATS TO VICTIM NEEDING A BULLET PROOF VEST. AOR CONTACTED MERCED COUNTY SHERIFF AND CONFIRMED THAT A REPORT WAS TAKEN ON 7/15/06.

AOR CONTACTED DUBLIN POLICE AND REQUESTED THAT SUBJECT BE TAKEN INTO CUSTODY. SUBJECT WAS ARRESTED WITHOUT INCIDENT.

**RECEIVED**

JUL 2 6 2006

**SANTA RITA D.R.U.**

**PAROLE AGENT'S RECOMMENDATION:**
REFER TO BPH FOR ADJUDICATION

| PAROLE AGENT'S SIGNATURE | DATE |
|---|---|
| J.C AGUILAR | 7/18/06 |

**UNIT SUPERVISOR'S ACTION**

| | | RELEASE HOLD ON (DATE): | |
|---|---|---|---|
| [X] DECISION  [ ] REVIEW  [X] RETAIN HOLD | | | [ ] CANCEL WARRANTS — WANTS |
| [ ] CONTINUE ON PAROLE | [ ] CONTINUE IN OUT PATIENT STATUS | *DISCHARGE EFFECTIVE (DATE): | [ ] RETAIN ON PAROLE |
| [ ] REINSTATE ON PAROLE AS OF (DATE): | [ ] TIME LOSS  [ ] NO TIME LOSS | SUSPEND/REINSTATE IN OPS AS OF (DATE): | [X] REFER TO BPT | [ ] INVESTIGATE, SUBMIT APPROPRIATE REPORT BY (DATE): 7/26 |
| [ ] SPECIAL CONDITION(S): | | | [ ] ADD  [ ] DELETE |

**UNIT SUPERVISOR'S COMMENTS/RECOMMENDATION**

Threat to others Refer to BPH

| | UNIT SUPERVISOR'S SIGNATURE | DATE |
|---|---|---|
| [X] I HAVE LOOKED AT THE INFORMATION. I BELIEVE THERE IS PROBABLE CAUSE TO MAINTAIN THE PAROLE HOLD. | R. MALAVE | 7/18/06 |

**PAROLE ADMINISTRATOR'S COMMENTS/DECISION**

| [ ] REFER TO BPT | *DISCHARGE EFFECTIVE DATE | FIELD ADMINISTRATOR'S SIGNATURE | DATE |
|---|---|---|---|
| | | | |

STATE OF CALIFORNIA

**SUMMARY OF PAROLE ADJUSTMENT**

CDC 1521-D (1/91)

DEPARTMENT OF CORRECTIONS

### ATTACH LEGAL STATUS SUMMARY

| CDC NUMBER | NAME (LAST, FIRST, MI) | DATE OF REPORT |
|---|---|---|
| P07071 | ALEXANDER, ROBERT | 10-24-07 |

### PRIOR COMMITMENT(S)

| OFFENSE TITLE(S) | CODE SECTION(S) | DATE(S) OF COMMITMENT |
|---|---|---|
| | | |
| | | |
| | | |

| SPECIAL CONDITION(S) OF PAROLE | INITIAL PAROLE DATE | LAST REV. RFL DATE (RRD) |
|---|---|---|
| | 12-24-06 | n/a |

No contact with victim of comm. offense.  No contact with Karen Tyler.
ANT.

### RESIDENCE

| LAST KNOWN ADDRESS | LIVING WITH | RESIDENTIAL PATTERN |
|---|---|---|
| 4872 Bernal Ave. #B Pleasanton, CA | gf-Sevon Itias | stable |

### MEANS OF SUPPORT

| SOURCE OF SUPPORT | IF EMPLOYED, EMPLOYER'S NAME & BUSINESS ADDRESS | DATES EMPLOYED FR - TO | POSITION HELD |
|---|---|---|---|
| was employed | Auto Guardian | | Tow Truck Driver |

EVALUATION - Cover the period from date of last release to current report. Include positive and negative factors of this release and community programs available in lieu of revocation e.g. drug programs, psychiatric in-patient or out-patient, etc.

Subject is a 29 yr old first termer with a commitment of Assault w/ semi auto rifle.  Subject has minimal adult convictions that just include the instant offense.

Subject originally paroled on 12-17-05.  Since then, he has had three violations.  This is Subject's THIRD use of cocaine violation.  Subject has been referred to BASN twice and in just very recently started making his once a week meetings.  Subject could benefit with a referral to the ICDTP program.

| PAROLEE'S NAME | | CDC NUMBER |
|---|---|---|
| | ALEXANDER, ROBERT | P07071 |

STATE OF CALIFORNIA

**SUMMARY OF PAROLE ADJUSTMENT**                                DEPARTMENT OF CORRECTIONS
* CDC 1521-B (1/91)

## ATTACH LEGAL STATUS SUMMARY

| CDC NUMBER | NAME (LAST, FIRST, MI) | DATE OF REPORT |
|---|---|---|
| P07071 | ALEXANDER, ROBERT | 4-4-08 |

| PRIOR COMMITMENT(S) | | |
|---|---|---|
| OFFENSE TITLE(S) | CODE SECTION(S) | DATE(S) OF COMMITMENT |
| | | |

| SPECIAL CONDITION(S) OF PAROLE | INITIAL PAROLE DATE | LAST REV. REL DATE (RRD) |
|---|---|---|
| | 12-24-06 | 1-10-08 |

No contact with victim of comm. offense.  No contact with Karen Tyler.
ANT.

### RESIDENCE

| LAST KNOWN ADDRESS | LIVING WITH | RESIDENTIAL PATTERN |
|---|---|---|
| 4872 Bernal Ave. #B<br>Pleasanton, CA | gf-Sevon Itias | stable |

### MEANS OF SUPPORT

| SOURCE OF SUPPORT | IF EMPLOYED, EMPLOYER'S NAME & BUSINESS ADDRESS | DATES EMPLOYED FR. - TO: | POSITION HELD |
|---|---|---|---|
| | | | |

**EVALUATION** - Cover the period from date of last release to current report. Include positive and negative factors of this release and community programs available in lieu of revocation, e.g. drug programs, psychiatric in-patient or out-patient, etc.

Subject is a 30 yr old first termer with a commitment of Assault w/ semi auto rifle.  Subject has minimal adult convictions that just include the instant offense.

Subject originally paroled on 12-17-05. Since then, he has had FIVE violations.

In regards to Charge 1- refusal to sign his C.O.P.  :  DAPO is only doing what we think is best for Subject so that he will not be in danger of Sevon Atias and vice versa.  In reviewing the call log from Pleasanton PD from 5/07 to 2/08, the PD has been sent to the Subject's ROR for numerous reasons including vandalism, battery, vehicle theft incidents, etc. Also, please note that though Subject will say that there is never a "mutual combat between him and her" police reports say otherwise. There is an incident where Sevon Atias actually vandalized their apartment and tried to hit him with things and was placed on probation for it.  Sevon Atias provided the Unit Supervisor with a copy of the restraining/protective order against her by him. Also, after Subject was taken into custody, Ms. Atias began harassing the Unit supervisor, had contacted the governor's office, and had the attorney general contact the district administrator, asked HER attorney, the public defender, to contact the U.S. and demanded that Subject -Alexander's hold be released.

In regards to Charges 2, 3:  these charges were discovered during the course of the investigation into this case. DAPO still have to address these charges when discovered.  This also only shows why this relationship is VOLATILE and why DAPO feels that Subject should have a no contact condition with Sevon Atias.

If good cause is found, AOR is recommending the MAXIMUM amount of time Subject could receive for these violations PLUS, AOR is requesting that the Board of Parole Hearings make it a board imposed special condition of no contact with Sevon Atias.

| PAROLEE'S NAME | CDC NUMBER |
|---|---|
| ALEXANDER, ROBERT | P07071 |

STATE OF CALIFORNIA

**SUMMARY OF PAROLE ADJUSTMENT**

* CDC 1521-B (1/91)

DEPARTMENT OF CORRECTIONS

## ATTACH LEGAL STATUS SUMMARY

| CDC NUMBER | NAME (LAST, FIRST, MI) | DATE OF REPORT |
|---|---|---|
| P07071 | ALEXANDER, ROBERT | 7/21/06 |

### PRIOR COMMITMENT(S)

| OFFENSE TITLE(S) | CODE SECTION(S) | DATE(S) OF COMMITMENT |
|---|---|---|
|  |  |  |
|  |  |  |

| SPECIAL CONDITION(S) OF PAROLE | INITIAL PAROLE DATE | LAST REV. REL DATE (RRD) |
|---|---|---|
| NO CONTACT W/VICTIM | 12/27/06 | N/A |

### RESIDENCE

| LAST KNOWN ADDRESS | LIVING WITH | RESIDENTIAL PATTERN |
|---|---|---|
| 2096 ELLENE DRIVE PLEASANTON | PARENTS | STABLE |

### MEANS OF SUPPORT

| SOURCE OF SUPPORT | IF EMPLOYED, EMPLOYER'S NAME & BUSINESS ADDRESS | DATES EMPLOYED FR: - TO | POSITION HELD |
|---|---|---|---|
| EMPLOYED | B&S AUTO BODY | MAY 06- PRESENT | LABORER |

**EVALUATION** - Cover the period from date of last release to current report.  Include positive and negative factors of this release and community programs available in lieu of revocation, e.g. drug programs, psychiatric in-patient or out-patient, etc.

SUBJECT IS A FIRST TERMER WITH A COMMITMENT OFFENSE OF ADW W/SEMIAUTO RIFLE. SUBJECT HAS AN ARRST HISTORY THAT INCLUDES ROBBERY, RSP, AND FORGERY.

SINCE INITIAL PAROLE DATE SUBJECT HAS MAINTAINED A STABLE RESIDENCE. SUBJECT JUST RECENTLY OBTAINED FULL-TIME EMPLOYMENT AT AN AUTO BODY SHOP. SUBJECT HAS MADE HIMSELF AVAILABLE FOR PAROLE SUPERVISION AND HAS NO VIOLATIONS PRIOR TO HIS ARREST ON 7/18/06.

DUE TO SUBJECT'S CURRENT ARREST, A REVIEW BY THE BPH IS WARRANTED AT THIS TIME.

| PAROLEE'S NAME | | CDC NUMBER |
|---|---|---|
| | ALEXANDER, ROBERT | P07071 |

STATE OF CALIFORNIA
**SUMMARY OF PAROLE ADJUSTMENT**
* CDC 1521-D (1-91)

DEPARTMENT OF CORRECTIONS

### ATTACH LEGAL STATUS SUMMARY

| CDC NUMBER | NAME (LAST, FIRST, MI) | | DATE OF REPORT |
|---|---|---|---|
| P07071 | Alexander, Robert | | |

### PRIOR COMMITMENT(S)

| OFFENSE TITLE(S) | | CODE SECTION(S) | DATE(S) OF COMMITMENT |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| SPECIAL CONDITION(S) OF PAROLE | INITIAL PAROLE DATE | LAST REV. REL DATE (RRD) |
|---|---|---|
| | 12/27/05 | 9/16/06 |

No contact with victim of comm. offense or Karen Tyler by any means and participate in outpatient substance abuse counseling at least three days a week and confirm employemnt monthly.

### RESIDENCE

| LAST KNOWN ADDRESS | LIVING WITH | RESIDENTIAL PATTERN |
|---|---|---|
| 4872 Bernal Avenue #B Pleasanton, Ca. 94588 | GF- Sevon Itias | Stable |

### MEANS OF SUPPORT

| SOURCE OF SUPPORT | IF EMPLOYED, EMPLOYER'S NAME & BUSINESS ADDRESS | DATES EMPLOYED FR - TO | POSITION HELD |
|---|---|---|---|
| Unknown | | | |

**EVALUATION** - Cover the period from date of last release to current report. Include positive and negative factors of this release and community programs available in lieu of revocation, e.g. drug programs, psychiatric in-patient or out-patient, etc.

### Facts

The Subject is a 29 year old first termer with a commitment offense of Assault w/ a semi auto rifle. RAP sheet indicates a minimal criminal adult conviction record.

The Subject originally paroled on 12/27/05. Since this date, he has had four convictions. One violation for disturbing the peace in which he received 2I by the BPH and three additional violations for cocaine use in which he was referred to BASN.

Due to his history of parole violations combined with his current behavior, it is obvious the Subject has no intention in cooperating with parole supervision. Therefore, the above violation is being referred to the Board of Parole Hearings for an appropriate disposition.

| PAROLEE'S NAME | CDC NUMBER |
|---|---|
| Alexander, Robert | P07071 |

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

SUMMARY OF PAROLE ADJUSTMENT
* CDC 1521-B (1/92)

## ATTACH LEGAL STATUS SUMMARY

| CDC NUMBER | NAME (LAST, FIRST, MI) | DATE OF REPORT |
|---|---|---|
| P07071 | ALEXANDER, ROBERT | 2-26-08 |

| PRIOR COMMITMENT(S) | | |
|---|---|---|
| OFFENSE TITLE(S) | CODE SECTION(S) | DATE(S) OF COMMITMENT |
| | | |
| | | |
| | | |

| SPECIAL CONDITION(S) OF PAROLE | INITIAL PAROLE DATE | LAST REV. REL DATE (RRD) |
|---|---|---|
| | 12-24-06 | 1-10-08 |
| | 12-27-07 | |

ANT. No contact with victim of commitment offense. No contact with Karen Tyler.

| RESIDENCE | | |
|---|---|---|
| LAST KNOWN ADDRESS | LIVING WITH | RESIDENTIAL PATTERN |
| 4872 Bernal Ave. #B Pleasanton, CA | gf-Sevon Atias | stable |

| MEANS OF SUPPORT | | | |
|---|---|---|---|
| SOURCE OF SUPPORT | IF EMPLOYED, EMPLOYER'S NAME & BUSINESS ADDRESS | DATES EMPLOYED FR: - TO: | POSITION HELD |
| not employed | | | |

EVALUATION - Cover the period from date of last release to current report. Include positive and negative factors of this release and community programs available in lieu of revocation, e.g. drug programs, psychiatric in-patient or out-patient, etc.

Subject is a 29 yr old first termer with a commitment of Assault w/ semi auto rifle. Subject has minimal adult convictions that just include the instant offense.

Subject originally paroled on 12-27-05. Since then, he has had five violations. It looks like Subject's criminal activities are escalating and now involved battery of his 4 months pregnant girlfriend. This relationship is volatile and Agent of record recommends if good cause is found, Subject be given the MAXIMUM amount of time for the above violations.

The above violations are being referred to the Board of Parole Hearings for an appropriate disposition.

| PAROLEE'S NAME | | CDC NUMBER |
|---|---|---|
| | ALEXANDER, ROBERT | P07071 |

Page 3 of 4

STATE OF CALIFORNIA — DEPARTMENT OF CORRE      NS AND REHABILITATION                    ARNOLD SCHWARZENEGGER, GOVERNOR

**BOARD OF PAROLE HEARINGS**
P.O. BOX 4036
SACRAMENTO, CA 95812-4036

**FORWARD TO INMATE/PAPOLEE**

May 13, 2008

Mr. Mark Demming
Law Office of Mark Demming
5414 Miles Avenue
Oakland, California 94618

Re: Robert Alexander, P07071

Dear Mr. Demming:

This is in response to your letter requesting a decision review for Mr. Robert Alexander's revocation hearing of April 29, 2008. The Board of Parole Hearings received the FAX transmittal of your letter (minus page one) on May 9, 2008 and page one on May 12, 2008.

Title 15, California Code of Regulations section 2041(b) provides for decision review of revocation hearing decisions within 10 days from the date the panel signed the decision. May 9 was the tenth day from the date of the revocation hearing. Therefore, there was insufficient time to complete a decision review within the 10-day timeframe. The Board will take no further action.

Also, as a general rule, Decision Review requests should include the parolee's name and California Department of Corrections identification number, date of the decision to be reviewed, action being requested, all documents relied on by the decision maker, and any additional documents if there is new information. Your request for Decision Review did not include several of these items. While much of the information missing from the May 9, 2008 letter was contained on the missing page, there were no supporting documents included in either the May 9 or May 12, 2008 transmittals.

Sincerely,

D.A. Filangeri
Associate Chief Deputy Commissioner

cc: Mr. Andrew Walker, CALPAP

Mark Demming (SBN 226831)
Law Office of Mark Demming
5414 Miles Avenue
Oakland, CA 94618
Tel/Fax: (510) 655-7690
markdemm@yahoo.com

Attorney for Parolee ROBERT ALEXANDER, P-07071


# MEMORANDUM

To:   Quality Control

Re:   Request for Decision Review in case of April 29, 2008 Revocation Hearing for
      Robert Alexander

Date: May 7, 2008


Dear A.C.D.C.:

With this memorandum the parolee Robert Alexander, referenced above,
requests the Board's informal review of good cause findings in two parole violation
charges brought against him and heard at a revocation hearing at Santa Rita Jail on
April 29, 2008. The parolee believes that the panel made clear errors of law in these
findings.

The first of the charges in question is refusal to sign parole conditions. Here, the
panel, constituted by D.C. James Martin, did not correctly apply the *Lent* test in
determining that a new special condition of no contact with his fiancee was valid. In
particular, parolee had no previous conviction, or even findings of good cause in parole
proceedings, related to domestic violence, nor was there evidence that forbidding
contact was reasonably related to potential future domestic violence on the part of the
parolee. The second charge was battery on spouse. Here, the good cause finding was
based on an out-of-court statement to police for which there was no independent
corroborating evidence. Additionally, the statement was recanted by the complaining
witness Sevon Atias under oath at the hearing. Having found good cause on the two
charges, the D.C. returned Mr. Alexander to custody for 11 months (ineligible for credits
due to commitment offense).

## FACTUAL BACKGROUND

1

On March 21, 2008, D.C. D. Star presided at a hearing for Mr. Alexander on charges – based on statements by the parolee's girlfriend, Sevon Atias, to police and the parole agent of record – of robbery and battery on spouse. The arrest and parole hold date for the charges was Feb. 16, 2008. D.C. Star dismissed both charges at the conclusion of the hearing. She wrote in "Reason for Decision" on the 1103-REV that "victim today testified she lied as mad over restraining order ... collaborated with girlfriend to filing false police report ... parolee, attorney and victim presented testimony of prior incidents involving victim, questioning her credibility and leading to parolee having a peaceful contact restraining order on victim ... there is no independent corroboration of victim's original statement and victim original statement in serious question given several credibility, bias, and alternative motivations issues present today as well as her recanting ..." D.C. Star also lectured Ms. Atias about the gravity of making false allegations to the police.

The parole hold was lifted and Mr. Alexander was released. Immediately following the hearing, on March 21, 2008, without notification to D.C. Star or the parolee (who was first notified when he reported to the parole office on March 24), Agent J. Snyder imposed a special condition that parolee have no contact with Ms. Atias, who at the time was five or six months pregnant with their child. Agent Snyder was not present at the parole office on March 24, and the parolee talked with Unit Supervisor Bent who, upon seeing that there was no restraining order from the court forbidding contact, but only an order restraining Ms. Atias from harassment of Mr. Alexander, allowed Mr. Alexander to sign the old conditions and leave the office, pending further consultation with AOR Snyder. When the parolee returned a few days later, Agent Snyder insisted that he sign the no-contact condition or be arrested. Mr. Alexander refused and insisted on seeing the Unit Supervisor Bent who had earlier reviewed the proposed new condition. Mr. Alexander testified at the hearing that if he had been allowed to speak with U.S. Bent, and if Bent had confirmed that the Parole Office was now standing behind Agent Snyder's imposition of the special condition, he would have signed on that day at the office pending an appeal of the validity of the condition. Instead, he was not permitted to speak with Mr. Bent and was taken into custody immediately thereafter.

Agent Snyder then found police reports from December 11, 2007 (for an allegation made by Sevon Atias) and February 7, 2008 (for an allegation made by Sevon Atias regarding a Feb. 5 residential burglary), and added the charges to the charge of refusal to sign on the Form CDC 1676. Both charges were based on old police reports dated from before Mr. Alexander's arrest on the charges heard by D.C. Star on March 21, 2008.

According to the Pleasanton Police Department report of Dec. 11, 2007, Sevias told the officer that after an argument that morning, the parolee returned to their apartment, kicked her once in the left leg just above the knee as she was about to shower, and then left. "The area she was pointing to was covered by a tattoo and I could not see any injuries. Atias stated she did not need any medical attention at that

2

time," wrote the officer. At the April 29 hearing conducted by D.C. Martin, the officer repeated the statement in the report that he could see no injury on the leg.

According to the Pleasanton Police Department report of Feb. 7, 2008, the front door of a Rachel Smith had been damaged and repaired, and some perfume was missing off her dresser. Smith called Sevon Atias, who had been staying with her the previous days. Ms. Atias told Smith that Robert Alexander had kicked the door in. A police officer then questioned Ms. Atias directly, and she gave the officer told a similar story. At the April 29 hearing, a notarized letter by Rachel Smith was entered into evidence stating that she (Smith) found who had broken in and stolen some things, that it was not Mr. Alexander, that she had reported her discovery and the falsity of the original report to the police, and that she did not know why Sevon Atias had falsely accused Mr. Alexander but that it upset her the Ms. Atias had done so.

## II.
## PROCEDURAL BACKGROUND AND REVOCATION HEARING

Mr. Alexander was taken into custody at the parole office on March 26, 2008, barely 5 days after his release on the dismissed charges on which he had been held since Feb. 5, 2008. He rejected a screening offer of 12-I at the PCH, andremained in custody until a new revocation hearing could be held on April 29, 2008.

At the beginning of the revocation hearing, counsel for parolee requested that the panel first determine whether the special condition Mr. Alexander was accused of refusing to sign was valid based on the *Lent* test (*People v. Lent* (1975) 15 Cal.3d 228, incorporated in DOM, sec. 81010.16.) D.C. Martin heard arguments but did not give a decision on this issue until the end of hearing, when he found that the parolee had failed to sign a valid special condition of parole.

D.C. Martin found good cause on the charges of (1) refusal to sign the new parole condition and (2) spousal battery, dismissed the charge of residential burglary, and returned Mr. Alexander to custody for 11 months ineligible.

## III.
## ARGUMENT

A. THE SPECIAL CONDITION OF NO CONTACT WITH SEVON ATIAS WAS INVALID BECAUSE IT WAS NOT REASONABLY RELATED TO POTENTIAL FUTURE CRIMINALITY, AND THE GOOD CAUSE FINDING OF REFUSAL TO SIGN SHOULD THEREFORE BE DISMISSED.

A condition of parole "will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal,

3

and (3) requires or forbids conduct which is not reasonably related to future criminality ....' *(Citation.)* Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." *(People v. Lent, supra,* 15 Cal.3d at 486.)

The *Lent* test is explicitly incorporated into the DOM (Sec. 81010.16): "Any other restriction or instruction may be imposed as a special condition if warranted by the circumstances of the case. The behavior to be controlled must be sufficiently documented in the parolee's file to support imposition of a special condition.

*'A special condition of parole shall be imposed only if the condition is:
* Related to the crime for which the prisoner was convicted.
* Related to conduct that is not in itself criminal, but is reasonably related to potential future criminal behavior."

Even when the purpose of the condition is to prevent future criminality, it must relate to the *parolee's* criminal conduct. ("Parole Hearings," Ch.47, CEB California Criminal Law, Procedure and Practice, 2007, p. 1499.)

Further, because a parolee has a right to liberty that "includes many of the core values of unqualified liberty" *(Morrissey v. Brewer* (1972) 408 US 471, 482), a parole condition restricting the exercise of certain fundamental rights is allowed by the courts only to the extent actually required by the legitimate demands of the parole process *(People v. Burgener* (1986) 41 Cal.3d 505, 530). A parole condition must be reasonable *(Burgener,* 41 Cal.3d at 532). If the special condition impinges on a constitutional right such as freedom of speech, association, or travel, the condition must be reasonable and narrowly drawn. *People v. Keller* (1979) 76 Cal.App.3d 827, 838. See also *In re White* (1979) 97 Cal.App.3d 141, 146. (Offenders convicted of a domestic violence offense (Fam C §6211) involving threatening, stalking, sexually abusing, harassing, or violent acts may be subject to no-contact orders. PC 3053.2.)

Here, the condition of no contact with a fiancee and future mother of one's child is certainly a restriction of a fundamental right. Cases such as *In re White* (cited above) suggest that a no-contact order is narrowly drawn for legitimate demands of parole in cases where a parolee has been convicted of a domestic violence offense. In any case, evidence of the kind criminal behavior to be protected against must certainly be held to be a pre-condition for the imposition of this special condition. Here, there was no such finding at all.

One of the due process rights of parolees established by *Morrissey v. Brewer, supra,* 408 U.S. at 487, is "a written statement by the fact finders as to the evidence relied on and reason for revoking parole." In his statement on BPH 1103-REV, D.C. Martin based his finding not on a showing of a reasonable relation to future criminality, as required by *Lent* and related case law as well as the DOM, but on a showing merely on a "tumultuous" nature to the private relationship of the parolee and his fiancee. The entirety of the D.C.'s statement of the evidence and reason for upholding the no-contact condition was: "In a separate hearing, it was

4

found that there was a nexus between the proposed SCOP [special condition of parole] and parolee's past behavior, including a tumultuous relationship with Sevon Atias." The D.C. makes no finding that the unspecified "past behavior" had anything to do with domestic violence. The quoted statement was indeed all that there was to take from the hearing, and it is clearly insufficient to meet the validity requirement that the special condition be reasonably related to potential future criminal behavior.

While Mr. Alexander and Ms. Atias have a relationship that at times could be described as "tumultuous," there was no evidence that physical violence (or other criminal behavior constituting domestic violence) was ever involved. Ms. Atias testified that the parolee had never hit her, and testified that she had made false statements in the past when she was angry at Mr. Alexander. There have never been witnesses or other independent corroboration to the contrary. Ms. Atias' pattern, in the course of a few months, of false allegations to the police as a way of dealing with conflict in the relationship – hopefully now a thing of the past – should not result in Parole's further punishment of Mr. Alexander by a no-contact special condition. Since by all evidence the relationship has been non-violent, there can be no reasonable relation between a no-contact condition and potential future domestic violence on Mr. Alexander's part. There are no legitimate demands of parole for the state to interfere with the parolee's right to associate with Ms. Atias and pursue (or freely decide not to) family life with her, or to have freedom to love and care for his soon-to-be-born child. The sanction for this unwarranted state interference in private life is extreme: Any contact between Mr. Alexander and Ms. Atias not authorized by the state would result, if the punishment guidelines were followed, in 10 to 12 months of custody for Mr. Alexander. The state is overreaching, and applying its power arbitrarily, to attempt to do this in the name of several months of (non-violent, non-criminal) "tumultuousness" in a relationship.

The law on the imposition of special conditions was not followed by the April 29 panel in making his finding, and the good cause finding for refusal to sign the new condition of parole should be dismissed in the interests of justice.

B. THE PANEL ABUSED ITS DISCRETION WHEN IT RELIED FOR ITS GOOD CAUSE FINDING FOR SPOUSAL BATTERY ON THE COMPLAINING WITNESS' UNSWORN, VERBAL OUT-OF-COURT STATEMENT, UNCORROBORATED BY INDEPENDENT EVIDENCE, AND CONTRADICTED BY HER SWORN AT THE HEARING. THIS FINDING SHOULD BE REVERSED AND THE CHARGE DISMISSED.

The issue of law here is not exactly one of the right to confront, as addressed by U.S. v. Comito and related cases. In this case, Sevon Atias, the alleged victim who contacted police with the allegation of a battery by Mr. Alexander, appeared at the hearing and answered questions. She testified that she did not remember calling the police in December 2007, but in any case Mr. Alexander did not kick her in the leg, and in fact has never hit or kicked her. Since she did not remember calling and then talking in person with the police in mid-December, 2007, she did not remember what might have been her motive for calling the police. (Ms. Atias' testimony

in cross-examination by the parole agent was somewhat confused and contradictory, in that she denied calling the police, but then later agreed that she simply did not remember calling them.)

Previous occasions of calling the police with false reports, including for the charges that were heard and dismissed at the previous revocation hearing of March 21, 2008, before D.C. Star, were introduced by her testimony.

The Pleasanton police officer who responded to Ms. Atias's call on Dec. 11, 2007, testified in accordance his report written at the time: that Ms. Atias told him that Robert Alexander kicked her in the leg after an argument, and then left. He looked at the spot she indicated above the knee, but it was covered by a tattoo and he could see no evidence of injury. She did not allow the officers into the apartment, did not want medical treatment, and did not want to take any further action.

The state presented no independent evidence that would tend to corroborate Ms. Atias' story.

All the right to confront cases require independent corroborating evidence for the admissibility, for purposes of a good cause finding, of hearsay statements. (See, for example, *In re Miller* (2007) 145 Cal.App.4th 1228.) Here, there was no corroborating evidence. The sworn testimony of Ms. Atias at the hearing was clear and unshaken that Mr. Alexander had never struck her. Even if a D.C. were to find that Ms. Atias was not a credible witness, that would not permit the discretion, absent any other evidence, to arbitrarily decide that Ms. Atias's sworn testimony at the hearing was untrue and her out-of-court statements to a police officer, in contrast, were truthful.

On the BPH 1103-REV, D.C. Martin wrote as reason for decision of this charge: "Based on testimony of [Pleasanton Police Dept.] Officer Greenwood that he responded to a report by Sevon Atias that parolee had kicked her on 12-11-07. While the victim came to the hearing and recanted, claiming that she could not remember much of anything, that witness showed very little credibility and reasons for bias. The investigation of Officer Greenwood has high credibility and it is supported by several events of conflict and allegations between the parties."

The credibility of Officer Greenwood in faithfully reporting what Ms. Atias had told him has nothing to do with it. Her statement to the officer simply cannot be used as the basis of a good cause finding absent independent corroboration. The unspecified "events of conflict and allegations between the parties" do not constitute independent corroborating evidence that Mr.
Alexander kicked Ms. Atias. Therefore, by the law of hearsay as applied to parole revocation proceedings, the finding must be reversed and the charge dismissed.

IV.
CONCLUSION

6

05/09/2008    10:34    MC L  .RGE SCHOOL OF LAW → 19163246966                    NO.867    P07

For all the reasons above and in the interests of justice, parolee urges the Board to dismiss the charges of refusal to sign a special condition and battery on a spouse, and lift the parole hold on Mr. Alexander.

Dated: May 7, 2008

_____
Mark Demming
Attorney for RICHARD ALEXANDER

7

1 | EDMUND G. BROWN JR.
Attorney General of the State of California

2 | DANE R. GILLETTE
Chief Assistant Attorney General

3 | JULIE L. GARLAND
Senior Assistant Attorney General

4 | ANYA M. BINSACCA
Supervising Deputy Attorney General

5 | AMANDA J. MURRAY, State Bar No. 223829
Deputy Attorney General

6 |   455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004

7 |   Telephone:  (415) 703-5741
Fax:  (415) 703-5843

8 |

Attorneys for Respondent

9 | SF2008401577

10 |

11 |                    SUPERIOR COURT OF CALIFORNIA

12 |                        COUNTY OF ALAMEDA

13 |

14 |

15 | In re                                    NO. H25646

16 |   **ROBERT ALEXANDER,**                  **RESPONDENT'S REQUEST
FOR AN EXTENSION OF
TIME TO RESPOND TO**

17 |                                Petitioner,   **PETITION; [PROPOSED]
ORDER**

18 | **On Habeas Corpus.**

19 |                                           Dept:        9
Judge:      The Honorable

20 |                                                        Larry J. Goodman

21 |        I, AMANDA J. MURRAY, declare as follows:

22 |        1.    I am an attorney admitted to practice before the courts of the State of California and

23 | before this Court.  I am employed by the California Attorney General's Office as a Deputy

24 | Attorney General in the Correctional Writs and Appeals Section, and am assigned to represent

25 | respondent in this case.

26 |        2.    On May 6, 2008, this Court ordered respondent to file an informal response to Robert

27 | Alexander's petition for writ of habeas corpus.  Respondent's informal response is due May 27,

28 | 2008.

                                      1
─────────────────────────────────────────────
Request for Extension of Time; [Proposed] Order

1     3.   On May 12, 2008, my paralegal faxed a request for documents from Alexander's

2 central file. However, I did not receive these documents until May 21, 2008.

3     4.   Our office will be closed Monday, May 26, 2008 for Memorial Day.

4     5.   I require additional time to review Alexander's petition, his records, and

5 potentially discuss Alexander's claims with prison officials to determine the legitimacy of his

6 claims and prepare a proper response for the Court.

7     6.   For these reasons, respondent respectfully requests an extension of time to file the

8 informal response by June 18, 2008.

9     7.   Alexander is confined in state prison and cannot easily be contacted about an extension

10 of time.

11     8.   This request for an extension of time is not made for the purpose of harassment, undue

12 delay, or for any improper reason. No other request for an extension of time has been made in

13 this case.

14     I declare under penalty of perjury that the foregoing is true and correct and that this

15 declaration was executed on May 23, 2008, in San Francisco, California.

16

17

18                       AMANDA J. MURRAY
                      Deputy Attorney General

19

20

21

22

23   40256740.wpd

24

25

26

27

28

Request for Extension of Time; [Proposed] Order

1
2
3
4
5
6
7               SUPERIOR COURT OF CALIFORNIA
8                  COUNTY OF ALAMEDA
9

| | |
|---|---|
| 10 | |
| 11 | In re |
| 12 | **ROBERT ALEXANDER,** |
| 13 | Petitioner, |
| 14 | **On Habeas Corpus.** |

NO. H25646

[PROPOSED] ORDER

Judge:    The Honorable Larry J.
          Goodman

16      Good cause appearing, respondent is granted an extension of time, and shall provide the

17  return by June 18, 2008.  Petitioner may reply to respondent's informal response within 30 days

18  from the date of service of respondent's informal response.  (Cal. Rules of Court, rule

19  4.55.1(b)(2), (h).)

20

21      DATED: _____

22                              _____

23                              JUDGE LARRY J. GOODMAN

24
25
26
27
28

                                    3

Request for Extension of Time; [Proposed] Order

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **In re Alexander**

No.:    **H25646**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **May 23, 2008**, I served the attached

### RESPONDENT'S REQUEST FOR AN EXTENSION OF TIME TO RESPOND TO PETITION; [PROPOSED] ORDER

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Robert Alexander, P-07071**
**2096 Eilene Drive**
**Pleasanton, CA 94588**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **May 23, 2008**, at San Francisco, California.

|  |  |
|---|---|
| M.M. Argarin | _M.M. Argarin_ |
| Declarant | Signature |

40257754.wpd

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | JULIE L. GARLAND
Senior Assistant Attorney General
4 | ANYA M. BINSACCA
Supervising Deputy Attorney General
5 | AMANDA J. MURRAY, State Bar No. 223829
Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-5741
Fax: (415) 703-5843
8 |
Attorneys for Respondent
9 | SF2008401577

10

11                     SUPERIOR COURT OF CALIFORNIA

12                          COUNTY OF ALAMEDA

13

14 | In re                                    NO. H25646

15 |    **ROBERT ALEXANDER,**

16 |                              Petitioner,

17 |                                          Dept:    9
**On Habeas Corpus.**                        Judge:   The Honorable
18 |                                                   Larry J. Goodman

19

20

21          <u>**AMENDED DECLARATION OF SERVICE BY U.S. MAIL**</u>

22

23

24

25

26

27

28

## AMENDED DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **In re Alexander**

No.:   **H25646**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **May 23, 2008**, I served a copy of

**RESPONDENT'S REQUEST FOR AN EXTENSION OF TIME TO RESPOND TO PETITION; [PROPOSED] ORDER**

On **June 5, 2008**, I served a copy of

**INFORMAL RESPONSE**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Robert Alexander, P-07071**
**2096 Eilene Drive**
**Pleasanton, CA 94588**
In Pro Per

On **June 06, 2008**, I served a copy of

**AMENDED DECLARATION OF SERVICE BY U.S. MAIL**

**RESPONDENT'S REQUEST FOR AN EXTENSION OF TIME TO RESPOND TO PETITION; [PROPOSED] ORDER**

**INFORMAL RESPONSE**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Robert Alexander III, P-07071**
**Santa Rita County Jail (AYC552)**
**5325 Broder Blvd.**
**Dublin, CA 94568**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **June 6, 2008**, at San Francisco, California.

| M.M. Argarin | *M.M. Argarin* |
|:---:|:---:|
| Declarant | Signature |

1

2      ENDORSED
       FILED
3      ALAMEDA COUNTY

4      JUN 0 2 2008

5      CLERK ... E SUPERI... COURT
       By _____ FIL R CRUZ
                          Deputy

6

7              SUPERIOR COURT OF CALIFORNIA

8                  COUNTY OF ALAMEDA

9

10

11   In re                              NO. H25646

12     **ROBERT ALEXANDER,**            [~~PROPOSED~~] ORDER

13                      Petitioner,

14   **On Habeas Corpus.**              Judge:      The Honorable Larry J.
                                                    Goodman

15   Petitioner filed a separate writ of habeas on 5/22/08. This court in its
     discretion treats the document as supplementing the original petition filed on 4/24/08.
16      Good cause appearing, respondent is granted an extension of time, and shall provide the
     informal response
17   ~~action~~ by June 18, 2008. Petitioner may reply to respondent's informal response within 30 days

18   from the date of service of respondent's informal response. (Cal. Rules of Court, rule

19   4.55.1(b)(2), (h).) Respondent's informal response shall also address issues raised
     by the supplemental petition filed on 5/22/08. The Clerk shall mail a
20   copy of the supplemental petition to Respondent.

21      DATED: JUN 0 2 2008                    **LARRY J. GOODMAN**

22                                        _____

23                                        JUDGE LARRY J. GOODMAN

24

25

26

27

28

                              3

Request for Extension of Time; [Proposed] Order

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**      Dept. No. 9

Date: June 2, 2008          Hon. LARRY GOODMAN, Judge          Fil R. Cruz, Dep.Clk.
                                                              Not Reported, Reporter

IN RE: ROBERT ALEXANDER                    Counsel appearing: No Appearance
              Petitioner                   for Petitioner

vs.                                        Counsel appearing:   No Appearance
                                           for Respondent

THE PEOPLE OF THE STATE OF CALIFORNIA
              Respondent

Nature of Proceedings: ORDER OF THE COURT

                                           Case: H25646
                                           PFN:   AYC552
                                           CEN: 8248293
Please find enclosed a copy of Judge Goodman's Order signed and filed June 2, 2008.

                CLERK'S CERTIFICATE OF MAILING (CCP 1013a)
I certify that the following is true and correct:  I am a Deputy Clerk employed by the Alameda County Superior
Court. I am over the age of 18 years. My business address is 1225 Fallon Street, Oakland, California. I served this,
ORDER OF THE COURT by placing a copy in an envelope addressed as shown below and then by sealing and
placing it for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the
United States mail at Oakland, California, following standard court practices.


                                           Dated: June 2, 2008

Robert Alexander III
P07071  PFN#AYC552 3-F-9
5325 Broder Blvd., Dublin
CA 94568                                   Clerk of the Superior Court

                                           By: _____
                                           Fil R. Cruz, Deputy Clerk
Attorney General of the State of California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 04102-7004
**Attention:  Amanda J. Murray – SBN # 223829**
**Deputy Attorney General**

Enclosed: as stated above – also a copy of Petitioner's Petition for Writ of Habeas Corpus filed May 22, 2008 is
provided to the Attorney General's Office


(Rev. 5/3/07)



**EDMUND G. BROWN JR.**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public: (415) 703-5500
Telephone: (415) 703-5741
Facsimile: (415) 703-5843
E-Mail: Amanda.Murray@doj.ca.gov

June 4, 2008

The Honorable Larry J. Goodman
Alameda County Superior Court
Rene C. Davidson Courthouse
1225 Fallon Street, Department 9
Oakland, CA 94612-4293

RE:    INFORMAL RESPONSE
       *In re ROBERT ALEXANDER*, Case No. H25646

Dear Judge Goodman:

        Pursuant to the Court's May 6, 2008 Order, respondent provides this informal response to state inmate Robert Alexander's petition for writ of habeas corpus challenging his arrest and parole hold for refusing to sign an amendment to the conditions of his parole. (See generally, Petn.) Alexander's petition is without merit because he was properly arrested and placed on a parole hold. Accordingly, for the reasons set forth more fully below, the petition should be denied.

**Factual Background**

        The parole authority amended Alexander's special conditions of parole to include a no-contact provision with Sevon Atias (Alexander's girlfriend) because of the couple's history of conflict and violence. (Ex. A, Charge Sheet/Revocation Tracking/Scheduling Request; Ex. B, Pleasanton Police Department Report #2007-00048456; Ex. C, Pleasanton Police Department Report #2008-00006509; Ex. D, Incident Report Call Log; Ex. E, Criminal Protective Order (from Petn.).) Because Alexander refused to sign the amended special conditions of parole, he was arrested and placed on a parole hold.[1] (See generally, Petn.; Ex. A; Ex. F, Notice and Conditions of Parole, Section 6; Pen. Code, §3060.5.)

        On April 14, 2008, the parole authority found there was probable cause to support Alexander's parole hold and to conduct a revocation hearing. (Petn. at Probable Cause Hearing.)

        [1] Alexander was also placed on a parole hold for domestic violence and first degree burglary charges. (Ex. A at pp. 1-2; Exs. B-C.)

The Honorable Larry J. Goodman
June 4, 2008
Page 2

Shortly thereafter, Alexander filed this habeas corpus petition, alleging that his arrest and parole hold were improper. (See generally, Petn.)

During Alexander's April 29, 2008 parole revocation hearing, the parole authority found that there was good cause to revoke Alexander's parole for refusing to sign his amended parole agreement and domestic violence,[2] and returned Alexander to custody for eleven months. (Ex. G, Parole Revocation Hearing.)[3]

**1.    Alexander Was Properly Arrested and Placed on a Parole Hold for Refusing to Sign His Amended Conditions of Parole.**

Alexander was properly arrested and placed on a parole hold for refusing to sign his amended conditions of parole. Section 6 of the Notice and Conditions of Parole advise that the parolee must sign the parole agreement containing the conditions of parole. (Ex. F.) Indeed, Alexander was aware or should have been aware of Section 6 when he signed his initial conditions of parole in 2005. (Ex. H, 2005 Notice and Conditions of Parole.) Moreover, Penal Code section 3060.5 requires the parole authority to revoke parole if the parolee refuses to sign the parole agreement. Thus, Alexander was properly arrested and placed on a parole hold for refusing to sign his conditions of parole.

Moreover, Alexander's no-contact parole condition is proper because there is a reasonable nexus between the condition and Alexander's past and future criminality. A condition of parole which "requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486; Ex. I, Department Operations Manual §81010.16.) Here, Alexander and Atias have a history of conflict, including allegations of violence against each other resulting in police involvement. (Exs. A-E.) Thus, the parole authority concluded that because of Alexander's tumultuous relationship with Atias and his history of criminal violence (Ex. I, Abstract of Judgment), there was ample support for a no-contact condition between them to protect both parties and based on a concern for future violence. (Ex. G at p. 5.)

---

[2]The parole authority dismissed the first degree burglary charge. (Ex. G.)

[3]Because Alexander filed this petition before his parole revocation hearing, he does not challenge the parole authority's decision to revoke parole.

The Honorable Larry J. Goodman
June 4, 2008
Page 3

    Accordingly, the special condition prohibiting contact between Alexander and Atias is reasonably related to Alexander's future criminality based on his past conduct, and was properly imposed. Alexander's claim to the contrary must be denied.

Sincerely,

AMANDA J. MURRAY
Deputy Attorney General
State Bar No. 223829

For    EDMUND G. BROWN JR.
Attorney General

40261034.wpd

# EXHIBIT A

STATE OF CALIFORNIA
CHARGE SHEET/REVOCATION TRACKING/SCHEDULING REQUEST
CDC 1676 (4/91)

DISTRIBUTION: DEPARTMENT OF CORRECTIONS
FINAL - BOARD REPORT
COPY - B.H.C.

REPORT TO:  [Y] BOARD OF PRISON TERMS
            [ ] NARCOTIC ADDICT EVALUATION AUTHORITY

2ND COPY - H.A.
3RD COPY - PAROLEE
4TH COPY - U.S.

| CDC NUMBER | NAME (LAST, FIRST, MI) | NAME BOOKED AS | REGION/UNIT | CGTCU - ST |
|---|---|---|---|---|
| P07071 | ALEXANDER, ROBERT | SAME | II-SLD | YES [ ] [X] NO |

| ARREST DATE | ARRESTING AGENCY | BPT REFERRALS: | BOOKING NUMBER AND/OR LOCATION |
|---|---|---|---|
| 3-26-08 | DAPO | [X] MANDATORY  [ ] NON-MANDATORY | ALACOJ AYC552 |

| ARREST CODE * | * ARREST CODES: | | |
|---|---|---|---|
| A | A    P&CSD STAFF ALONE | B   LAW ENFORCEMENT AGENCY ALONE | |
|   | AB   P&CSD ASSISTED BY LAW ENFORCEMENT AGENCY | D   LAW ENFORCEMENT AGENCY WITH INFORMATION FROM P&CSD | |

| HOLD DATE | DISCOVERY DATE | HOLD REMOVED DATE | AGENT OF RECORD | CONTROLLING DISCHARGE DATE | DISCHARGE REVIEW DATE | IMMINENT DISCHARGE |
|---|---|---|---|---|---|---|
| 3-2608 | 3-26-08 | N/A | SNYDER | 2-25-09 | 1-10-09 | [ ] |

| CHARGES AND CODES | | CHARGES AND CODES | |
|---|---|---|---|
| 1. | C6: REFUSAL TO SIGN COND. OF PAROLE (996) | 4. | |
| 2. | C4: BATTERY/SPOUSE (455) | 5. | |
| 3. | C4: BURGLARY 1ST (505) | 6. | |

| REASON FOR RETAINING PAROLE HOLD | PAROLEE DANGER TO | | | DATE COPY SENT TO PAROLEE | INITIALS OF PERSON SENDING |
|---|---|---|---|---|---|
| [X] ABSCOND | [X] SELF | [X] PROPERTY-OTHERS | [X] SAFETY-OTHERS | | |

SUPPORTING EVIDENCE:

CHARGE 1: On 3-21-08, Subject-Alexander's conditions of parole (C.O.P.) were amended to include a no contact, without prior written approval from DAPO, with Sevon Atias. On 3-24-08, Subject reported to the parole office after being released from Santa Rita Jail. On that date, Subject saw the Officer of the Day and due to his refusal to sign his amended conditions, was placed in restraints by the Unit Supervisor. The Unit Supervisor discussed Subject's amended C.O.P. with him. Eventually, since the Unit Supervisor needed the Agent of record's input, Subject was released and instructed to report back to the AOR on 3-25-08 at 8:30am. Subject requested a 602 inmate appeal form and was provided one. On 3-25-08, Agent of record contacted Subject and was informed that he didn't have a ride to get to the parole office. AOR gave Subject instructions to report on 3-26-08. On 3-26-08, Subject reported to the parole office. AOR asked Subject why he refused to sign his amended C.O.P. and was told that the restraining order against him was lifted and he provided that information to the OD and the US on 3-24-08. AOR informed the Subject that she was not referring to the restraining order against him but HIS restraining/protective order against Sevon Atias. AOR explained to the Subject (with Agent Keller as a witness) that if he refused to sign his amended C.O.P. , he will be taken back into custody. Subject asked what his options were and AOR informed the Subject that he could sign his C.O.P. and then go to the court and have the restraining/protective order he has against Sevon Atias dismissed OR, not sign the C.O.P. and go back to jail. Subject asked to speak with the Unit Supervisor and AOR escorted Subject out to the lobby. AOR then case conferenced Subject's case with the Unit Supervisor and informed him that Subject did not sign his C.O.P. and wanted to speak with him. The Unit Supervisor then called Subject into the office and was taken into custody.

CHARGE 2: During the course of the investigation into Subject-Alexander's and Sevon Atias' many police contacts, AOR discovered that according to Pleasanton PD Rpt# 2007-00048456, on 12-11-07, Officer Greenwood was dispatched to Subect's ROR on a report of an incident

| PAROLEE'S NAME | CDC NUMBER |
|---|---|
| ALEXANDER, ROBERT | P07071 |

involving domestic violence. The victim-Sevon Atias, told the officer that she and Subject, her boyfriend of two years, had been arguing in the morning. She said she woke up and Subject was not at home. Subject returned shortly after and was angry again about a phone call she had received the night before. V-Atias said she did not want to argue and told him she was going to take a shower. After she entered the bathroom, Subject walked in and kicked her once in the left leg just above her knee. V-Atias said, subject then left the apartment and did not know where he went. V-Atias refused to seek medical attention and after the officer explained to her the Domestic Violence police she refused any further law enforcement action.

CHARGE 3:  Also discovered during the course of this investigation, according to Pleasanton PD Rpt# 2008-00006509, on 2-6-08, Officer Boland responded to an address, in the same apartment complex where Subject's ROR is, on a reported residential burglary. The officer spoke with the Victim-Rachel Smith who told him the following. On 2-5-08, V-Smith came home in the evening and noticed the front door frame of her apartment was damaged and had been repaired. V-Smith went into her room and noticed some perfume was missing off her dresser. V-Smith called Sevon Atias , who had been staying with her for the past few days and asked her what had happened. Sevon Atias told V-Smith that earlier in the morning, her ex-boyfriend, S-Alexander kicked the front door in and began looking in all the rooms of the apartment. Sevon Atias told V-Smith that S-Alexander thought Sevon Atias was with some other guy in the apartment. Sevon Atias said that she ran out of the apartment and spoke with the apartment manager and asked him to fix the door. On 2-6-08, V-Smith said that when she came home in the afternoon, she noticed her new portable DVD player was also missing from the side of her bed. V-Smith said that she didn't notice the DVD player was missing when she originally came home on 2-5-08.

Parolee's interview:  While waiting in the car to be transported, Subject became very angry. Subject made comments about DAPO's procedures, that this incident was "entrapment" and that he was filing a lawsuit. With Agent Keller in the car, Subject said that it must make for a "better sex life" for AOR "to have all this power over parolees." Subject made comments about everything from AOR's personal life to professionalism. AOR made a comment to the Subject to "save what he has to say for his attorney" and to that, Subject replied "this will not go away."

Court info: OHO

Witnesses: AOR Snyder
           Agent Keller
           Officer Greenwood
           Officer Boland

| PAROLEE'S NAME | | CDC NUMBER | |
|---|---|---|---|
| | ALEXANDER, ROBERT | | P07071 |

Sevon Atias-victim (domestic violence)
Rachel Smith - victim (burglary 1st)

Attachments:  Initial interview with the OD dated 3-24-08
Unsigned amended C.O.P.
Active restraining/protective order against Sevon Atias by S-Alexander
Copy of the restraining /protective order agains Sevon Atias faxed by Ms.
Atias to the Unit Supervisor
Pleasanton PD Call Log to Subject's ROR
Pleasanton PD Rpt# 2007-00048456
Pleasanton PD Rtp# 2008-00006509

| PAROLEE'S NAME | | CDC NUMBER | |
|---|---|---|---|
| | ALEXANDER, ROBERT | | P07071 |

Page 3 of 5

STATE OF CALIFORNIA.                                                                    DEPARTMENT OF CORRECTIONS

SUMMARY OF PAROLE ADJUSTMEN
CDC 1521-B (1/91)

## ATTACH LEGAL STATUS SUMMARY

| CDC NUMBER | NAME (LAST, FIRST, MI) | DATE OF REPORT |
|---|---|---|
| P07071 | ALEXANDER, ROBERT | 4-4-08 |

### PRIOR COMMITMENT(S)

| OFFENSE TITLE(S) | CODE SECTION(S) | DATE(S) OF COMMITMENT |
|---|---|---|
| | | |
| | | |
| | | |

| SPECIAL CONDITION(S) OF PAROLE | INITIAL PAROLE DATE | LAST REV REL DATE (RRD) |
|---|---|---|
| | 12-24-06 | 1-10-08 |
| | | 3/21/08 |

No contact with victim of comm. offense.  No contact with Karen Tyler.
ANT.

### RESIDENCE

| LAST KNOWN ADDRESS | LIVING WITH | RESIDENTIAL PATTERN |
|---|---|---|
| 4872 Bernal Ave. #B Pleasanton, CA | gf-Sevon Itias | stable |

### MEANS OF SUPPORT

| SOURCE OF SUPPORT | IF EMPLOYED, EMPLOYER'S NAME & BUSINESS ADDRESS | DATES EMPLOYED FR - TO | POSITION HELD |
|---|---|---|---|
| | | | |

**EVALUATION** - Cover the period from date of last release to current report. Include positive and negative factors of this release and community programs available in lieu of revocation, e.g. drug programs, psychiatric in-patient or out-patient, etc.

Subject is a 30 yr old first termer with a commitment of Assault w/ semi auto rifle. Subject has minimal adult convictions that just include the instant offense.

Subject originally paroled on 12-17-05. Since then, he has had FIVE violations.

In regards to Charge 1- refusal to sign his C.O.P. : DAPO is only doing what we think is best for Subject so that he will not be in danger of Sevon Atias and vice versa. In reviewing the call log from Pleasanton PD from 5/07 to 2/08, the PD has been sent to the Subject's ROR for numerous reasons including vandalism, battery, vehicle theft incidents, etc. Also, please note that though Subject will say that there is never a "mutual combat between him and her" police reports say otherwise. There is an incident where Sevon Atias actually vandalized their apartment and tried to hit him with things and was placed on probation for it. Sevon Atias provided the Unit Supervisor with a copy of the restraining/protective order against her by him. Also, after Subject was taken into custody, Ms. Atias began harassing the Unit supervisor, had contacted the governor's office, and had the attorney general contact the district administrator, asked HER attorney, the public defender, to contact the U.S. and demanded that Subject -Alexander's hold be released.

In regards to Charges 2, 3: these charges were discovered during the course of the investigation into this case. DAPO still have to address these charges when discovered. This also only shows why this relationship is VOLATILE and why DAPO feels that Subject should have a no contact condition with Sevon Atias.

If good cause is found, AOR is recommending the MAXIMUM amount of time Subject could receive for these violations PLUS, AOR is requesting that the Board of Parole Hearings make it a board imposed special condition of no contact with Sevon Atias.

| PAROLEE'S NAME | CDC NUMBER |
|---|---|
| ALEXANDER, ROBERT | P07071 |

STATE OF CALIFORNIA

**RECOMMENDATION, REVIEW AND SIGNATURE SHEET**

CDC 1521-D (1/91)

| BPT | RECOMMENDATION | NAEA |
|---|---|---|

| | | |
|---|---|---|
| ☐ Reinstate on Parole as of _____ | ☐ Continue outpatient or civil addict parole status | |
| ☐ Cancel Want - Remove Warrant from File | ☐ Dismiss | |
| ☐ Extend Parole Period to Maximum Pending Parole | ☐ Suspend - reinstate as of _____ | |
| ☐ Continue on Parole | ☐ Suspend - return | |
| ☐ Dismiss | ☐ Remove Release / Parolee at Large | |
| ☐ Remove Parole Hold | ☐ Continue oral order of _____ | |
| ☒ Retain Parole Hold | ☐ Confirm oral order of _____ | |
| ☒ Refer to Screening Calendar | ☐ Vacate oral order of _____ | |
| ☐ Schedule for Revocation Hearing | ☐ Other _____ | |
| ☐ Schedule for Revocation Hearing -- Psychiatric Treatment | | |
| ☐ Schedule for Good Cause Hearing -- (Cooperative Parole) | | |
| ☐ Maintain in Community Pending Revocation Proceedings | | |
| ☐ Other _____ | | |

PAROLE AGENT'S SIGNATURE   J. Snyder         DATE  4·4·08

| BPT | UNIT SUPERVISOR'S DECISIONS | NAEA |
|---|---|---|

| | | |
|---|---|---|
| ☐ Reinstate on Parole as of _____ | ☐ Continue outpatient or civil addict parole status | |
| ☐ Cancel Want --Remove Warrant from File | ☐ Dismiss | |
| ☐ Extend Parole Period to Maximum Pending Parole | ☐ Suspend - reinstate as of _____ | |
| ☐ Continue on Parole | ☐ Suspend - return | |
| ☐ Dismiss | ☐ Remove Release / Parolee at Large | |
| ☐ Remove Parole Hold as of _____ | ☐ Continue oral order of _____ | |
| ☒ Retain Parole Hold | ☐ Confirm oral order of _____ | |
| ☒ Refer to Screening Calendar | ☐ Vacate oral order of _____ | |
| ☐ Schedule for Revocation Hearing | ☐ Other _____ | |
| ☐ Schedule for Revocation Hearing -- Psychiatric Treatment | | |
| ☐ Schedule for Good Cause Hearing -- (Cooperative Parole) | | |
| ☐ Maintain in Community Pending Revocation Proceedings | | |
| ☐ Other _____ | | |
| ☐ **Note to Hearing Agent:** History of major psychiatric disorder should be considered in attorney determination. | | |
| ☐ **Note to Classification Staff Representative:** May be psychotic. Requires evaluation for category program. | | |

COMMENTS   REFER TO BOARD OF PAROLE HEARINGS

SUPERVISOR'S SIGNATURE   J. Bent         DATE  4-4-08

DATE PAROLEE COPY PROVIDED   ☐ MAILED   ☐ DELIVERED   BY (SIGNATURE)

| PAROLEE'S NAME | CDC NUMBER |
|---|---|
| ALEXANDER, ROBERT | P07071 |

Page 5 of 5

# EXHIBIT B

| | |
|---|---|
| PLEASANTON POLICE DEPARTMENT<br>4833 BERNAL AVENUE, P.O. BOX 909<br>PLEASANTON, CA 94566-0802 (925) 931-5100<br>CA0011100<br>**INITIAL INVESTIGATION** | **CASE NUMBER**<br>**2007-00048456**<br>FROM PAT CASE NO<br>2007-<br>2007-<br>2007- |

**EVENT**

| DATE REPORTED | TIME | INCIDENT TYPE | | SIGNIFICANT EVENT |
|---|---|---|---|---|
| 12/11/2007 | 10:55 | CRIME REPORT | | |
| OCCURRED BETWEEN | TIME | LOCATION OF OCCURRENCE | AT INTERSECTION WITH | |
| 12/11/2007 | 10:50 | 4872 Bernal AVE B | | |
| AND | TIME | COMMON PLACE NAME | CITY OF OCCURRENCE | |
| 12/11/2007 | 10:50 | | PLEASANTON | |

☐ CONFIDENTIAL REQUESTED ☒ DVR ☐ TRI-VALLEY HAVEN INFO ☐ VICT OF VIOLENT CRIME NOTIFIED ☐ GANG RELATED ☐ RRER

**OFFENSES**

| NO. | SECTION - TYPE | ATTEMPT | CNT | M.O. FACTORS | POINT OF ENTRY | POINT OF EXIT |
|---|---|---|---|---|---|---|
| 1 | 243(E)(1) PC-M | C | 1 | ☐ ALARM DISABLED  ☐ WEAPON USED | | |
| 2 | | | | ☐ BOUND/GAGGED  ☐ FORCED TO DISROBE | METHOD | METHOD |
| 3 | | | | ☐ DEFECATED  ☐ FORCED TO FONDLE SUSP<br>☐ DEMAND NOTE USED  ☐ FORCED TO REAR STORE | | |
| 4 | | | | ☐ ENTERED BY RUSE  ☐ GLASS OR MIRROR REMOVED<br>☐ EJACULATED  ☐ GLOVES WORN | TOOLS | |
| 5 | | | | ☐ FIRED WEAPON  ☐ HATE MOTIVATED<br>☐ FOLLOWED/TAKEN HID  ☐ IMPERSONATE POLICE/LAW | ☐ BOLT CUTTER  ☐ HAND DRILL | |
| 6 | | | | ☐ ORALLY COPULATED  ☐ KNEW LOC/MODUS USER<br>☐ RAPED WITH OBJECT  ☐ MASK WORN/FACE HIDDEN | ☐ BRICK/ROCK  ☐ SCREWDRIVER<br>☐ FLASHLIGHT  ☐ TIRE IRON | |
| 7 | | | | ☐ SODOMIZED  ☐ OTHER SEX ACTS<br>☐ TORTURED  ☐ PHONE DISABLED | ☐ GLASS CUTTER  ☐ VICE GRIPS<br>☐ KEY/LOCK/PICK  ☐ PUNCH/SIM CHIPS | |
| 8 | | | | ☐ VIC CLOTHES CUT/TORN  ☐ POWER DISABLED<br>☐ WINDOW SMASH-PLUG  ☐ RAPED | ☐ PLIERS  ☐ OTHER | |

**SUBJECTS**

| NO. | INVOLVED | NAME (LAST, FIRST, MIDDLE, SUFFIX) | DATE OF BIRTH | AGE | SEX | STATEMENT | LANGUAGE |
|---|---|---|---|---|---|---|---|
| 1 | VM | Atlas, Savon 07-48456 | 06/07/1984 | 23 | F | | |
| 2 | SU | Alexander, Robert Joseph III | 03/29/1978 | 29 | M | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |

**VEH**

| NO. | LICENSE NUMBER | STATE | YEAR | MAKE | MODEL | STYLE | COLOR |
|---|---|---|---|---|---|---|---|
| SUS 1 | DESCRIPTION | | | | | | |
| SUS 2 | DESCRIPTION | | | | | | |

**DOCS**

| | | | |
|---|---|---|---|
| CAR<br>CITATION<br>848(b) PC<br>CHP 180<br>DRIVERS LICENSE | SUPPLEMENT<br>STATEMENT FORM<br>ARREST REPORT<br>COMPLAINT REPORT<br>CONFIDENTIAL VICT | JUVENILE DA 318 FO<br>JUVENILE INTAKE<br>NTA JUV BOOKING<br>JUVENILE NTA | DMV 03687 (DUI)<br>INTOXICATION REPORT<br>DRE FORM<br>11550 FORM |
| OTHER: | | | |

**ROUTE**

☐ DISTRICT ATTORNEY ☐ CHILD PROTECTIVE SERVICES ☐ ADULT PROTECTIVE SERVICES ☐ US POSTAL INSPECTORS
☐ JUVENILE PROBATION ☐ CITY ATTORNEY ☐ CODE ENFORCEMENT ☐ FIRED TO
OTHER:

| REPORTING OFFICER | DATE WRITTEN | APPROVED BY |
|---|---|---|
| 268\ Greenwood, Clinton, William Thomas, | 12/11/2007 | 048\ Soberanes, Suzanne, , |

PPD Case Report 2007-00048456 Page 1 Of 5

**PLEASANTON POLICE DEPARTMENT**
**INVOLVED SUBJECTS 1- 6**

| DATE/TIME WRITTEN | REPORTING OFFICER | CASE NUMBER |
|---|---|---|
| 12/11/2007   13:25 | 2881 Greenwood, Clinton, William Thomas | 2007-00048456 |

TYPE: VIC-VICTIM, PARTY-CODE: AD=ADULT, DRIVER, C=CITED, DE=DECEASED, BP=BANKER, IP=INVOLVED PARTY, VO=LEGAL OWNER, RP=REPORTING PERSON, O-OTHER, PO=PARENT/GUARDIAN, PH=PARKED VEHICLE, PA=PASSENGER, RE=REGISTERED, PD=PROPERTY ONLY, RI=REGISTERED OWNER, RR=REPORTING PARTY, SO=SUSPECT, WI=WITNESS, VI=VICTIM, VT=VEHICLE

| # | INVOLVED | NAME/BUSINESS NAME | | | | | DOB | AGE | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | VM | Atlas, Sevon 07-48456 | | | | | 06/07/1964 | 23 | |
| | ALIAS NAME | | RACE W | SEX F | HEIGHT/RANGE to | WEIGHT/RANGE to | HAIR | EYES | |
| | RESIDENCE ADDRESS 4872 Bernal AVE. B  PLEASANTON, CA 94566- | | | | | | HOME PHONE (818)788-2026 | | |
| | EMAIL ADDRESS | | OTHER PHONE | | DRIVER LIC NO/STATE D6945B01 / CA | | OTHER ID / | | |
| | EMPLOYER/SCHOOL, RELATIONSHIP | EMPLOYER/SCHOOL NAME | | | | OCCUPATION | | | |
| | BUSINESS/SCHOOL ADDRESS | | | | | WORK PHONE | | | |

| # | INVOLVED | NAME/BUSINESS NAME | | | | | DOB | AGE | |
|---|---|---|---|---|---|---|---|---|---|
| 2 | SU | Alexander, Robert Joseph III | | | | | 03/29/1978 | 29 | |
| | ALIAS NAME Samuel, Robert Edwin | | RACE B | SEX M | HEIGHT/RANGE 5-11 to 5-11 | WEIGHT/RANGE 185 to 185 | HAIR BLK | EYES BRO | |
| | RESIDENCE ADDRESS 4872 Bernal AVE. B  PLEASANTON, CA 94566- | | | | | | HOME PHONE | | |
| | EMAIL ADDRESS | | OTHER PHONE | | DRIVER LIC NO/STATE B6803772 / CA | | OTHER ID / P07071 | | |
| | EMPLOYER/SCHOOL, RELATIONSHIP | EMPLOYER/SCHOOL NAME | | | | OCCUPATION | | | |
| | BUSINESS/SCHOOL ADDRESS | | | | | WORK PHONE | | | |

| # | INVOLVED | NAME/BUSINESS NAME | | | | | DOB | AGE | |
|---|---|---|---|---|---|---|---|---|---|
| 3 | | | | | | | | | |
| | ALIAS NAME | | RACE | SEX | HEIGHT/RANGE to | WEIGHT/RANGE to | HAIR | EYES | |
| | RESIDENCE ADDRESS | | | | | | HOME PHONE | | |
| | EMAIL ADDRESS | | OTHER PHONE | | DRIVER LIC NO/STATE | | OTHER ID / | | |
| | EMPLOYER/SCHOOL, RELATIONSHIP | EMPLOYER/SCHOOL NAME | | | | OCCUPATION | | | |
| | BUSINESS/SCHOOL ADDRESS | | | | | WORK PHONE | | | |

| # | INVOLVED | NAME/BUSINESS NAME | | | | | DOB | AGE | |
|---|---|---|---|---|---|---|---|---|---|
| 4 | | | | | | | | | |
| | ALIAS NAME | | RACE | SEX | HEIGHT/RANGE to | WEIGHT/RANGE to | HAIR | EYES | |
| | RESIDENCE ADDRESS | | | | | | HOME PHONE | | |
| | EMAIL ADDRESS | | OTHER PHONE | | DRIVER LIC NO/STATE | | OTHER ID / | | |
| | EMPLOYER/SCHOOL, RELATIONSHIP | EMPLOYER/SCHOOL NAME | | | | OCCUPATION | | | |
| | BUSINESS/SCHOOL ADDRESS | | | | | WORK PHONE | | | |

| # | INVOLVED | NAME/BUSINESS NAME | | | | | DOB | AGE | |
|---|---|---|---|---|---|---|---|---|---|
| 5 | | | | | | | | | |
| | ALIAS NAME | | RACE | SEX | HEIGHT/RANGE to | WEIGHT/RANGE to | HAIR | EYES | |
| | RESIDENCE ADDRESS | | | | | | HOME PHONE | | |
| | EMAIL ADDRESS | | OTHER PHONE | | DRIVER LIC NO/STATE | | OTHER ID / | | |
| | EMPLOYER/SCHOOL, RELATIONSHIP | EMPLOYER/SCHOOL NAME | | | | OCCUPATION | | | |
| | BUSINESS/SCHOOL ADDRESS | | | | | WORK PHONE | | | |

| # | INVOLVED | NAME/BUSINESS NAME | | | | | DOB | AGE | |
|---|---|---|---|---|---|---|---|---|---|
| 6 | | | | | | | | | |
| | ALIAS NAME | | RACE | SEX | HEIGHT/RANGE to | WEIGHT/RANGE to | HAIR | EYES | |
| | RESIDENCE ADDRESS | | | | | | HOME PHONE | | |
| | EMAIL ADDRESS | | OTHER PHONE | | DRIVER LIC NO/STATE | | OTHER ID / | | |
| | EMPLOYER/SCHOOL, RELATIONSHIP | EMPLOYER/SCHOOL NAME | | | | OCCUPATION | | | |
| | BUSINESS/SCHOOL ADDRESS | | | | | WORK PHONE | | | |

| PLEASANTON POLICE DEPARTMENT NARRATIVE | DATE/TIME WRITTEN 12/11/2007  13:25 | CASE NUMBER 2007-00048456 |
|---|---|---|
| | REPORTING OFFICER 2681 Greenwood, Clinton, William Thomas, | |

On 12-11-07, at 1055 Hrs., I was dispatched to 4872 Bernal Ave. Apt B on the report of an incident involving domestic violence. Upon my arrival I contacted the victim, Sevon Atlas. Atlas gave me the following information.

Atlas stated she and her boyfriend of two years, Robert Alexander had been arguing this morning. She was reluctant at first to give me any further information, however Atlas said they were at his mother's address last night when she received a phone call from her sister. After the phone call she noticed that Alexander became very angry. Atlas was unsure as to why the phone call had caused Alexander to become so upset. She stated the argument ended and they both went back home.

This morning at about 1050 Hrs., Atlas said she woke up and Alexander was not home. He returned shortly after and was again angry about the phone call. Atlas said she did not want to argue with him and told him she was going to take a shower. Shortly after she entered the bathroom, Alexander walked in and kicked her once in the left leg just above the knee. The area she was pointing to was covered by a tattoo and I could not see any injuries. Atlas stated that she did not need any medical attention at that time. Atlas said Alexander left the apartment but she did not know where he went or if he was driving a vehicle. Atlas did not give me any further information about the incident.

I explained the Domestic Violence policy to Atlas and advised her of her options for a citizens arrest. Atlas refused any further law enforcement action. I gave her the case number and explained that we would be documenting the incident and sending the information to the District Attorney's office.

A records check on Alexander showed that he has an outstanding warrant for his arrest as a Parolee at Large. We checked the area but were unable to locate him.

RECOMMENDATIONS

None, no prosecution desired by the victim.

# EXHIBIT C

PLEASANTON POLICE DEPARTMENT
4833 BERNAL AVENUE, P.O. BOX 909
PLEASANTON, CA 94566-0802 (925) 931-5100
CA0011100

# INITIAL INVESTIGATION

| | CASE NUMBER |
|---|---|
| | **2008-00006509** |

| | DATE REPORTED | TIME | INCIDENT TYPE | | SIGNIFICANT EVENT |
|---|---|---|---|---|---|
| **E V E N T** | 02/06/2008 | 23:00 | BURGLARY RESIDENTIAL | | |
| | OCCURRED BETWEEN | TIME | LOCATION OF OCCURRENCE | | AT INTERSECTION WITH |
| | 02/05/2008 | 10:00 | 4864 BERNAL AVE. A | | |
| | AND | TIME | COMMON PLACE NAME | CITY OF OCCURRENCE | |
| | 02/05/2008 | 10:00 | CIVIC SQUARE APARTMENTS | PLEASANTON | |

☐ CONFIDENTIAL REQUESTED   ☐ DVR   ☐ TRI-VALLEY HAVEN INFO   ☐ VICT OF VIOLENT CRIME NOTIFIED   ☐ GANG RELATED   ☐ AREA

## OFFENSES

| NO. | SECTION-TYPE | PRE | CONT | COMPL | FACTORS | | POINT OF ENTRY | POINT OF EXIT |
|---|---|---|---|---|---|---|---|---|
| 1 | 459 PC-F | C | 1 | ☐ ALARM DISABLED | ☐ WEAPON USED | FRONT DOOR | FRONT DOOR |
| 2 | | | | ☐ BOUND/GAGGED<br>☐ DEFEATED | ☐ FORCED TO DISROBE<br>☐ FORCED TO FONDLE SUSP | | |
| 3 | | | | ☐ DEMAND NOTE USED<br>☐ INDICATED BY SUSP | ☐ FORCED TO BEAR STORE<br>☐ GLASS OR PANEL ATTACHED | METHOD | METHOD |
| 4 | | | | ☐ SIMULATED<br>☐ FIREARM USED | ☐ GLOVES WORN<br>☐ MACE INDICATED | BROKE SMASHED | |
| 5 | | | | ☐ FOLLOWED/STALKED VIC<br>☐ FORCED CONGRESS ACT | ☐ INAPPROPRIATE POLICE SAW<br>☐ KNIFE LOG HIDDEN LOSS | TOOLS | |
| 6 | | | | ☐ ORALLY COPULATED<br>☐ RAPED WITH OBJECT | ☐ MASK WORN/FACE HIDDEN<br>☐ MASTURBATED | ☐ BOLT CUTTER    ☐ SAWDRILL<br>☐ BRICK/ROCK    ☐ SCREWDRIVER | |
| 7 | | | | ☐ SODOMIZED<br>☐ TORN USED | ☐ OTHER SEX ACTS<br>☐ PHONE DISABLED | ☐ FLASHLIGHT    ☐ TAPE WIRE<br>☐ GLASS CUTTER    ☐ VICE SAME | |
| 8 | | | | ☐ VIC CLOTHES CUT/TORN<br>☐ WINDOW SMASH BURG | ☐ PONZEI DISABLED<br>☐ RAPED | ☐ KEY/LOCK/PICK    ☐ PORCELAIN CHIPS<br>☐ PLIERS    ☑ OTHER | |
| | | | | | | ☐ PRY TOOL | |

## SUBJECTS

| NO. | INVOLVED | NAME (LAST, FIRST, MIDDLE SUFFIX) | DOB-DATE | CHURCH | AGE | SEX | (IN) STATEMENT | LANGUAGE |
|---|---|---|---|---|---|---|---|---|
| 1 | SU | ALEXANDER, ROBERT | 03/29/1978 | | 29 | M | WRITTEN | |
| 2 | VM | SMITH, RACHEL ERIN | 01/28/1986 | | 22 | F | WRITTEN | |
| 3 | WT | ATIAS, SEVON | 06/07/1984 | | 23 | F | NONE | |
| 4 | WT | KLAVON, GUS WILLIAM JR. | 01/29/1943 | | 65 | M | VERBAL | |
| 5 | | | | | | | | |
| 6 | | | | | | | | |
| 7 | | | | | | | | |
| 8 | | | | | | | | |
| 9 | | | | | | | | |
| 10 | | | | | | | | |
| 11 | | | | | | | | |
| 12 | | | | | | | | |

## VEHICLE

| | LICENSE NUMBER | STATE | YEAR | MAKE | MODEL | TYPE | STYLE | COLOR |
|---|---|---|---|---|---|---|---|---|
| SUS 1 | DESCRIPTION | | | | | | | |
| SUS 2 | DESCRIPTION | | | | | | | |

## DOCS

| | | | |
|---|---|---|---|
| CAR<br>CITATION<br>848(b) PC<br>CHP 180<br>DRIVERS LICENSE | SUPPLEMENT<br>STATEMENT FORM<br>ARREST REPORT<br>COMPLAINT REPORT<br>CONFIDENTIAL VICT | JUVENILE DA DISPO<br>JUVENILE INTAKE<br>NTA JUV BOOKING<br>JUVENILE NTA | DRIV 65247 (DUI)<br>INTOXICATION REPORT<br>ORG FORM<br>11500 FORM |

OTHER:

## ROUTE

☐ DISTRICT ATTORNEY     ☐ CHILD PROTECTIVE SERVICES     ☐ ADULT PROTECTIVE SERVICES     ☐ US POSTAL INSPECTORS
☐ JUVENILE PROBATION     ☐ CITY ATTORNEY     ☐ CODE ENFORCEMENT     ☐ STREETS

OTHER: **STATE PAROLE**

| REPORTING OFFICER | DATE WRITTEN | APPROVED BY |
|---|---|---|
| 197\ Boland, James, , | 02/07/2008 | 118\ Bretzing, Jeffrey, , |

| PLEASANTON POLICE DEPARTMENT | DATE/TIME WRITTEN 2/7/2008    05:49 | CASE NUMBER 2008-00006508 |
|---|---|---|
| INVOLVED SUBJECTS 1- 6 | REPORTING OFFICER 1971 Boland, James | |

| INVOLVED | NAME/BUSINESS NAME | | | | DOB 03/28/1978 | | AGE 29 | |
|---|---|---|---|---|---|---|---|---|
| SU | ALEXANDER, ROBERT | | | | | | | |
| ALIAS NAME | | RACE B | SEX M | HEIGHT/RANGE 5-10 to | WEIGHT/RANGE 150 to | | HAIR BALD | EYES BRO |
| RESIDENCE ADDRESS 4872 BERNAL AVE. B  PLEASANTON, CA 94566- | | | | | | HOME PHONE (925)249-0558 | | |
| EMAIL ADDRESS | | | OTHER PHONE (925)398-1214 | | DRIVERS LIC NO./STATE B8803772 / CA | | OTHER ID / | |
| EMPLOYER/SCHOOL RELATIONSHIP EMPLOYER | | EMPLOYER/SCHOOL NAME OAKLAND AUTO GUARDIAN | | | | OCCUPATION TRUCK DRIVER | | |
| BUSINESS/SCHOOL ADDRESS 47TH AVE. OAKLAND, CA - | | | | | | WORK PHONE | | |

| INVOLVED | NAME/BUSINESS NAME | | | | DOB 01/28/1986 | | AGE 22 | |
|---|---|---|---|---|---|---|---|---|
| VM | SMITH, RACHEL ERIN | | | | | | | |
| ALIAS NAME | | RACE W | SEX F | HEIGHT/RANGE 5-07 to | WEIGHT/RANGE 135 to | | HAIR BRO | EYES BRO |
| RESIDENCE ADDRESS 4894 BERNAL AVE. A  PLEASANTON, CA 94566- | | | | | | HOME PHONE (925)684-1816 | | |
| EMAIL ADDRESS | | | OTHER PHONE | | DRIVERS LIC NO./STATE D5317312 / CA | | OTHER ID / | |
| EMPLOYER/SCHOOL RELATIONSHIP EMPLOYER | | EMPLOYER/SCHOOL NAME BLACK ANGUS | | | | OCCUPATION FOOD SERVICE | | |
| BUSINESS/SCHOOL ADDRESS DUBLIN, CA | | | | | | WORK PHONE | | |

| INVOLVED | NAME/BUSINESS NAME | | | | DOB 06/07/1984 | | AGE 23 | |
|---|---|---|---|---|---|---|---|---|
| WT | ATIAS, SEVON | | | | | | | |
| ALIAS NAME | | RACE W | SEX F | HEIGHT/RANGE 5-04 to | WEIGHT/RANGE 116 to | | HAIR BRO | EYES BRO |
| RESIDENCE ADDRESS 4872 BERNAL AVE. B  PLEASANTON, CA 94566- | | | | | | HOME PHONE (925)339-6955 | | |
| EMAIL ADDRESS | | | OTHER PHONE | | DRIVERS LIC NO./STATE D6946801 / CA | | OTHER ID / | |
| EMPLOYER/SCHOOL RELATIONSHIP EMPLOYER | | EMPLOYER/SCHOOL NAME APPLEBEES | | | | OCCUPATION FOOD SERVICE | | |
| BUSINESS/SCHOOL ADDRESS DUBLIN, CA | | | | | | WORK PHONE | | |

| INVOLVED | NAME/BUSINESS NAME | | | | DOB 01/28/1943 | | AGE 65 | |
|---|---|---|---|---|---|---|---|---|
| WT | KLAVON, GUS WILLIAM JR. | | | | | | | |
| ALIAS NAME | | RACE W | SEX M | HEIGHT/RANGE 5-10 to | WEIGHT/RANGE 175 to | | HAIR BRO | EYES GRN |
| RESIDENCE ADDRESS 4868 BERNAL AVE. C  PLEASANTON, CA 94566- | | | | | | HOME PHONE (925)461-4380 | | |
| EMAIL ADDRESS | | | OTHER PHONE | | DRIVERS LIC NO./STATE D1902610 / CA | | OTHER ID / | |
| EMPLOYER/SCHOOL RELATIONSHIP EMPLOYER | | EMPLOYER/SCHOOL NAME CIVIC SQUARE APARTMENTS | | | | OCCUPATION MANAGER | | |
| BUSINESS/SCHOOL ADDRESS | | | | | | WORK PHONE (925)461-4380 | | |

| INVOLVED | NAME/BUSINESS NAME | | | | DOB | | AGE | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| ALIAS NAME | | RACE | SEX | HEIGHT/RANGE to | WEIGHT/RANGE to | | HAIR | EYES |
| RESIDENCE ADDRESS | | | | | | HOME PHONE | | |
| EMAIL ADDRESS | | | OTHER PHONE | | DRIVERS LIC NO./STATE / | | OTHER ID / | |
| EMPLOYER/SCHOOL RELATIONSHIP | | EMPLOYER/SCHOOL NAME | | | | OCCUPATION | | |
| BUSINESS/SCHOOL ADDRESS | | | | | | WORK PHONE | | |

| INVOLVED | NAME/BUSINESS NAME | | | | DOB | | AGE | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| ALIAS NAME | | RACE | SEX | HEIGHT/RANGE to | WEIGHT/RANGE to | | HAIR | EYES |
| RESIDENCE ADDRESS | | | | | | HOME PHONE | | |
| EMAIL ADDRESS | | | OTHER PHONE | | DRIVERS LIC NO./STATE / | | OTHER ID / | |
| EMPLOYER/SCHOOL RELATIONSHIP | | EMPLOYER/SCHOOL NAME | | | | OCCUPATION | | |
| BUSINESS/SCHOOL ADDRESS | | | | | | WORK PHONE | | |

| PLEASANTON POLICE DEPARTMENT PROPERTY CONTROL REPORT | DATE/TIME WRITTEN 2/7/2006    05:49 | | CASE NUMBER 2006-00006509 |
|---|---|---|---|
| | REPORTING OFFICER 1971 Boland, James, | | |

CODE: B=BURNED C=COUNTERFEITED/FORGED D=DAMAGED DS=DESTROYED SB=SEIZED/ACK F=FOUND/ILLEGAL LOST/L O=OBSERVATION R=RECOVERED OK=SAFEKEEPING S=STOLEN U=RECOVERED V=VICTIM/VEHICLE

| | CODE S | QTY 3 EA | TYPE MISCELLANEOUS | SERIAL NUMBER | VALUE $..70.00 |
|---|---|---|---|---|---|
| 1 | DESCRIPTION (MAKE/MODEL/DESCRIPTION) BOTTLES OF PERFUME, 1 DKNY PERFUME, 1 ESCADA PERFUME, 1 JUICY COUTURE PERFUME | | | | |
| 2 | CODE S | QTY 1 EA | TYPE ELECTRONICS | SERIAL NUMBER | VALUE $..130.00 |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) ZENITH 7 INCH PORTABLE DVD PLAYER | | | | |
| 3 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 4 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 5 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 6 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 7 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 8 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 9 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 10 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 11 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 12 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 13 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 14 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 15 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 16 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 17 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 18 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 19 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |
| 20 | CODE | QTY | TYPE | SERIAL NUMBER | VALUE |
| | DESCRIPTION (MAKE/MODEL/DESCRIPTION) | | | | |

| PLEASANTON POLICE DEPARTMENT NARRATIVE | DATE/TIME WRITTEN 2/7/2008    06:49 | CASE NUMBER 2008-00006509 |
|---|---|---|
| | REPORTING OFFICER 197\ Boland, James, , | |

On 02-06-08 at 2305 hours, I responded to 4864 Bernal Ave. #A, on a reported residential burglary. I made contact with the RP, Rachel Smith and she told me the following.

On 02-05-08 at 8:30 p.m., she came home from school and noticed the front door frame to her apartment was damaged, and had been repaired. Smith said she went into her room and noticed some perfume was missing off her dresser. Smith called Sevon Atias, who had been staying with her the past few days and asked her what happened. Atias told her that around 10:00 am that morning, Robert Alexander, who is Atias's ex-boyfriend, kicked the front door in and began looking in all the rooms of the apartment. Atias told her that Alexander thought Atias was with some other guy in the apartment. Atias told Smith that she ran out of the apartment, spoke to Gus the manager, and asked him to fix the door. Smith said on 02-06-08 at approximately 4:00 pm, she came home from work and noticed her new portable DVD player was also missing from the side of her bed. Smith said she didn't notice the DVD player was missing when she originally came home on 02-05-08. Smith desires prosecution in this case and completed a written statement, which is attached to this report.

On 02-07-08 at 0032 hours, I spoke with Gus Klavon by phone. Klavon is the manager of the Civic Square apartments. Klavon said on the late morning of 02-05-08, he received a phone call from Sevon Atias telling him that she came home and that someone had broken into Rachel Smith's apartment. Atias asked him if he could send a maintenance person over to fix her door because she had to go to work. Klavon said he sent a maintenance person over and fixed the door. Klavon said that Atias didn't give him any information on who had broken into the apartment.

On 02-07-08 at 0207 hours, I received a phone call from Sevon Atias regarding the incident at Rachel Smith's apartment. Atias wasn't willing to meet with me to provide a written statement but was willing to give me a verbal statement over the phone. I spoke to Atias on a recorded phone line and a tape of the conversation will be retrieved from records and will be booked into evidence.

Atias told me that at 10:00 am on 02-05-08, she was inside Rachel's apartment and Robert kept calling her on the phone. Atias said she kept telling him to leave her alone. Atias said while she was on the phone with Robert, he kicked the front door of Rachel's apartment in and entered the apartment. Atias said she thought Robert was going to hit her, but he didn't and he went into Rachel's room, and then other rooms in the apartment. Atias said she was scared; she ran out of the house and went to the Civic Square apartment's office. Atias said she told them that Robert was in Rachel's apartment and they told her she needed to call the police. Atias then asked to have a maintenance person come repair the door. Atias said when she went back to the apartment, Robert was gone. Atias thinks that Robert took the items that are missing from the apartment, but didn't see him, because she had ran out of the apartment.

On 02-07-08 at approximately 0330 hours, I met Robert Alexander at his mom's house, at 2096 Eilene Drive, Pleasanton. Alexander told me the following:

Alexander said that on Tuesday, 02-05-08 at approximately 0900 hours, Sevon Atias came to his apartment and asked to get rug shampooer. Alexander said he carried it down the stairs and then Atias rolled it over to Rachel Smith's apartment where she was staying. Alexander said after that he drove to Social Services in Hayward and was there from approximately 1000 hours to 1200 hours. He was there applying for Medi-Cal, Social Security, and Un-employment. He then came back home, grabbed his cell phones and went to Dublin to activate the phones. Alexander said he never went to Rachel's house that morning, didn't kick her door, and didn't enter her apartment. Alexander said he thinks Atias is trying to get him back because there

**PPD Case Report 2008-00006509**

(Narrative Continued)

not together anymore, and because he had her arrested in the past for breaking into his apartment. Alexander said Atias is also mad because he had Gus, the manager from Civic Center Apartments take her name off the lease. Atias also told him in the evening of 02-05-08; Rachel Smith was making her move out of her apartment because she was missing some perfume. Alexander said that Sevon asked him if he would buy some perfume for Rachel. Alexander signed a written statement and I attached it to this report.

**Forward to the DA for review.**

# EXHIBIT D

242 Pc - Battery

10851 vc - Stolen Veh

PS - Pedestrian Stop

CS - Surveillance

273.5 Pc - DV

415 - Disturbance

C Stan - Civil Standby

CLENARD CALL SEARCH
Print Date/Time: 3/27/2008 1:28:04 PM

| Call No. | Call Date/Time | Call Type | Location | Incident Number |
|---|---|---|---|---|
| 445 | 02/16/2008 00:50:10 | 242 | 4872 BERNAL AV B, PLS | 2008-00007979 |
| 786 | 02/07/2008 12:53:37 | ADVICE | 4872 BERNAL AV B, PLS | 2008-00006598 |
| 658 | 02/06/2008 19:35:14 | 10851 | 4872 BERNAL AV B, PLS | 2008-00006485 |
| 916 | 12/11/2007 22:14:39 | PS | 4872 BERNAL AV B, PLS | 2007-00048580 |
| 970 | 12/11/2007 17:13:52 | CS | 4872 BERNAL AV B, PLS | 2007-00048530 |
| 795 | 12/11/2007 10:54:27 | 273.5 | 4872 BERNAL AV B, PLS | 2007-00048516 |
| 418 | 11/11/2007 10:23:49 | 242 | 4872 BERNAL AV B, PLS | 2007-00044652 |
| 81 | 11/11/2007 03:37:35 | 415 | 4872 BERNAL AV B, PLS | 2007-00043758 |
| 681 | 07/11/2007 23:02:05 | 415 | 4872 BERNAL AV B, PLS | 2007-00025173 |
| 202 | 07/09/2007 22:36:09 | C STAN | 4872 BERNAL AV B, PLS | 2007-00024791 |
| 493 | 05/23/2007 17:01:28 | 415 | 4872 BERNAL AV B, PLS | 2007-00017300 |
| 413 | 05/23/2007 10:12:40 | 242 | 4872 BERNAL AV B, PLS | 2007-00017234 |

Total Rows: 12

# EXHIBIT E

## Alameda County Public Defender



Pleasanton Branch Office
5672 Stoneridge Drive
Pleasanton, California 94588-8559
(925) 551-6863

Diane A. Bellas
Public Defender
Harold G. Friedman
Chief Assistant

February 11, 2008
File No. L07-02098
Docket No. 124327

Mr. Sevon Atias
4872 Bernal Avenue, #B
Pleasanton, CA   94566

Dear Mr. Atias:

Enclosed please find a copy of the Court Order you requested, which shows that it is for "non-harassment" and is **NOT** a stay-away order.

Best of luck to you and your family in the future.

Sincerely,

ALAMEDA COUNTY PUBLIC DEFENDER

Cole Powell
Attorney at Law

Encl.
CP:ead

CR-16_

| SUPE___ ___OURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>Gale/Schenone Hall of Justice<br>5672 Stoneridge Road<br>Pleasanton, CA 94588 | FOR COURT USE ONLY<br><br>**FILED**<br>ALAMEDA COUNTY<br><br>JUL 2 4 2007<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ Deputy |
|---|---|

PEOPLE OF THE STATE OF CALIFORNIA
vs
DEFENDANT: Atias, Sevon

**CRIMINAL PROTECTIVE ORDER – DOMESTIC VIOLENCE**
(CLETS-CPO) (Penal Code, §§ 136.2 and 1203.097(a)(2))
☐ ORDER PENDING TRIAL (Pen. Code § 136.2)  ☑ MODIFICATION
☑ ORDER POST-TRIAL PROBATION CONDITION (Pen. Code § 1203.097)
For domestic violence cases as defined in Penal Code § 13700 or Family Code § 6211

CASE NUMBER:

---

**This Order May Take Precedence over Other Conflicting Orders, See Item 1 on Page 2.**

PERSON TO BE RESTRAINED (Complete name): Sevon Atias
Sex: ☐ M ☑ F  Ht: 5'4"  Wt: 116  Hair Color: BRN  Eye Color: BRN  Race: O  Age: ___  Date of Birth: ___
☐ The defendant is a peace officer with _____ Department:

1. This proceeding was heard on (date): 7/24/07 at (time): 255 pm In Dept: 701 Room: GSH
   by judicial officer (name): J. Blea III
2. This order expires on (date): 7/24/10. If no date is listed, this order expires three years form the date of issuance.
3. ☑ Defendant was personally served with a copy of this order at the court hearing, and no additional proof of service of this order is required.
4. COMPLETE NAMES OF EACH PROTECTED PERSONS: John Doe.. as in Complaint

**GOOD CAUSE APPEARING, THE COURT ORDERS THAT THE ABOVE-NAMED DEFENDANT**
5. must not harass, strike, threaten, assault (sexually or otherwise), follow, stalk, molest, destroy or damage personal or real property, disturb the peace, keep under surveillance, or block movements of the protected persons named above.
6. must surrender to local law enforcement or sell to a licensed gun dealer any firearm owned or subject to his or her immediate possession or control within 24 hours after service of this order and must file a receipt with the court showing compliance with this order within 48 hours of receiving this order.
7. must not attempt to or actually prevent or dissuade any victim or witness from attending a hearing or testifying or making a report to any law enforcement agency or person.
8. must take no action to obtain the addresses or locations of protected persons or their family members, caretakers, or guardian unless good cause exists otherwise. ☑ The court finds good cause not to make the order in item 8.
9. ☐ must have no personal, electronic, telephonic, or written contact with the protected persons named above.
10. ☐ must have no contact with the protected persons named above through a third party, except an attorney of record.
11. ☐ must not come within _____ yards of the protected persons named above.
12. ☐ may have peaceful contact with the protected persons named above only for the safe exchange of children for court-ordered visitation as stated in the attached Family, Juvenile, or Probate court order in Case No. _____, issued on (date): _____, as an exception to the "no-contact" or "stay-away" provision in paragraph 9, 10, or 11 of this order.
13. ☐ may have peaceful contact with the protected persons named above only for the safe exchange of children for visitation as stated in a Family, Juvenile, or Probate court order issued after the date this order is signed, as an exception to the "no-contact" or "stay-away" provision in paragraph 9, 10, or 11 of this order.
14. ☐ The protected persons may record any prohibited communications made by the restrained person.
15. ☐ Other orders including stay-away orders from specific locations:

Date: 7.24.07

JUDICIAL OFFICER  Jacob Blea III  Department/Division:

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CR-160 (Rev. January 1, 2007)
Approved by Department of Justice

**CRIMINAL PROTECTIVE ORDER – DOMESTIC VIOLENCE**
(CLETS-CPO) (Penal Code §§ 136.2 and 1203.097(a)(2)
(Distribution: original to file; 1 copy to each protected person; 1 copy to defendant; 1 copy to prosecutor; 1 copy to law enforcement)

Penal Code, §§ 136.2, 166, 1203.097(a)(2)
www.court.info.ca.gov

```
02160B 0053
IB P6X0
  8AYX.CA0011100
RE: QRR.CA0011100.NAM/ATIAS,SEVON.SEX/F.DOB/06071984
MATCH MADE ON
NAM/ATIAS,SEVON
NAME FIELD SEARCH REVEALS:
ROS HIT # 001
HIT MADE ON
NAM/ATIAS,SEVON
FCN/1
ORI/(  ......
OC/
NIC/h.....
*** SERVED CRIMINAL PROTECTIVE ORDER ***
*DO NOT ARREST OR DETAIN BASED SOLELY ON THIS RESPONSE*
THIS RESTRAINING ORDER RESPONSE MAY BE THE SAME AS:
* * * * * RESTRAINED PERSON INFORMATION * * * * *


NAM/ATIAS,SEVON DOB/1
SEX/F RAC/O HGT/504 WGT/... .../BRO HAI/BRO
ADR/
CTY/PLEASANTON  STT/CA  ZIP/94566
MIS/FOR A COPY OF THIS ORDER, PLEASE CALL ... ...  . BETWEEN 0830 AND
1600 ON REGULAR BUSINESS DAYS  AT ALL OTHER TIMES, CALL 510-667-3699
* * * * * PROTECTED PERSON INFORMATION * * * * *
PROTECTED PERSON NAME/ALEXANDER,ROBERT JOSEPH
PROTECTED PERSON SEX/M PROTECTED PERSON RACE/B
PROTECTED PERSON DOB/19780329
* * * * * COURT INFORMATION * * * * *
RESTRAINED PERSON PRESENT IN COURT/YES
COURT NAME/ALAMEDA CO SUPERIOR - GALE-SCHENONE HALL OF JUSTICE
COURT PHONE NUMBER/
COURT CASE NUMBER/124327
ISSUE DATE/.......] EXPIRATION DATE/   ...
CONTACT PROTECTED PERSON/YES - THE RESTRAINED PERSON CAN CONTACT THE PRO


TECTED PERSON
FIREARM PROVISIONS/CANNOT PURCHASE OR RECEIVE AND MUST SURRENDER   ALL FIR
EARMS
OTHER ORDERS/MUST NOT HARASS, STRIKE, THREATEN, ASSAULT SEXUALLY OR OTHE
RWISE, FOLLOW, STALK, MOLEST, DESTROY OR DAMAGE PERSONAL OR REAL PROPERT
Y OF, DISTURB THE PEACE OF, KEEP UNDER SURVEILLANCE, OR BLOCK MOVEMENTS
OF THE PROTECTED PERSONS-MUST SURRENDER ANY FIREARMS WITHIN 24 HRS AFTER
SERVICE OF THIS ORDER AND MUST FILE A RECEIPT WITH COURT SHOWING COMPLIA
NCE WITHIN 48 HRS OF RECEIVING THE ORDER
IMMEDIATELY CONFIRM WITH         ALAMEDA CO SUPERIOR COUR DCVP
TE
LEPHONE 510 891-6027 IF NO ANSWER CALL TELEPHONE 510 667-3699
********** VIOLATION MESSAGE **********
NUMBER OF PRIOR VIOLATION MSG/000
********** END OF DVROS MESSAGE **********
```

# EXHIBIT F

You will be released on parole effective _____ **12-27-05** _____ for a period of _____ **3 YEARS** _____ . This parole is subject to the following notice and conditions. Should you violate conditions of this parole, you are subject to arrest, suspension, and/or revocation of your parole.

You waive extradition to the State of California from any state or territory of the United States or from the District of Columbia. You will not contest any effort to return you to the State of California.

When the Board of Prison Terms determines, based upon psychiatric reasons, that you pose a danger to yourself or others, the Board may, if necessary for psychiatric treatment, order your placement in a community treatment facility or state prison or may revoke your parole and order your return to prison.

You and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer.

If another jurisdiction has lodged a detainer against you, you may be released to the custody of that jurisdiction. Should you be released from their custody prior to the expiration of your California parole, or should the detainer not be exercised, you are to immediately contact the nearest Department of Corrections' Parole and Community Services Division Office for instructions concerning reporting to a parole agent.

You have been informed and have received in writing the procedure for obtaining a Certificate of Rehabilitation (4852.21 PC).

## CONDITIONS OF PAROLE

1. **SPECIAL CONDITIONS MUST:** a) Relate to the crime for which you were convicted, b) Relate to conduct which is itself criminal, c) Prohibit conduct which may be related to future criminality. You are subject to the following special conditions: **A. No contact, by any means, w/ victim of commitment offense. B. No contact, by any means, w/ Karen Taylor. C. Submit to anti-narcotic testing. D. No contact, without prior WRITTEN APPROVAL from DAPO, w/ Sevon Atias.**

Reasons for the imposition of special conditions of parole: **A. Due to comm. offense. B. GCF-violation dated 8-21-06. C. Due to prior violations. D. Active ~~restraining~~ protective order against Sevon Atlas and prior problems/altercations between Subject and Ms. Atlas.**

| I acknowledge my special conditions of parole. | _signature_ | 3-21-08 |
|---|---|---|
| Parolee's Initials | SIGNATURE OF UNIT SUPERVISOR | DATE SIGNED |

2. **RELEASE, REPORTING, RESIDENCE, AND TRAVEL:** Unless other arrangements are approved in writing, you will report to your parole agent on the first working day following your release. Any change of residence shall be reported to your parole agent in advance. You will inform your parole agent within 72 hours of any change of employment location, employer, or termination of employment.

3. **PAROLE AGENT INSTRUCTIONS:** You shall comply with all instructions of your parole agent and will not travel more than 50 miles from your residence without his/her prior approval. You will not be absent from your county of residence for a period of more than 48 hours and not leave the State of California without prior written approval of your parole agent.

4. **CRIMINAL CONDUCT:** You shall not engage in conduct prohibited by law (state, federal, county or municipal). You shall immediately inform your parole agent if you are arrested for a felony or misdemeanor crime. Conduct prohibited by law may result in a parole revocation even though no criminal conviction occurs.

5. **WEAPONS:** You shall not own, use, have access to, or have under your control: (a) any type of firearm or instrument or device which a reasonable person would believe to be capable of being used as a firearm or any ammunition which could be used in a firearm; (b) any weapon defined in state or federal statutes or listed in California Penal Code Section 12020 or any instrument or device which a reasonable person would believe to be capable of being used as a weapon as defined in Penal Code Section 12020; (c) any knife with a blade longer than two inches, except kitchen knives which must be kept in your residence and knives related to your employment which may be used and carried only in connection with your employment; or (d) a crossbow of any kind.

6. You shall sign the parole agreement containing the conditions of parole specified in the Board of Prison Terms (BPT) Rules Section 2512 and any special conditions imposed as specified in BPT Rules Section 2513. Penal Code Section 3060.5 provides that the BPT shall revoke any prisoner/parolee who refuses to sign the Notice and Conditions of Parole. You have the right to appeal the special conditions of parole. Special conditions imposed by the Parole and Community Services Division may be appealed pursuant to California Code of Regulations (CCR), Section 3084 and 3085. Special Conditions of parole imposed by the BPT may be appealed pursuant to CCR, Section 2050.

**I have read or have had read to me and understand the conditions of parole as they apply to me.**

| CDC NUMBER | PAROLEE'S NAME (Print or Type) | PAROLEE'S SIGNATURE | DATE SIGNED |
|---|---|---|---|
| **P07071** | **Alexander, Robert** | | |

**TO BE COMPLETED BY STAFF:**

Does the inmate/parolee have a qualifying disability requiring effective communication?  ☐ YES  ☐ NO

If yes, cite the source document and/or _____

What type of accommodation/assistance was provided to achieve effective communication to the best of the inmate's/parolee's ability? _____

| STAFF NAME (Print or Type) | STAFF SIGNATURE | DATE SIGNED |
|---|---|---|
| C. Johnson _for agent Snyder_ | _signature_ | 3/24/08 |

DISTRIBUTION: ORIGINAL – CENTRAL FILE, CANARY – PAROLE AGENT, PINK – PAROLEE/INMATE

# EXHIBIT G

BOARD OF PAROLE HEARINGS
STATE OF CALIFORNIA

*Records Office Use Only*

| | |
|---|---|
| Projected Revocation Release Date | |
| Revocation Release Date | |
| Controlling Discharge Date | |
| Discharge Review Date | |

## SUMMARY OF REVOCATION HEARING AND DECISION

(BPH Rules, Chapter 6, Article 3)

### PRELIMINARY INFORMATION                AYC 552

**Type of Hearing**
REVOCATION

**Location of Hearing**
SANTA RITA COUNTY JAIL
Parolee in custody at Time of Hearing: YES

**Basis for Charges**
Parole Violation Report, Dated:    04-APR-2008

Police Report Agency      Dated:

**Optional Waiver**
NO      Date Signed by Parolee:
Date of BPH Action:

Assessment:                        M 5

---

**Legal Data**
The crime for which the parolee was committed to prison occurred on or before 12-31-1978:  NO
The crime for which the parolee was committed to prison occurred on or after 1-1-1979:   YES
Date of arrest on current parole violation charge(s): 26-MAR-2008
Date hold was placed on current parole violation charge(s): 26-MAR-2008      PC 3056 ONLY

**ADA**  Special Needs:

**Present at Hearing**    Hearing Officer: J MARTIN

1. [X] Yes [ ] No  Parolee (If Parolee absent, Why?)
2. [X] Yes [ ] No  Attorney Name: DEMMING, MARK                    [ ] Waived
3. [X] Yes [ ] No  Agent of Record or Substitute: KELLER, DAVID    Reason not present:
4. [ ] Yes [ ] No  Hearing Agent:                                  Reason not present:
5. [ ] Yes [X] No  Observers    Name and Organization:
6. [ ] Yes [X] No  Interpreter Assigned Language                   Name

**Witnesses** (continue on the last page if more than 8 witnesses)

| Present | | Name | Notifica | | Wit. Desig.** | | Testified | Excused | If absent, state specific reason. |
|---|---|---|---|---|---|---|---|---|---|
| Yes | No | | Meth.* | Date | Stat. | Req. | | | |
| X | | AGENT D. KELLER | M | 16-APR-08 | A | S | X | | |
| X | | SEVON ATIAS | SP | 16-APR-08 | V | S | X | | |
| X | | AGENT BENT | SP | 16-APR-08 | F | P | X | | |
| | X | AGENT JOHNSON | M | 16-APR-08 | F | P | | | DNA / UNKNOWN |
| X | | PLEASANTON PD OFC BOLAND | SP | 16-APR-08 | A | S | X | | |
| X | | PLEASANTON PD OFC GREENWO | SP | 16-APR-08 | A | S | X | | |
| | X | RACHEL SMITH | SP | 16-APR-08 | V | S | | | DNA / UNKNOWN |

*NOTIFICATION METHOD

M = Memo      PC = Personal Contact
L = Letter    SP = Subpoena
PH = Phone    TT = Teletype

**USE ABBREVIATION FOR WITNESS DESIGNATION

Status:  A = Adverse       Requested by: S = State
         F = Friendly                    P = Parolee
         V = Victim

---

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| ALEXANDER, ROBERT | P07071 | SAN LEANDRO / 2 | 29-APR-2008 |
| | | SNYDER, JOVIC | |

BPH 1103-REV (Rev. 01/05) Electronic              Page 1 of 5              PERMANENT ADDENDUM

BOARD OF PAROLE HEARINGS                                                      STATE OF CALIFORNIA
## SUMMARY OF REVOCATION HEARING AND DECISION

Preliminary Information (cont.)

H. HEARING:    Occurred

REASON:

Specify Witnesses/Documents needed for next hearing:

## SUMMARY OF FINDINGS

ADMISSIONS/DENIALS AND FINDINGS

| Charge Number | Code Number | Charge Specified | Plea | | | Findings | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Admit | Deny | No Plea | Good Cause | Dismiss | Postponed |
| 1. | 998 | Refusal to sign Parole Conditions (Assessment up to 6 months per PC 3060.5) | | X | | X | | |
| 2. | 455 | Battery spouse/child | | X | | X | | |
| 3. | 505 | Burglary 1st (includes inhabited dwelling, occupants present or not) | | X | | | X | |

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
| --- | --- | --- | --- |
| ALEXANDER, ROBERT | P07071 | SAN LEANDRO / 2 SNYDER, JOVIC | 29-APR-2008 |

BPH 1103-REV (Rev. 01/05) Electronic          Page 2 of 5                    PERMANENT ADDENDUM

BOARD OF PAROLE HEARINGS                                                                STATE OF CALIFORNIA
## SUMMARY OF REVOCATION HEARING AND DECISION

### REASON FOR DECISION

Basis for Conclusion:

ADA REVIEW --- BPT 1073 REFLECTS NO DISABILITIES. DEC DATABASE REFLECTS NO DISABILITY HISTORY, WITH A
H.S. EDUCATION AND SOME COLLEGE. AT REV HEARING, NO ACCOMMODATIONS REQUESTED OR PROVIDED.

NO GOOD CAUSE FOUND ON:
CHARGE 3: (BURGLARY 1ST) BASED ON LACK OF PERCIPIENT WITNESSES THAT PAROLEE KICKED IN A DOOR AND
ENTERED THE APARTMENT/RESIDENCE OF SMITH. A NOTARIZED DOCUMENT BY SMITH WAS RECEIVED AND IT
STATED THAT PAROLEE WAS DEFINITELY NOT THE BURGLAR. PAROLEE WAS NOT SEEN WITH ANY OF THE ITEMS
THAT WERE ALLEGEDLY TAKEN FROM SMITH'S APARTMENT.

GOOD CAUSE FOUND ON:
CHARGE 1: (REFUSAL TO SIGN COND. OF PAROLE) BASED ON TESTIMONY OF A OR THAT PAROLEE WILFULLY
REFUSED TO SIGN CONDITIONS OF PAROLE, SPECIFICALLY A CONDITION THAT PAROLEE HAVE NO CONTACT WITH
SEVON ATIAS. IN A SEPARATE HEARING, IT WAS FOUND THAT THERE WAS A NEXUS BETWEEN THE PROPOSED
SCOP AND PAROLEE'S PAST BEHAVIOR, INCLUDING A TUMULTUOUS RELATIONSHIP WITH SEVON ATIAS.
CHARGE 2: (BATTERY/SPOUSE) BASED ON TESTIMONY OF OFFICER GREENWOOD THAT HE RESPONDED TO A
REPORT BY SEVON ATIAS THAT PAROLEE HAD KICKED HER ON 12-11-07. WHILE THE VICTIM CAME TO THE HEARING
AND RECANTED, CLAIMING THAT SHE COULD NOT REMEMBER MUCH OF ANYTHING, THAT WITNESS SHOWED VERY
LITTLE CREDIBILITY AND REASONS FOR BIAS. THE INVESTIGATION OF OFFICER GREENWOOD HAS HIGH CREDIBILITY
AND IT IS SUPPORTED BY SEVERAL EVENTS OF CONFLICT AND ALLEGATIONS BETWEEN THE PARTIES.

Basis for Disposition:

RETURN TO CUSTODY IS WARRANTED BASED ON THE VIOLATION CHARGES.
REMEDIAL SANCTIONS WERE CONSIDERED AND DETERMINED TO BE INAPPROPRIATE.

PAROLEE IS INELIGIBLE FOR GOOD-TIME CREDITS DUE TO A PRIOR 12022.
IN A SEPARATE DECISION, THERE IS A BOARD-IMPOSED SCOP THAT THERE BE NO CONTACT BETWEEN PAROLEE
AND SEVON ATIAS.
DISPOSITION: 11-I

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|------|-----------|---------------------|--------------|
| ALEXANDER, ROBERT | P07071 | SAN LEANDRO / 2 | 29-APR-2008 |
| | | SNYDER, JOVIC | |

BOARD OF PAROLE HEARINGS
## SUMMARY OF REVOCATION HEARING AND DECISION
STATE OF CALIFORNIA

### SUMMARY OF DISPOSITION

Parole Referral:  REFER

Custody Status:  In Custody as of 26-MAR-08

[ ] Continue on Parole  [ ] Schedule for Revocation

[ ] Dismiss  [ ] Other Non-Rev Sanction

[X] Parole Revoked-Return to Custody: 11 months

Serve [ ] Consecutively [ ] Concurrently

[ ] Parole Revoked-Return to Custody:  months for Psych Rx

[ ] Time Served:  to

Hold Order: [ ] Place  [ ] Remove

3057 Credits

[ ] Eligible

[X] Ineligible 3057d-1  Reason for Ineligibility:

   [X] Commitment Offense:  12022

   [ ] Revocation Offense:

   [ ] Parole Violation:

   [ ] Sentenced under PC 1168:

[ ] Unsuitable for credits because of PC 3057(d)(2)(e)

   [ ] Prior Criminal History

   [ ] Circumstances & Gravity of Parole Violation

Specify Reason

**Parolee Decision**

[ ] Accept  [ ] Reject  [ ] Optionally Waive

**Optional Waivers**

[ ] Previous BPH Action of _____ is:

   [ ] Rescinded  [ ] Reaffirmed

**Special Conditions of Parole**

[ ] Noted  [ ] Reaffirmed  [X] Amended

**Other**

| Special Condition | Reason |
|---|---|
| NO CONTACT WITH SEVON ATIAS | PROTECTION OF VICTIM |

Instructions to CDCR or DAPO Staff

Miscellaneous Actions

---

**BPH HEARING PANEL**

NAME:

NAME:

DECISION REVIEW BY:

**REVOCATION HEARING TIME (MINUTES)**

| | |
|---|---|
| 1. Prehearing Prep. Time: | 10 |
| 2. Actual Hearing Time: | 180 |
| 3. Report Completion Time: | 10 |
| 4. Other: | |
| Total: | 200 |

Hearing Accommodations (ADA) Provided: [ ] Yes [ ] No

Accom:

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| ALEXANDER, ROBERT | P07071 | SAN LEANDRO / 2 SNYDER, JOVIC | 29-APR-2008 |

BPH 1103-REV (Rev. 01/05) Electronic          Page 4 of 5          PERMANENT ADDENDUM

BOARD OF PAROLE HEARINGS                                                          STATE OF CALIFORNIA
## SUMMARY OF REVOCATION HEARING AND DECISION

### V. OBJECTIONS

None    [X] Yes

| Objections / Basis for Ruling | Ruling |
|---|---|
| ON A LENT TEST, MOTION THAT NO NEXUS BETWEEN SCOP AND CRIMINALITY | DENY |

LENT REQUIRES A CONNECTION/NEXUS BETWEEN THE SCOP AND CRIMINALITY, EITHER PAST OR FUTURE. IT WAS HEARD THAT THE PARTIES HAD MADE PRIOR ALLEGATIONS OF VIOLENCE AGAINST EACH OTHER (THERE HAD BEEN MORE THAN ONE PROTECTIVE ORDERS BETWEEN THE PARTIES) AND THERE HAD BEEN NUMEROUS POLICE CONTACTS OF THE PARTIES, FOLLOWING 911 CALLS. OFFICER BORLAND TESTIFIED THAT THE PARTIES HAD A "HISTORY OF ALLEGATIONS OF VIOLENCE" AND OFFICER GREENWOOD TESTIFIED THAT PAROLEE'S FEMALE PARTNER COMPLAINED THAT PAROLEE HAD KICKED HER ON THE LEG, ON DECEMBER 11, 2007. THAT BACKGROUND, PLUS PAROLEE'S VIOLENT CONTROLLING CASE, GIVES AMPLE NEXUS BETWEEN SCOP THAT PLACE A NO-CONTACT ORDER BETWEEN THE PARTIES AND A CONCERN FOR FUTURE VIOLENCE, AS WELL AS AN ATTEMPT TO PROTECT BOTH PARTIES.

| Objections / Basis for Ruling | Ruling |
|---|---|
| COMITO OBJECTION REGARDING VICTIM ATIAS' STATEMENTS TO OFFICER GREENWOOD | DENY |

OFFICER GREENWOOD CAME TO THE HEARING AND TESTIFIED THAT, AS A MEMBER OF THE POLICE FORCE, HE RESPONDED TO THE FEMALE VICTIM'S PHONE COMPLAINT ABOUT VIOLENCE AT THE HANDS OF PAROLEE. OFFICER GREENWOOD RESPONDED WITHIN MINUTES AND TOOK THE VICTIM'S COMPLAINT THAT PAROLEE KICKED HER ON THE LEG. ALL OF THAT EVIDENCE, ALTHOUGH H/S, HAS HIGH CREDIBILITY. THE STATE BROUGHT THE OFFICER TO THE HEARING AND PAROLEE HAD OPPORTUNITY TO CONFRONT AND CROSS-EXAMINE HIM. PAROLEE'S INTEREST IN CONFRONTING AND CROSS-EXAMINING THE ALLEGED VICTIM WAS MET BECAUSE SHE APPEARED AND, DURING TESTIMONY LACKING CREDIBILITY, RECANTED AND CLAIMED NO MEMORY OF THE EVENT. NO COMITO INTERESTS WERE VIOLATED.

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|---|---|---|---|
| ALEXANDER, ROBERT | P07071 | SAN LEANDRO / 2 | 29-APR-2008 |
| | | SNYDER, JOVIC | |

BPH 1103-REV (Rev. 01/05) Electronic                Page 5 of 5                PERMANENT ADDENDUM

BOARD OF PAROLE HEARINGS
STATE OF CALIFORNIA

**\*PRIORITY CASE\***

SUMMARY OF REVOCATION HEARING AND DECISION

(BPH Rules, Chapter 6, Article 3)

Records Office Use Only
Projected Revocation Release Date

Revocation Release Date

Controlling Discharge Date

Discharge Review Date

| X | ANA MORENO | | SP | 16-APR-08 | F | | P | | X | | |

| NAME | CDC NUMBER | INST/REGION / AGENT | HEARING DATE |
|------|-----------|---------------------|--------------|
| ALEXANDER, ROBERT | P07071 | SAN LEANDRO / 2 | 29-APR-2008 |
| | | SNYDER, JOVIC | |

BPH 1103-REV (Rev. 01/05) Electronic                    Page 1 of 5                    PERMANENT ADDENDUM

# EXHIBIT H

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS
NOTICE AND CONDITIONS OF PAROLE
CDC 1515 (Rev05/01)

You will be released on parole effective _____ , 20 ____ for a period of _____ This parole
is subject to the following notice and conditions. Should you violate conditions of this parole, you are subject to arrest, suspension and/or revocation of your
parole.

You waive extradition to the State of California from any state or territory of the United States or from the District of Columbia. You will not contest any effort
to return you to the State of California.

When the Board of Prison Terms determines, based upon psychiatric reasons, that you pose a danger to yourself or others, the Board may, if necessary for
psychiatric treatment, order your placement in a community treatment facility or state prison or may revoke your parole and order your return to prison.

You and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law
enforcement officer.

If another jurisdiction has lodged a detainer against you, you may be released to the custody of that jurisdiction. Should you be released from their custody
prior to the expiration of your California parole, or should the detainer not be exercised, you are to immediately contact the nearest Department of Corrections,
Parole and Community Services Division Office for instructions concerning reporting to a parole agent.

You have been informed and have received in writing the procedure for obtaining a Certificate of Rehabilitation (4852.21PC).

## CONDITIONS OF PAROLE

1. **SPECIAL CONDITIONS MUST:** a) Relate to the crime for which you were convicted, b) Relate to conduct which is itself criminal, c) Prohibit conduct which
   may be related to future criminality. You are subject to the following special conditions:

1) NO CONTACT W/VICTIM

Reasons for the imposition of special conditions of parole:

1) Commitment Offense

_____ I acknowledge my special conditions of parole.          V. Mann          11/1/05
Parolee's Initials                                    SIGNATURE OF UNIT SUPERVISOR    DATE SIGNED

2. **RELEASE, REPORTING, RESIDENCE AND TRAVEL:** Unless other arrangements are approved in writing, you will report to your parole agent on the
first working day following your release. Any change of residence shall be reported to your parole agent in advance. You will inform your parole agent within
72 hours of any change of employment location, employer or termination of employment.

3. **PAROLE AGENT INSTRUCTIONS:** You shall comply with all instructions of your parole agent and will not travel more than 50 miles from your residence
without his/her prior approval. You will not be absent from your county of residence for a period of more than 48 hours and not leave the State of California
without prior written approval of your parole agent.

4. **CRIMINAL CONDUCT:** You shall not engage in conduct prohibited by law (state, federal, county or municipal). You shall immediately inform your parole
agent if you are arrested for a felony or misdemeanor crime. Conduct prohibited by law may result in parole revocation even though no criminal conviction
occurs.

5. **WEAPONS:** You shall not own, use, have access to, or have under your control: (a) any type of firearm or instrument or device which a reasonable person
would believe to be capable of being used as a firearm or any ammunition which could be used in a firearm; (b) any weapon as defined in state or federal statutes
or listed in California Penal Code Section 12020 or any instrument or device which a reasonable person would believe to be capable of being used as a weapon
as defined in Penal Code Section 12020; (c) any knife with a blade longer than two inches, except kitchen knives which must be kept in your residence and knives
related to your employment which may be used and carried only in connection with your employment; or (d) a crossbow of any kind.

6. You shall sign this parole agreement containing the conditions of parole specified in Board of Prison Terms (BPT) Rules Section 2512 and any special conditions
imposed as specified in BPT Rules Section 2513. Penal Code Section 3060.5 provides that the BPT shall revoke the parole of any prisoner/parolee who refuses
to sign the Notice and Conditions of Parole. You have the right to appeal the special conditions of parole. Special conditions imposed by the Parole and Community
Services Division may be appealed pursuant to California Code of Regulations (CCR) Section 3084 and 3085. Special conditions of parole imposed by the
BPT may be appealed pursuant to CCR, Section 2050.

**I have read or have had read to me and I understand the conditions of parole as they apply to me.**

| CDC NUMBER | PAROLEE NAME (Print or Type) | PAROLEE SIGNATURE | DATE SIGNED |
|---|---|---|---|
| P07071 | ALEXANDER, Robert | R____ | 11-7-05 |

**TO BE COMPLETED BY STAFF:**
Does the inmate/parolee have a qualifying disability requiring effective communication? ☐ Yes ☑ No
If yes, cite the source document and/or observations:
What type of accommodation/assistance was provided to achieve effective communication to the best of the inmate's/parolee's ability?

| STAFF NAME | STAFF SIGNATURE | DATE SIGNED |
|---|---|---|
| J C Aguilar | CG7 | 11/1/05 |

DISTRIBUTION: ORIGINAL – CENTRAL FILE, CANARY – PAROLE AGENT, PINK – PAROLEE/INMATE

M Creamy  11-7-05

# EXHIBIT I

## CHAPTER 8—ADULT PAROLE OPERATIONS

### ARTICLE 1 — RELEASE PROCEDURES AND CONDITIONS OF PAROLE

*Effective December 28, 1989*

**81010.1     Introduction**

Parole is a critical period in the life of an offender. Through the application of controls and the provision of services, the Parole Agent helps to create favorable conditions for the parolee's successful adjustment. Community protection is the paramount concern and is effectively achieved if the parolee makes a favorable transition to society. A Parole Agent has broad discretion over the life of a parolee and in exercising that discretion, will act as a professional. During this period of supervision and observation, it is imperative that the Parole Agent be knowledgeable about the parolee's activities and significant others in the parolee's life. The Parole Agent's task is to maintain in the community, those parolees who can perform acceptably in the community and to remove those who cannot.

**81010.2     Policy**

*Revised November 28, 1990*

All inmates shall be paroled to the county of commitment unless the case complies with an exception criteria. County of commitment is the county where the crime for which the parolee was committed occurred, except for crimes committed in prison. Commitments to prison for an in-custody (prison) felony shall not be used as the basis for determining the county of commitment. If the parolee has been discharged from all previous terms, consideration shall be given to placement in another, more appropriate county in accordance with exception criteria. An inmate may be paroled to another county if it would be in the best interest of the public and of the parolee. The reasons for parole to another county shall be specified in writing in the parolee's C-File.

**Another County**

The following factors shall be considered in determining if parole to another county is justified:

- The need to protect the life or safety of a victim, the parolee, a witness or any other person.
- Public concern that would reduce the chance that the individual's parole would be successfully completed.
- The verified existence of a work offer, or an educational or vocational training program in another county that encompasses the following:
    - Permanent employment that will enable parolee to be financially self-sufficient. (Minimum wage jobs, such as busboy or short-term jobs such as cannery worker, are not self-supporting or of sufficient duration to qualify.)
    - Training or educational program that will: be full time; materially upgrade the parolee's employment skills or educational level and thus substantially improve employability; and will provide sufficient funds to preclude the parolee from relying on welfare, CDC cash assistance or similar programs.
- The last legal residence of the parolee having been in another county.
- The existence of family in another county with whom the parolee has maintained strong ties and whose support would increase the chance that parole would be successfully completed.
    - Family members are defined as the parolee's legal spouse, natural parents; adoptive parents, if the adoption occurred and a family relationship existed prior to the parolee's incarceration; step-parents or foster parents; grandparents; brothers and sisters; the parolee's natural and adoptive children; step-children or grandchildren. Aunts, uncles and cousins are not considered as immediate family members unless a bonafide foster relationship exists.
- The lack of necessary outpatient treatment programs for parolees receiving treatment pursuant to PC 2960.
- An inmate who is released on parole shall not be returned to within 35 miles of the actual residence of a victim, or of a witness to, a violent felony as defined in paragraphs (1) to (7) inclusive of subdivision (c) of PC 667.5 and any, felony in which the defendant inflicts great bodily injury on any person other than an

accomplice which has been charged and proved as provided for in PC 12022.7 or 12022.9, if the victim or witness has requested additional distance in the placement of the inmate on parole, and if the BPT or the P&CSD finds that there is a need to protect the life, safety or well-being of a victim or witness.

- Preparole referrals for out of state placement shall not be made unless the inmate is a resident of the other state or has relatives in the receiving state and it is clear that the inmate will be self-supporting.

**81010.3     Release on Parole Definitions**

Release on parole: The actual transfer of an inmate incarcerated in a CDC institution, reentry facility or housed temporarily in a county or city jail, to the supervision of the P&CSD on a date established by operation of law (PC 1170) or by the BPT (PC 1168).

Release dates:

- Indeterminate Sentence Law (ISL) release date:  Date from which an ISL prisoner may be released from confinement pursuant to the ISL.
- Determinate Sentence Law (DSL) release date:  The date a prisoner sentenced under PC 1170 is released to parole or discharged; also the date a prisoner sentenced prior to July 1, 1977, and recalculated by the BPT under the provisions of PC 1170.2 is released to parole or discharged.
- Life Prisoner ISL release date:  A prisoner serving a sentence of life with the possibility of parole. The parole date is determined by the BPT.

CDC Form 611, Release Program Study: An informational document that specifies the inmate's proposed residence and employment, institutional adjustment, and prognosis for parole adjustment.

County of commitment means the county where the crime for which the inmate was committed occurred.

Inmates Housed in CYA facilities ("M cases"): The W&I authorizes a Superior Court to order that certain offender (aged 18-21 years) committed to prison be housed and programmed in CYA institutions.

**81010.4     Imminent Release Policy**

The Penal Code requires all cases to be referred to the parole region of the inmate's county of commitment for reentry screening. CDC policy requires referrals to be forwarded to the Regional Reentry Coordinator 210 days prior to the earliest possible release date (EPRD).

However, in those cases where recalculation of the EPRD indicates release on parole must occur in the immediate future, it is the C&PR's responsibility to make immediate telephone contact with the appropriate parole unit to arrange release procedures.

**81010.4.1     Imminent Release Procedures**

**Institution C&PR (Immediately upon Learning of Imminent Release)**

Telephones Regional Records to determine unit of assignment and advise region of new release date.

Telephones unit supervisor for release program information and reporting instructions.

Provides inmate with written release program reporting instructions.

**Regional Records Staff**

Advises Regional Reentry Coordinator of inmate's new release date.

**81010.5     Release Program Study (RPS) Policy**

The Parole Agent shall investigate all proposed programs. If a proposed program is determined by a Parole Agent not to be suitable for a parolee, efforts shall be made by the Parole Agent to develop an appropriate alternate program in the county of commitment.

P&CSD staff shall return the completed RPS Form, CDC Form 611, and Conditions of Parole to the institution housing the inmate 60 days before the inmate's EPRD. However, if the RPS, CDC Form 611, is not received by the parole unit at least 75 days before the EPRD, the preparole investigation shall be returned within 15 days of receipt.

**81010.5.1     Release Program Study Procedures**

**Regional Screening Agent**

Reviews case to determine compliance with county of commitment law.

Sends preparole package to appropriate unit office.

Notifies sending institution's C&PR of assigned unit.

**Unit Supervisor or Designated Parole Agent**

Assigns case to a Parole Agent.

**Parole Agent**

Reviews case and prepares CDC Form 1659, Risks and Needs Assessment for felon cases.

Operations Manual                DEPARTMENT OF CORRECTIONS AND REHABILITATION                Operations Manual

- Investigates residence program to determine:
    - Type of residence (apartment or single family dwelling) and neighborhood.
    - Other persons residing in the home, their ages, occupations, income and relationship to parolee.
    - Willingness of persons in the home to assist and their understanding of limitations on a parolee and the Conditions of Parole.
- Investigates employment, training or school plans by contact with employer or other appropriate individuals to determine:
    - Validity of any offer.
    - If the proposed job is appropriate for inmate's prior experience, skills, training and criminal history.
    - Evaluates any behavior problems and prescribed treatment or medication.
    - Sends letter to inmate requesting information about alternative residence or employment if proposed program is unsatisfactory.
    - Contacts relatives or other persons who may offer support or employment, or makes arrangements for halfway house, motel or other accommodations if there are no resources.
- Forwards file with cover memorandum by unit supervisor to appropriate unit within county of commitment if investigation reveals case is incorrectly assigned.
    - Forwards copies of cover memorandum to regional screening agent and to C&PR of sending institution.
- Reviews case file and recommends imposition of any appropriate special conditions of parole to the unit supervisor.
- Completes CDC Form 611, Release Program Study, indicating inmate reporting instructions and distribution of release funds.
    - Clearly describes county of residence in section B "Assigned Agent's Comments and Reporting Instructions to Inmate."
- Returns preparole case file and completed CDC Form 611 and CDC Form 1650D, Record of Supervision, documenting the preparole investigation, to the unit supervisor if case is High* Control or High Services Category or a special condition of parole is recommended.

    **Unit Supervisor**
    Reviews preparole material for High Service or High Control case or imposes special condition of parole, if appropriate, and signs CDC Form 611.
    Returns RPS package to Parole Agent with instructions for additional investigation if required.

    **Unit Clerical Staff (60 Days Prior to EPRD or Within 15 Days of Receipt)**
    Forwards completed CDC Form 611 to C&PR of institution where inmate is housed.

**81010.6        Release Funds Policy**
Inmates paroled or discharged from a CDC institution or reentry facility shall be given $200 in release funds. Parolees released to a local hold who are subsequently released from custody are entitled to release funds under PC 2713.1. In these cases, P&CSD staff shall delay requesting release funds either until after the parolee is released from local custody or until the release date form local custody has been determined. Cash assistance or vouchers to assist the parolee will be provided, pending receipt of release funds. Parolees released from county jail following a period of BPT ordered revocation shall be given release funds at the rate of $1.10 per day in revocation status to a maximum of $200. Parolees released directly to custody of another state or the federal government including releasees to the USINS shall not be given release funds under PC 2713.1 (Cash assistance funds equal to release funds under PC 2713.1 shall be used to meet the release needs of these parolees if they are subsequently released from custody). All personal funds should accompany parolee being released to hold.

    **Check Log**
    A check log shall be maintained documenting the name of the agent who was given the check for distribution, the date it was given, the date it was delivered by the agent or the disposition of the undelivered check.

**Revocation Unit**
Parolees and civil addicts released from a CDC revocation unit due to dismissal of charges, a finding that the charges are unsubstantiated, or ordered continued on parole without being assessed a revocation term shall be provided a budget equal to bus transportation to their area of residence plus $10.00 for incidentals if traveling up to 200 miles and $15.00 for incidentals for greater distances. The individual shall be directed to report to the assigned parole unit for further instructions and further assistance as required.

Release funds are intended to aid the parolee in reintegrating into the community and shall not be provided until the parolee is released to the community. A maximum of one-half of the $200 can be given to an inmate when the inmate enters a reentry facility. Parolees in a DMH institution are not considered to be in custody.

No remaining portion of the release funds shall be provided to a parolee who absconds prior to receipt of the total release monies.

**81010.6.1        Release Funds Procedures**
    **Parole Agent**
    Specifies amount of money to be given to parolee at release and the amount to be forwarded to parole office on the CDC Form 611.
- Request for release funds for parolees released to a local hold shall be delayed until actual date of release from custody is determined.

    **(Within 30 Days After Release)**
    Provides second check to parolee.
    Returns all undelivered checks, including release fund checks, more than 30 days old from the date of issue, receipt or release; whichever comes later to the originator of the check.

**81010.6.2        Revocation Release Funds Procedures**
    **Parole Agent**
    Computes amount of money parolee is to receive at rate of $1.10 per day based on the actual revocation time served.
    Prepares CDC Form 102, Release Statement and forwards it to Headquarters Accounting.

    **(No Later Than 60 Days After Revocation Release Date)**
    Provides release funds to parolee.

**81010.7        Verification of Employment Authorization Policy**
All persons, including parolees, must present potential employers with certain documents that prove their identity and right to work. It is illegal for employers to knowingly hire, recruit or refer for a fee unauthorized aliens for employment. An unauthorized alien includes anyone who is not a U.S. citizen, is a permanent resident alien, or is not authorized to work by the Immigration Reform and Control Act or the U.S. Attorney General. In order to be lawfully employed, all persons, including parolees, must prove their identity and right to work by presenting one of the following documents to future employers:
- Driver's license with individual's photograph.
- Identification card with individual's photograph.
- Social Security card which authorizes employment.
- U.S. birth certificate.

If the above listed documents are unavailable, an individual may present one of the following:
- U.S. passport.
- Certificate of U.S. citizenship.
- Certificate of Naturalization.
- Unexpired, foreign passport authorizing employment.
- Resident alien card or other alien registration card with individual's photograph.
- Any other document the U.S. Attorney General finds acceptable.

The verification of employment authorization shall occur within 24 hours of an individual's hiring, recruitment or referral.

**81010.7.1        Verification of Employment Authorization Procedures**
    **Correctional Counselor**
    Reviews case file to determine if inmate has document(s) required to prove identity and right to work.

    **(Prior to Inmate's Parole)**
    Obtains copies of appropriate required document(s).

    **(Upon Inmate's Transfer to Reentry or Release on Parole)**
    Provides inmate or parolee with required document(s).

Operations Manual                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    Operations Manual

**Parole Agent (During Initial Interview)**

Advises parolee of requirement and assures that parolee has required document(s).

Assists parolee in obtaining the required document(s).

#### 81010.8    Length of Parole

Parole period is five years for persons serving life sentences whose commitment offenses occurred on or after January 1, 1979. Maximum parole period, including time under parole supervision and time under revocation status, shall not exceed seven years.

Parole period is three years for persons serving life sentences whose commitment offenses occurred on or before December 31, 1978. Maximum parole period, including time under parole supervision and time under revocation status, shall not exceed four years.

Parole period is three years for persons serving a non-life sentence whose commitment offenses occurred on or after January 1, 1979. Maximum parole period, including time under parole supervision and time under revocation status, shall not exceed four years.

Parole period is one year for persons serving a non-life sentence whose commitment offenses occurred on or before December 31, 1978. Maximum parole period, including time under parole supervision and time under revocation status, shall not exceed 18 months.

#### 81010.8.1    CYA "M" Case Policy

"M" cases are felon offenders age 16-21 years committed to prison but ordered housed in a CYA facility. As felon commitments, CYA "M" cases are subject to CCR, BPT Rules and Regulations, and all laws applicable to CDC inmates and parolees. CYA may transfer an "M" case to CDC jurisdiction at any time it is determined that CYA jurisdiction is no longer appropriate (usually on the basis of serious disciplinary or additional law violations). Jurisdiction automatically transfers to CDC when an "M" case reaches age 25, if still under correctional supervision.

If the BPT revokes the parole of a CYA "M" case and assesses a revocation term, a decision will be made by CYA staff to either retain the case in the "M" program or have jurisdiction revert to CDC. The case will be placed in either a contract RTC facility (e.g., Tulare, Hidden Valley, etc.) or a CDC institution to serve the revocation term. "M" cases being retained under CYA jurisdiction will usually be placed in a contract RTC facility. "M" cases serving revocation terms in CDC facilities will, in many cases, be transferred to P&CSD supervision upon release.

#### 81010.8.2    "M" Case Procedure

**Regional Records Staff (If a Community Hearing and Region has File) or Institutional Records Staff (If an Institutional Hearing and Institution has File)**

Calculates revocation release date (RRD) if "M" case reverts to CDC jurisdiction.

Classifies case for CSR endorsement.

**CYA Regional "M" Coordinator (If Case Reverts to CDC Jurisdiction)**

Forwards case file to regional Reentry Coordinator.

**Regional Reentry Coordinator**

Assigns case to appropriate P&CSD parole unit.

Notifies institution C&PR in writing of unit assignment.

Forwards field file to assigned parole unit.

**Parole Agent**

Prepares and forwards a "Notice of Transfer from CYA to CDC Jurisdiction" letter to the former "M" case

Provides reporting instructions for former "M" case to institution C&PR.

#### 81010.9    Effect of Revocation and Suspension on Parole Period

Time during which parole is revoked extends the parole period automatically by amount of time ordered for the revocation. When parole is revoked, any time credited toward continuous parole is lost. Time on continuous parole begins again when parolee is released after serving revocation period.

Time during which parole is suspended because parolee has absconded will not be credited toward the parole period. When parole is suspended, any time credited towards continuous parole is lost. Time

on continuous parole begins again when parolee is reinstated on parole by BPT action.

#### 81010.10    Establishing Length of Parole Policy

Length of parole will be established within specified statutory maximums by the BPT for persons subject to PC 1168 and by CDC for those persons subject to PC 1170.

The BPT will set length of parole for inmates sentenced under PC 1168 at the Parole Consideration Hearing. The parole period specified by the BPT shall be on CDC Form 1515, Notice and Conditions of Parole. The inmate shall be given a copy of the CDC Form 1515 prior to release on parole.

The length of parole is one year for inmates sentenced under PC 1170 whose commitment crime was prior to January 1, 1979.

The length of parole is three years for inmates sentenced under PC 1170 whose commitment crime was after January 1, 1979.

The Parole Agent shall note the appropriate length of parole on the Conditions of Parole prior to sending the RPS to the institution. Institution staff will serve the Conditions of Parole on the inmate a minimum of 45 days before the inmate's EPRD.

#### 81010.11    Exception to Parole to County of Commitment Policy

An inmate shall be paroled to county of commitment. Notwithstanding this policy, an inmate may be paroled to another county when this would be in the best interest of the public and parolee. If a decision is made to allow parole to another county, the reasons shall be specified in writing.

#### 81010.11.1    Parole to Other County Procedures

**Parole Agent (Sending Unit)**

Reviews case with the unit supervisor to determine if it meets an exception to the county of commitment policy.

Prepares a CDC Form 1551, Transfer Investigation Request, and CDC Form 1681, Exception to County of Commitment specifying the specific criteria allowing inmate to parole to a county other than the county of commitment and stating how the inmate meets the criteria.

**Unit Supervisor (Sending Unit)**

Sends preparole file with CDC Form 1551 to the appropriate parole unit.

**Unit Supervisor (Receiving Unit)**

Reviews preparole file and CDC Form 1551 outlining exception to parole to County of Commitment Policy and reasons for exception.

Assigns case to Parole Agent to conduct preparole transfer investigation.

**Parole Agent (Receiving Unit)**

Conducts preparole transfer investigation.

Completes CDC Form 1681, Exception to Placement or Parole to County of Commitment and returns preparole file with copy of CDC Form 1551 to sending unit if case meets criteria for parole to other county.

Indicates specific reasons on CDC Form 1551 why program does not meet criteria to allow parole to other county if case is rejected.

**Unit Supervisor and PA (Receiving Unit)**

Review and complete CDC Form 1681.

**Unit Supervisor (Receiving Unit)**

Forwards CDC Form 1551 and CDC Form 1681 to sending unit indicating acceptance of case with copies to C&PR of sending institution if case is accepted for parole supervision.

**Unit Supervisor (Original Sending Unit)**

Reviews CDC Form 1551 rejecting transfer to other county if case is rejected.

Contacts unit supervisor of receiving unit and attempts to work out difference of opinion if one exists.

Sends copies of a memorandum to PAs of both regions for resolution of any difference of opinion.

**Designated PA**

Reviews memorandum.

Investigates to determine accuracy of memorandum and discusses the proposed program with the corresponding administrator.

If administrators agree, decision is final.

If agreement is not reached, both administrators prepare memoranda outlining the reasons for their decision and forward them to the Deputy Director, P&CSD.

**Deputy Director, P&CSD**

Reviews memoranda and file materials and makes final decision.

616

Operations Manual                DEPARTMENT OF CORRECTIONS AND REHABILITATION                Operations Manual

**81010.12    Parole of Inmates Sentenced Under 1168 PC Policy**
The BPT establishes parole dates for cases sentenced under PC 1168. The BPT can establish a fixed date or, if inmate has what appears to be a valid program, order a parole date advancement of up to 60 days.
**81010.12.1    Parole of Inmates Sentenced Under PC 1168 Procedures**
    **Parole Agent**
Reviews RPS report.
    **(Immediately)**
Completes preparole investigation if the BPT has ordered a parole date advancement.
    **(Within 60 Days of Receipt)**
Completes investigation and returns the preparole investigation to institution. (If parole date is less than 60 days from date of case assignment, returns preparole materials within 15 days of receipt).
    **(Within 15 Days of Receipt)**
Completes preparole investigation and returns the RPS Form, CDC Form 611, to the sending institution.  ,
**81010.13    Direct Release to Parole From Court Policy**
The sentencing court, under certain circumstances, may sentence a person directly to parole supervision.  The P&CSD shall provide supervision as outlined below as if the person had been paroled from an institution.
**81010.13.1    Direct Release to Parole From Court Procedures**
    **Officer of the Day (OD)**
Interviews parolee, completes the CDC Form 1650B, Initial Interview/Transfer, and obtains a complete address and the names of two or more persons to be contacted in an emergency.
Forwards case materials to Unit Supervisor.
    **Unit Supervisor**
Assigns case to a Parole Agent when parolee reports to unit office.
    **Parole Agent**
Contacts sentencing court to secure:
*   Certified copy of order sentencing parolee to parole [Abstract of Judment (AOJ)].
*   Copy of POR.
*   Copy of arrest reports and other pertinent information.
Telephones AOJ and other legal documents are being FAXed.
FAXs all legal documents, including POR (personal data if no POR available), and the identity of the assigned unit, to LPU, CDC headquarters.
Secures fingerprint cards, photographs and arrest record.
Requires parolee to sign copy of Conditions of Parole.
    **(Until Case is Reviewed by BPT)**
Provides supervision.
    **LPU Staff (On Day of Receipt of AOJ or no Later Than Morning of Following Work Day)**
Verifies that there is no existing active CDC number on commitment name and FAXs CDC number to parole unit.
Provides Headquarter OBIS with the following information in order to enter the admit and parole moves and the legal commitment:
*   AOJ.
*   Sentence Data Entry form.
*   Race.
*   CI&I SSCH, if available.
*   Date of birth.
*   Parole unit assigned.
*   Parolee's county of residence (if other than county of commitment, approval if applicable).
*   Controlling discharge date.
Reviews and refers those appropriate cases to the BPT for consideration for discharge review.
    **Unit Clerical Staff (Day of Receipt of CDC Number)**
Makes three copies of all documents.
*   Develops unit field file with one set of copies.

*   Forwards original and one set of copies to regional records.
Forwards one black and white fingerprint card and two red and white fingerprint cards, original Conditions of Parole, CDC Form 1515, and parolee photo to regional records.
    **Regional Records Staff**
Sends original set of documents to LPU in central office.
Advises Parole Agent of BPT action and date, court sentencing date (date case becomes active on parole), discharge date, discharge review date, special conditions imposed by BPT (if appropriate), and any registration requirements when notified of BPT action by LPU.
Prepares Discharge Certificate and mails copy to Parole Agent if BPT has waived parole.
    **Parole Agent**
Gives or mails Discharge Certificate to parolee if BPT has waived parole and closes case.
Completes Risks and Needs Assessment and continues supervision, if parole not waived.
**81010.14    Delay In Reporting Policy**                ,
The Parole Agent may allow a parolee to delay reporting for an initial interview if there is a valid reason for the delay.  High Control cases shall not be granted delays.
**81010.14.1    Delay In Reporting Procedures**
    **Parole Agent**
Reviews request for delay in reporting for initial interview.
Determines whether delay in reporting is appropriate based on:
*   Stated reason for the delay.
*   Background of parolee requesting delay.
*   Character and relationship of any persons parolee proposes to contact en route.
*   Any factor which Parole Agent determines to be a good reason for delay.
*   Submits any request for delay in excess of seven days to unit supervisor for approval.        .            .            .
*   Specifies in instruction section of the CDC Form 611 that delay in reporting for initial interview is approved and specifies new reporting date.
*   Notifies, by CDC Form 1526, Visitation Permit, unit offices covering the area where parolee will be stopping.
**81010.15    Conditions of Parole Policy**
The general conditions of parole, as established by CDC or the BPT, are the same for persons sentenced to either a determinate or an indeterminate term of imprisonment. These conditions of parole are not a contract, but are a means of informing parolees of the specific rules governing their behavior. The conditions apply whether or not an inmate signs the CDC Form 1515, Notice and Conditions of Parole.
    **Non-English**
A Spanish language translation of the CDC Form 1515-B shall be provided to Spanish speaking parolees.  If the parolee is a non-reader, staff shall interpret or read the form to the parolee.
Other non-English speaking parolees shall be provided with an adequate interpretation of the Conditions of Parole.
*   A statement shall be typed on the CDC Form 1515-B that the inmate (identified by name and CDC number) has been provided with an adequate interpretation of the Conditions of Parole.  The interpreter or reader shall sign and date the statement.  The same procedure shall be followed if special conditions are imposed at a later date.
A violation of any condition of parole may result in arrest, suspension or revocation of parole and return-to-custody.
**81010.16    Special Conditions of Parole Policy**
The BPT or P&CSD may impose special conditions of parole in addition to the general conditions of parole prior to or after parole.
The BPT will establish and impose the special parole conditions for persons subject to PC 1168. The BPT may impose any special condition of parole at the hearing where parole is granted. The special condition and reasons for its imposition will be typed on the CDC Form 1515 given to the inmate prior to release. A special condition imposed by the BPT is removed or modified only through BPT action.
The P&CSD will establish and impose special parole conditions for persons subject to PC 1170.

.617

All special conditions of parole will be specified in writing with the reason for their imposition and must be issued to the parolee in writing prior to becoming effective.

- To participate in psychiatric treatment. This special condition will be imposed whenever the BPT or CDC staff determine that treatment is required.
- To abstain from alcoholic beverages. The Penal Code requires that this special condition be imposed on all parolees convicted of any of the offenses listed in PC 290 who were intoxicated or addicted to the excessive use of alcohol at the time the offense was committed. This special condition may also be imposed whenever BPT or CDC staff determine that there is evidence alcohol use was a major contributing factor in the commitment offense or evidence that the continued use of alcohol over a long period of time contributed to involvement in numerous criminal acts.
- To participate in anti-narcotic testing. This special condition may be imposed if there is a documented history or admission of illegal use of controlled substances within five years prior to the present commitment or during incarceration.

Any other restriction or instruction may be imposed as a special condition if warranted by the circumstances of the case. The behavior to be controlled must be sufficiently documented in the parolee's file to support imposition of a special condition.

A special condition of parole shall be imposed only if the condition is:

- Related to the crime for which the prisoner was convicted.
- Related to conduct that is not in itself criminal, but is reasonably related to potential future criminal behavior.

**81010.16.1    Imposition of Special Conditions of Parole Procedures**
**Parole Agent**

Reviews case to determine whether special conditions are appropriate.

Determines whether inmate is capable of understanding the Conditions of Parole in English.

Prepares the Conditions of Parole, in appropriate language if inmate is unable to understand English.

**(At Least 60 Days Prior to EPRD)**

Includes specific recommended special condition of parole and reason for recommendation on CDC Form 1515 in appropriate language and forwards to unit supervisor with preparole materials.

**Unit Supervisor**

Reviews recommended special condition(s) of parole and signs Notice and Conditions of Parole thereby imposing special conditions.

**Parole Agent (At Least 60 Days Prior to EPRD)**

Forwards original and copy of Notice and Conditions of Parole to institution.

- Retains copy for unit file.

**Institution Staff (Prior to Inmate's Parole)**

Serves inmate with CDC Form 1515 and has inmate sign form.

**Parole Agent (After Release on Parole)**

Includes specific recommended special conditions of parole and reasons for recommendation on CDC Form 1515 and forwards to unit supervisor.

Prepares an Activity Report titled: Modification of Special Condition of Parole, indicating recommended special condition of parole and reasons for recommendation and forwards to unit supervisor if parolee is ISL case.

**Unit Supervisor**

Reviews CDC Form 1515 and signs or:

Reviews Activity Report and signs if approved for ISL case.

- Forwards Activity Report with Headquarters Calendar Decision Form, BPT Form 1130, attached to BPT Headquarters Calendar by regional records.

**Parole Agent**

Serves parolee with CDC Form 1515 and has parolee sign form.

Provides parolee with written notification of appeal rights.

Distributes original CDC Form 1515 to regional records, copy to parolee and copy to unit file.

**81010.17    Removal of Special Conditions of Parole Policy**

The unit supervisor may remove or modify special conditions of parole not imposed by the BPT.

Special condition to participate in psychiatric treatment may not be removed without concurrence of POC staff. The special condition prohibiting use of alcoholic beverages may not be removed if imposed pursuant to the Penal Code.

**81010.17.1    Removal of Special Conditions of Parole Procedures**
**Parole Agent**

Presents case for supervisor review to determine if special conditions of parole should be removed.

Records, dates, and signs decision on CDC Form 1650D, Record of Supervision.

Prepares revised CDC Form 1515.

- Obtains unit supervisor's signature on form.

Serves parolee with CDC Form 1515 and has parolee sign form.

Distributes original CDC Form 1515 to regional records, copy to parolee and copy to unit file.

Prepares a CDC Form 1502, Activity Report, recommending removal of special conditions of parole, to participate in POC, reasons for recommendation and POC staff recommendation.

- Forwards Activity Report to PA if unit supervisor disagrees with POC recommendation.

**PA**

Makes final decision.

**81010.18    Inmate or Parolee Refusal to Sign Notice and Conditions of Parole Policy**

The BPT may revoke the parole of any inmate or parolee who refuses to sign the CDC Form 1515, including any added special conditions of parole.

**81010.18.1    Inmate or Parolee Refusal to Sign Notice and Conditions of Parole Procedures**
**Parole Agent**

Requests inmate or parolee to sign Notice and Conditions of Parole.

Places offender in custody if inmate or parolee refuses to sign CDC Form 1515, if so directed by unit supervisor.

Prepares and submits a CDC Form 1521, Violation Report, recommending referral to screening calendar.

**81010.19    Parole Agent's Verbal and Written Instructions Policy**

A verbal instruction requiring or prohibiting specific behavior is to be confirmed in writing within five working days after notifying the parolee and may be processed and issued as a special condition of parole.

Only the BPT can impose instructions requiring or prohibiting specific behavior for more than 30 days on life sentenced parolees, ISL release date parolees, and parolees serving a year-and-a-day sentences.

**81010.19.1    Parole Agent's Verbal and Written Instructions Procedures**
**Parole Agent**

Verbally instructs parolee and assures that parolee understands.

**(Within Five Days of Verbal Instructions)**

Prepares instructions in written form and gives copy to the parolee.

Prepares a special condition of parole using the procedure outlined above for any action to be performed by a parolee for more than 30 days.

- Verbal imposition of special conditions will take the place of written notice as long as the new conditions of parole are served on parolee within five days of issuing verbal instruction.

**81010.20    Dual Referral Preparole Policy**

Preparole packages for inmates in CDC institutions referred for out-of-state placement will be forwarded to both the appropriate parole region and the Interstate Unit (ISU) for investigation. Field unit staff will conduct the RPS in the same manner as other preparole referrals until notified by institution staff of acceptance by the other state. If the inmate is not accepted for supervision by the other state prior to release on parole, the inmate shall report to the release program developed by California parole unit staff.

**81010.21    Warrant Pending Preparole Policy**

Preparole referrals for inmates with pending Warrants will be forwarded to the appropriate regional office.

Field unit staff will conduct the RPS in the same manner as other preparole referrals.

If the Warrant is exercised by a California agency or a federal agency (other than USINS) upon the inmate's parole and the parolee is housed in custody in California, the assigned Parole Agent is responsible for monitoring case status and

Operations Manual                    DEPARTMENT OF CORRECTIONS AND REHABILITATION                    Operations Manual

providing service in the same manner as other Minimum Supervision cases in local custody.

If the Warrant is exercised by an out-of-state agency or by a federal agency (excluding USINS) and parolee will be in custody outside California, the case shall be transferred to the ISU.

If the Warrant is exercised by an out-of-state agency or by a federal agency (excluding USINS) and the inmate is paroled to local agency pending extradition, the assigned Parole Agent is responsible for monitoring case status and providing services in the same manner as for other Minimum Supervision cases in local custody. The case shall be transferred to the ISU when extradited.

### 81010.21.1    Inmates Paroled to Warrant Procedures
**Parole Agent**

Assures that length of parole and special conditions of parole for DSL cases are included in the completed CDC Form 611.

Determines name, address, warrant number Also-Known-As (AKA) (if applicable) for agency taking custody out-of-state.

Transfers case to ISU.

**Institution Staff**

Notifies field unit on or before scheduled release date if Warrant is not exercised (Field unit assumes responsibility for the case).

Enters release unit into OBIS.

**Parole Agent**

May request another unit to provide courtesy supervision if parolee will be in custody outside assigned unit's area of supervision.

### 81010.22    Release to Deportation Policy
The RPS shall specify if an inmate will be paroled to USINS hold. The assigned Parole Agent is responsible for monitoring case status both prior to completion of deportation proceedings and after deportation.

### 81010.22.1    Deportation Case Procedures
**Parole Agent**

Includes clear reporting instruction in CDC Form 611 for parolee to follow if released on bail.

**(Within Three Days of Inmate's Parole)**

Contacts non-CDC institutions housing inmates released to USINS hold and obtains USINS "A" number and other information relative to case.

Forwards request with inmate's name and USINS "A" number for information on status of deportation proceedings to:

- USINS, Los Angeles, CA (for inmates released from an institution south of CTF).
- USINS, San Francisco, CA (for inmates released from CTF and institutions north of CTF).

**(Each 60 Days)**

Contacts USINS office to determine parolee's status and date of deportation hearing.

**(Every 90 Days)**

Obtains CI&I and local SSCHs after parolee has been deported.

**(45 Days Prior to Lapse of Jurisdiction)**

Develops and submits CDC Form 1635, Discharge Review Report, to unit supervisor.

**Unit Supervisor**

Reviews and includes discharge recommendation on Discharge Review Report.

- Submits discharge review reports on deportation cases to the BPT.

Parole Agent

Places parolee in custody if parolee is located and has not been discharged.

Places a parole hold and submits a Violation Report to the BPT if a deported parolee is located in custody. (The parolee will be charged with violation of 8 USC 1326, Illegal Reentry of a Previously Deported Alien; Failure to Report to the Parole Agent; and any violation of parole conditions that may have been committed).

### 81010.23    Release From Revocation Status Policy
The BPT may set a specific period of revocation time following a finding of good cause. The parolee shall be released from custody the

day of completion of the revocation period. The Parole Agent will assist the parolee in readjusting to the community.

### 81010.23.1    Release From Revocation Status Procedures
**Parole Agent**

Retains field file of parolee serving a revocation period.

Reduces case to minimum supervision and maintains parolee as active case when serving a revocation period in local custody.

Removes from active status and places on roster as RTC case any revoked case in a CDC institution or RTC facility.

Monitors the case in local custody during the RTC period.

**[At Least 30 Days Prior to Revocation Release Date (RRD)]**

Submits a CDC Form 102, Release Statement, requesting release funds for parolee serving revocation term in local custody.

Contacts parolee in local jail to develop a proposed release program.

Investigates proposed program and provides parolee with specific reporting instructions.

Requests an updated release program by memorandum to institution for parolee serving revocation period in CDC institution or RTC facility.

Investigates proposed program if different than parolee's previous program.

Informs institution regarding release plans, reporting instructions and distribution of release funds.

**(Prior to RRD)**

Updates parole plan for High Control or High Service case.

### 81010.24    Parole of Psychotic Inmate Policy
A psychotic inmate will be retained at the releasing institution pending BPT emergency action if, on the day of parole release, it is determined that the inmate is so mentally ill as to be unable to function while en route to the parole program. Emergency psychiatric return procedures shall be implemented immediately by appropriate P&CSD staff.

### 81010.24.1    Parole of Psychotic Inmate Procedures
**Institution or Transportation Staff**

Requests qualified institutional staff to conduct immediate psychiatric examination of the inmate if inmate appears to be too mentally ill to proceed to parole program.

Contacts P&CSD staff if examination confirms that inmate is too mentally ill to proceed to parole program.

- Makes contact by C&PR to unit supervisor if release is during normal business hours.
- Makes contact by institutional AOD to region of release (Identification/Warrants Unit, telephone: (ATSS) 485-6713 or (916) 445-6713).

The Regional Administrator will be contacted if the AOD cannot be contacted.

**Unit Supervisor or AOD**

Authorizes institution staff to detain mentally ill inmate pending BPT emergency action by telephone.

FAXs written verification of P&CSD authorization to detain mentally ill parolee in institution.

**Unit Supervisor or Designee**

Obtains emergency BPT psychiatric action.

### 81010.25    Revisions
The Deputy Director, Paroles and Community Services Division, is responsible for ensuring that this section is current and accurate.

### 81010.26    References
PC §§ 1168, 1170, 3003, 3003(b), 2692, 2694, 2713.1, 3057(b), 3060.5, 3064, and 11177.

CCR (15) (2) §§ 2510, 2512, 2513, 2515, 2647, and 2635.1.

8 USC 1326.

ARTICLE 2 — CASE SUPERVISION*

*Effective December 28, 1989*

Not Cleared For Statewide Use

### 81020.1    Policy
**Legal Basis of Parole**

The California Legislature has found and declared "...that the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship. It is in the interest of public safety for the State

619

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  **In re Alexander**

No.:  **H25646**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **June 5, 2008**, I served the attached

### INFORMAL RESPONSE

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Robert Alexander, P-07071**
**2096 Eilene Drive**
**Pleasanton, CA 94588**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **June 5, 2008**, at San Francisco, California.

| | |
|---|---|
| M.M. Argarin | _(signature)_ |
| Declarant | Signature |

20115185.wpd

*EDMUND G. BROWN JR.*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*



455 GOLDEN GATE AVENUE, SUITE 11000
SAN FRANCISCO, CA 94102-7004

Public:  (415) 703-5500
Telephone:  (415) 703-5741
Facsimile:  (415) 703-5843
E-Mail:  Amanda.Murray@doj.ca.gov

June 17, 2008

The Honorable Larry J. Goodman
Alameda County Superior Court
Rene C. Davidson Courthouse, Department 9
1225 Fallon Street
Oakland, CA  94612-4293

RE:   SUPPLEMENTAL INFORMAL RESPONSE
      *In re ROBERT ALEXANDER*, Case No. H25646

Dear Judge Goodman:

On May 6, 2008, this court ordered respondent to provide an informal response to state inmate Robert Alexander's petition for writ of habeas corpus challenging his arrest and parole hold for refusing to sign an amendment to the conditions of his parole. (See generally, Petn.) On May 27, 2008, respondent filed a request for an extension of time to file the informal response by June 18, 2008 because counsel required additional time to prepare a proper response for the court. (See Resp't's Req. for Ext. of Time.)

Respondent filed the informal response on June 6, 2008. (Resp't's Informal Response.) However, that same day, respondent received a separate petition regarding Alexander's parole hold and parole revocation hearing from the court's clerk, filed by Alexander on May 22, 2008. (Order, dated June 2, 2008.) This court treated the document as a supplement to the original petition, and ordered respondent to provide an informal response to both petitions by June 18, 2008. (*Ibid.*) Accordingly, respondent provides this supplementary informal response pursuant to the court's June 2, 2008 order.

In his supplemental petition, Alexander again alleges that his special condition of parole prohibiting his contact with Sevon Atias is improper because it was not reasonably related to his future criminality; he also alleges that there is no evidence supporting the hearing officer's decision to revoke his parole[1] and, more specifically, that the parole authority abused its discretion by relying on uncorroborated hearsay testimony in concluding that good cause

[1]Respondent liberally construes Alexander's petition and supplementary petition to include this allegation.

The Honorable Larry J. Goodman
June 17, 2008
Page 2

supported a finding of guilt for spousal battery. (See generally, Petn.) Alexander's petition is without merit because: (1) there is some evidence supporting the hearing officer's decision to revoke Alexander's parole; (2) his no-contact parole condition is proper as there is a reasonable nexus between the condition and Alexander's past and future criminality; and (3) the revocation hearing officer properly considered the hearsay testimony in that Alexander was able to confront and cross-examine the witnesses, the testimony was deemed sufficiently reliable, and Alexander was not unduly prejudiced by its consideration. Accordingly, for the reasons set forth more fully below, the petition should be denied.

1.    **There Is Some Evidence Supporting the Revocation Hearing Officer's Finding that There Was Good Cause to Revoke Alexander's parole.**

Alexander's petitions should be denied because there is some evidence supporting the revocation hearing officer's finding that there was good cause to revoke Alexander's parole. A parole revocation hearing is an administrative — not criminal — process. (See *People v. Hayko* (1970) 7 Cal.App.3d 604, 610.) The hearing officer must determine if there is good cause to believe, by a preponderance of the evidence, that the parolee violated the terms of his parole and, if so, make "a disposition appropriate to the facts of the case including consideration for public safety." (Cal. Code Regs., tit. 15 § 2646, subd. (a).) If a violation is found, the hearing officer may return the offender to custody. (*Id.* at § 2646, subd. (c)(3).)

Because parole revocation is an administrative hearing, judicial review is limited to whether there is some evidence supporting the Board's decision to revoke parole. (*In re Moore* (1975) 45 Cal.App.3d at 285, 293 ["It is not the function of the trial court to second-guess the parole board on the exercise of its discretion"]; *Superintendent v. Hill* (1985) 472 U.S. 455, 456-457.) The some evidence standard ensures that parole is not "terminated fraudulently, by whim or caprice or without factual foundation." (*Moore*, at p. 293.)

Here, the hearing officer found there was good cause to conclude that Alexander violated the terms of his parole by refusing to sign his amended conditions of parole and for committing spousal battery.[2] (Resp't's Informal Response at Ex. G, p.3.)[3] First, the hearing officer concluded that, based on Officer Snyder's testimony, Alexander willfully refused to sign his conditions of parole — specifically, the special condition that he have no contact with Atias. (*Ibid.*) Indeed, Alexander does not dispute this finding; rather, he only alleges that the no-contact condition is improper. (See generally, Petn. & Supp. Petn.) Moreover, the hearing officer noted

---

[2] The charge for spousal battery was based on Police Report #2007-00048456: Sevon Atias (Alexander's wife or girlfriend) called the police and reported an incidence of domestic violence. (Resp't's Informal Response at Ex. B.) When Officer Greenwood arrived a few minutes later, Atias told him that Alexander had kicked her. (*Ibid.*)

[3] The hearing officer dismissed the charge for first degree burglary for insufficient evidence. (Resp't's Informal Response at Ex. G, p. 3.)

The Honorable Larry J. Goodman
June 17, 2008
Page 3

that there was a nexus between the special condition and Alexander's past and future criminal behavior, including his history of criminal violence and his tumultuous relationship with Atias. (Resp't's Informal Response at p. 2, Ex. G, pp. 3, 5; see below at Sec. 2.)

Second, based on Officer Greenwood's testimony, the hearing officer determined that there was good cause to conclude that Alexander had committed spousal battery in violation of his parole. (Resp't's Informal Response at Ex. F, Sec. 4, Ex. G, p. 3.) The hearing officer heard testimony both from Officer Greenwood, who responded to Atias's report that Alexander had kicked her and testified to her out-of-court statements, and Atias. (*Ibid.*) Although Atias recanted her earlier statement and claimed not to remember the incident, the hearing officer found her testimony not credible and potentially biased. (*Ibid.*) Instead, the hearing officer gave greater weight to Officer Greenwood's testimony, which was supported by other instances of conflict and allegations of violence between Atias and Alexander. (*Id.* at Ex. G, pp. 3, 5; see also below, Sec. 3.)

Thus, based on the seriousness of the charges, the hearing officer revoked Alexander's parole and returned him to custody for 11 months. (Resp't's Informal Response at Ex. G, p. 3.) He also imposed a special condition of parole that there be no contact between Alexander and Atias. (*Ibid.*) Accordingly, there is some evidence supporting the hearing officer's determination that good cause existed to sustain the charges.

2.    **Alexander's No-Contact Parole Condition Is Proper Because There Is a Reasonable Nexus Between the Condition and Alexander's Past and Future Criminality.**

Alexander alleges that the no-contact condition of his parole is not reasonably related to his future criminality. (See generally, Petn. & Supp. Petn.) Moreover, he appears to assert that because Atias is his girlfriend or wife,[4] and because she is allegedly pregnant with their child, the special condition of parole is improper. (*Ibid.*) However, Alexander provides no legal support for this proposition. Instead, as stated in respondent's original informal response, Alexander's no-contact parole condition is proper because there is a reasonable nexus between the condition and Alexander's past and future criminality. (Resp't's Informal Response at p. 2.) Indeed, there is substantial evidence that Alexander and Atias have a history of conflict, including allegations of violence against each other resulting in police involvement. (*Id.* at Exs. A-E.) Thus, the parole authority properly concluded that because of Alexander's tumultuous relationship with Atias and his history of criminal violence (*id.* at Ex. I), there was ample support for a no-contact condition between them to protect both parties and based on a concern for future violence. (*Id.* at Ex. G, p. 5, Ex. I; *People v. Lent* (1975) 15 Cal.3d 481, 486 [A condition of parole which "requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality"].)

---

[4] The status of their relationship is unclear — Alexander refers to Atias as his wife while other documents refer to her as Alexander's girlfriend or fiancé.

The Honorable Larry J. Goodman
June 17, 2008
Page 4

3.    **Alexander's Rights Were Not Violated by the Revocation Hearing Officer's Decision to Consider Officer Greenwood's Testimony Regarding Atias's Hearsay Statements Because Alexander Was Able to Confront and Cross-Examine Officer Greenwood and Atias, the Evidence Was Reliable, and Alexander Was Not Unduly Prejudiced by Its Consideration.**

The United States Supreme Court has found that a parole revocation hearing is a narrow inquiry that cannot be equated to criminal prosecution. "The revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." (*Morrisey v. Brewer* (1972) 408 U.S. 471, 480.) Instead, the revocation process should be flexible and allow for consideration of evidence that might not be admissible in a criminal proceeding. (*People v. Maki* (1985) 39 Cal.3d 707, 714.) Accordingly, hearsay evidence may be admissible in a parole revocation hearing under certain circumstances. (*United States v. Comito* (9th Cir. 1999) 177 F.3d 1166, 1170, citing *United States v. Walker* (9th Cir. 1997) 117 F.3d 417, 420.)

Indeed, while the parole authority's right to admit hearsay evidence regarding an absent, adverse witness may be limited if the parolee is not afforded the due process right to confront him (*Comito*, 177 F.3d at p. 1170, citing *Walker*, 117 F.3d at p. 420), there does not appear to be a similar concern where the witness is favorable to the parolee and is present at the revocation hearing. Here, Atias was a favorable witness for Alexander because she recanted her earlier allegations that Alexander had kicked her. (Resp't's Informal Response at Ex. G, p. 3, 5.) Likewise, Alexander was provided the opportunity to confront and cross-examine both Officer Greenwood (who testified to Atias's out of court statements) and Atias. (*Ibid.*) Thus, the hearsay testimony was properly admitted during the hearing.

Moreover, if the consideration of hearsay evidence regarding an *absent* witness does not prejudice the parolee (as opposed to here, where the witness Atias was present at the hearing), its admission may constitute harmless error. (*Walker, supra,* 117 F.3d at pp. 420-421.) For instance, the admission of hearsay evidence is not considered unduly prejudicial if the evidence is deemed reliable. (*Ibid.*) In addition, the opportunity to offer contrary evidence is also a consideration in the harmless-error analysis. (*Ibid.*)

Here, Alexander claims that his due process rights were violated because the hearing officer relied on Officer Greenwood's testimony regarding Atias's out-of-court statements about her domestic violence report to police. (Supp. Petn. at Contentions & pp. 5-6.) Specifically, Alexander argues that these statements were not made under oath, were uncorroborated by independent evidence, and were contradicted by Atias's sworn testimony at the hearing. (*Ibid.*) Yet, Alexander's claims are without merit because he suffered no prejudice given that Officer Greenwood's testimony was reliable and because Alexander provided contrary evidence when Atias testified at the hearing. (Resp't's Informal Response at Ex. G, p. 3, 5.)

Atias's statements to Officer Greenwood are reliable. It is well established that in instances of alleged domestic violence, the victim often later recants or minimizes her initial

The Honorable Larry J. Goodman
June 17, 2008
Page 5

statement regarding an assault committed by her "boyfriend, husband, or lover." (*People v. Brown* (2004) 33 Cal.4th 892, 903-904, 907-908; *People v. Williams* (2000) 78 Cal.App.4th 1118, 1129, overruling *People v. Gomez* (1999) 72 Cal.App.4th 405, 415-416.) In such instances, the victim was most likely to tell the truth in a statement given within one to two days of the incident than at a later time. (*Brown*, at pp. 896, 904; *Williams*, at pp. 1127.) Indeed, California courts have acknowledged the high likelihood that an initial statement is more reliable than the subsequent recantation, even when the initial statement was not made under oath. (See, e.g., *Brown*, at pp. 903-904, 907-908; *Williams*, at p. 1129.)

While the consideration of domestic violence evidence requires a specific foundation under the Evidence Code in criminal cases, these requirements do not apply to parole revocation proceedings. (*Walker, supra*, 117 F.3d at p. 419.) Rather, the governing regulations under California law provide that "[a]ll evidence relevant to the charges or disposition is admissible in parole postponement, recission and revocation proceedings." (Cal. Code Regs., tit. 15, § 2665.) Here, Alexander does not dispute that the contested evidence was relevant, contending only that it was unreliable hearsay. Further, Alexander cannot show that this evidence was irrelevant given that it formed the basis of the hearing officer's decision to revoke his parole. (Resp't's Informal Response at Ex. G, p. 3, 5.)

Moreover, the hearing officer determined that Officer Greenwood's testimony was highly credible: within minutes of Atias's phone call to police, Officer Greenwood responded to the call and Atias told him that Alexander had kicked her. (Resp't's Informal Response at Ex. B, Ex. G, p. 3, 5.) The hearing officer also noted that Alexander was able to confront and cross-examine Officer Greenwood and Atias, who recanted her earlier statements and claimed to have no memory of the incident. (*Id.* at Ex. G, p. 3, 5.) Thus, the hearing officer's decision to consider Officer Greenwood's testimony regarding Atias's prior statement was not unduly prejudicial given that the testimony was sufficiently reliable based on its nature as an initial statement given by an alleged domestic violence victim,[5] it was examined within the context of Officer Greenwood's and Atias's testimony, including Atias's subsequent recantation, and Alexander was able to confront and cross-examine both witnesses. (*Ibid.*) Accordingly, the hearing officer properly considered and relied on the hearsay testimony in finding good cause supported the charge for spousal battery to revoke Alexander's parole.

Finally, Alexander wrongly contends that for the purpose of finding good cause and admitting hearsay statements, corroborating evidence is required. (Supp. Petn. at pp. 5-6.) He cites *In re Miller* (2007) 145 Cal.App.4th 1228 in support of this proposition. As opposed to *Miller*, however, where the victim did not appear to testify at the revocation hearing (*id.* at p. 1239.) Atias was present at the hearing, testified, and was subject to Alexander's cross-

---

[5] It is irrelevant that Alexander was not criminally charged with spousal battery or domestic violence because the hearing officer is required only to find whether good cause existed to support the charge to revoke parole. As noted above, a revocation hearing is an administrative, not criminal, proceeding. (See *Hayko*, 7 Cal.App.3d at p. 610.)

The Honorable Larry J. Goodman
June 17, 2008
Page 6

examination. (Resp't's Informal Response at Ex. B, Ex. G, p. 3, 5.)  Moreover, there is no
requirement that corroborating evidence is necessary to a finding of admissibility.  Rather, the
parole authority or court must find that the hearsay testimony is sufficiently reliable.  (*Walker,
supra,* 117 F.3d at pp. 420-421.)  Here, there is ample evidence of reliability:  after Atias called
police to report domestic violence, Officer Greenwood immediately responded to the call and
took Atias's complaint that Alexander had kicked her. (Resp't's Informal Response at Ex. G, p.
3, 5.)  Likewise, Alexander had the opportunity to confront and coss-examine both Officer
Greenwood and Atias at the hearing.  (*Ibid.*)  Lastly, the hearing officer noted that Officer
Greenwood's testimony was corroborated by several other instances of conflict and allegations
between the parties.  (*Id.* at Exs. A-E, Ex. G, p. 3, 5.)

Thus, Atias's hearsay statements were properly admitted — and Alexander's due process
rights were not violated — because Alexander was able to confront and cross-examine Officer
Greenwood and Atias during the revocation hearing, the hearsay statements were sufficiently
reliable, and Alexander was not unduly prejudiced.

**4.    Conclusion.**

Alexander's petition is without merit.  First, there is some evidence supporting the
hearing officer's decision to revoke Alexander's parole.  Second, his no-contact parole condition
is proper as there is a reasonable nexus between the condition and Alexander's past and future
criminality.  Third, the hearing officer properly considered the hearsay testimony because
Alexander was able to confront and cross-examine the witnesses, the testimony was deemed
sufficiently reliable, and Alexander was not unduly prejudiced by its consideration.  Accordingly,
the petition should be denied.

Sincerely,

AMANDA J. MURRAY
Deputy Attorney General
State Bar No. 223829

For    EDMUND G. BROWN JR.
       Attorney General

AJM:

20115869.wpd

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **In re Alexander**

No.:    **H25646**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **June 17, 2008**, I served the attached

### SUPPLEMENTAL INFORMAL RESPONSE

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Robert Alexander III, P-07071**
**Santa Rita County Jail (AYC552)**
**5325 Broder Blvd.**
**Dublin, CA 94568**
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **June 17, 2008**, at San Francisco, California.

| | |
|---|---|
| M.M. Argarin | *al. di. Argarin* |
| Declarant | Signature |

20117246.wpd

ENDORSED
FILED
ALAMEDA COUNTY

AUG 0 1 2008

CLERK OF THE SUPERIOR COURT
By _____ Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF ALAMEDA

| | |
|---|---|
| IN RE | No. H25646 |
| ROBERT J. ALEXANDER, | ORDER DENYING PETITION |
| on Habeas Corpus. | FOR WRIT OF HABEAS CORPUS |

This court having reviewed the petition for writ of habeas corpus ("the Petition") filed by ROBERT J. ALEXANDER ("Petitioner") on April 24, 2008, the writ of habeas corpus filed on May 22, 2008 by Petitioner, which the court treats as an amendment to the Petition, the informal response filed by Respondent on June 20, 2008, and the informal replies filed by Petitioner on June 12 and June 30, 2000, NOW HEREBY ORDERS:

The Petition is DENIED. The Petition challenges the special parole conditions imposed upon Petitioner. Petitioner later amended the Petition to also challenge the revocation of parole, claiming that errors of law. Petitioner fails to state a prima facie case for relief as to the first ground for relief. As to his second claim, Petitioner failed to allege, with sufficient specificity, facts in support of the allegations in the Petition. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)

**BACKGROUND**

In 1998, Petitioner was charged with attempted murder after he shot Leronce Variety on the left side of his head. Petitioner pled to a lesser included charge of assault with a semiautomatic firearm, and admitted the great bodily injury enhancement. Petitioner was sentenced in 1998 to a total of nine years in prison. It appears that Petitioner was paroled on December 15, 2005, and has had various

1

violations. The latest violation stems from Petitioner's refusal to sign conditions of parole that added a special condition that Petitioner was not to contact Sevon Atias ("fiancée"), without prior written approval by the Department of Adult Parole Operations ("DAPO").[1]  Petitioner refused to sign the conditions after and was taken into custody, and a parole hold was placed.  Petitioner was charged with three parole violations: (1) refusal to sign conditions of parole; (2) battery on spouse based on an incident in Pleasanton on December 11, 2007; and (3) first degree burglary on February 5, 2008.  A revocation hearing was held on April 29, 2008.  The Board found good cause for the first two charges, but dismissed the last charge.

**DISCUSSION**

Petitioner's challenge to the revocation of parole fails as Petitioner failed to provide specific facts as to what errors of law were made at the hearing.  Thus, relief on this ground is denied for failure of pleading.

Petitioner's original ground for relief was that the special condition of parole is unlawful.  "A condition of [parole] will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality....' [Citation.] Conversely, a condition of [parole] which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486.)  Finally, because the special conditions at issue here impinges on Petitioner's constitutional right of association, the special condition must be reasonably related to the commitment offense, must be reasonable and must be narrowly drawn.  (See *People v. Keller* (1978) 76 Cal.App.3d 827, 838; and *In re White* (1979) Cal.App.3d 141, 146.)  Here, the special condition imposed involves restriction on conduct that is not itself

---

[1] Parole violation charges for spousal abuse and robbery based on an incident on February 16, 2008 were dismissed on March 21, 2008 after a parole revocation hearing.

2

criminal, and it is reasonably related to future criminal activity. Petitioner and his fiancée's tumultuous relationship has led to calls to the police and allegations of domestic violence. The special condition was imposed after various such incidents. Also, Petitioner's commitment offense relates to a crime of violence. Therefore, not only is the special condition reasonably related to the commitment offense, it is also reasonable related to future incidents of domestic violence between Petitioner and his fiancée. Lastly, the court notes that the special condition here is not a blanket prohibition since Petitioner can contact his fiancée if he first obtains permission from DAPO.  Accordingly, the special condition is valid, and relief is denied.

DATED: _**8/1/08**_

_____
HON. LARRY J. GOODMAN
JUDGE OF THE SUPERIOR COURT

3

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**    Dept. No. 9

Date: August 1, 2008          Hon. LARRY GOODMAN, Judge          Alex Muñoz, Dep.Clk.
                                                                  Not Reported, Reporter

IN RE: ROBERT J. ALEXANDER

                  Petitioner          Counsel appearing: No Appearance
                                       for Petitioner

vs.                                    Counsel appearing: No Appearance
                                       for Respondent

**THE PEOPLE OF THE STATE OF CALIFORNIA**
                  Respondent

Nature of Proceedings: EX-PARTE PETITION FOR WRIT OF HABEAS CORPUS

                                       Case: H25646
                                       PFN: AYC552
                                       CEN: 8248203

This Court having reviewed the Petition for Writ of Habeas Corpus filed on April 24, 2008 Petitioner, ROBERT J. ALEXANDER NOW HEREBY ORDERS.

The Petition is DENIED. The petition challenges the special parole conditions imposed upon Petitioner. Petitioner later amended the Petition to also challenge the revocation of parole, claiming that errors of law. Petitioner fails to state a prima facie case for relief as to the first ground for relief. As to his second claim, Petitioner failed to allege, with sufficient specificity, facts in support of the allegations in the Petition. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)

Please find enclosed a copy of Judge Goodman's Order Denying Petition for Writ of Habeas Corpus signed and filed August 1, 2008.

<u>CLERK'S CERTIFICATE OF MAILING (CCP 1013a)</u>

I certify that the following is true and correct: I am a Deputy Clerk employed by the Alameda County Superior Court. I am over the age of 18 years. My business address is 1225 Fallon Street, Oakland, California. I served this, ORDER REGARDING EX PARTE PETITION FOR WRIT OF HABEAS CORPUS by placing a copy in an envelope addressed as shown below and then by sealing and placing it for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Oakland, California, following standard court practices.

Robert J. Alexander III                State of California
CDC #P07071-PFN#AYC552                  Department of Justice
5325 Broder Blvd.                       Office of the Attorney General
Dublin, CA 94568                        455 Golden Gate Avenue
                                        San Francisco, CA 94102-7004
                                        Attn: Sally Stevens
                                        Correctional Law Center

Dated: August 1, 2008

Clerk of the Superior Court

By: _____
Alex Muñoz, Deputy Clerk
Enclosed: Order Denying Petition for Writ of Habeas Corpus

(Rev. 5/3/07)

CLOSED, E-Filing, HABEAS, ProSe

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:08-cv-02417-MMC
#### Internal Use Only

Alexander v. Ahern et al
Assigned to: Hon. Maxine M. Chesney
Cause: 28:2255 Petition for Writ of Habeas Corpus (Federal)

Date Filed: 05/12/2008
Date Terminated: 06/26/2008
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**Robert J. Alexander, III**

represented by **Robert J. Alexander, III**
P07071
3-F-9-AYC-552
5325 Broder Boulevard
Dublin, CA 94568
PRO SE

V.

**Respondent**

**Warden Ahern**

**Respondent**

**State of California Prison Director**

**Respondent**

**Secretary James Tilton**
*Department of Corrections and Rehabilitations*

**Respondent**

**Matthew Cate**
*Inspector General*

**Respondent**

**The California Correctional Peace Officers Associates**
*Direct & finance the political campaign for the Governor of California*

**Respondent**

**Arnold Schwarzenneggar**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/12/2008 | 1 | PETITION for Federal Writ of Habeas Corpus and Memorandum of Points and Authorities in Support Thereof; (No Process); (IFP Pending). Filed byRobert J. Alexander, III. (aaa, Court Staff) (Filed on 5/12/2008) (Entered: 05/14/2008) |

| 05/12/2008 | 2 | Letter from Clerk requesting a signed and completed IFP application or filing fee of $5.00. (aaa, Court Staff) (Filed on 5/12/2008) (Entered: 05/14/2008) |
| 05/12/2008 | | CASE DESIGNATED for Electronic Filing. (aaa, Court Staff) (Filed on 5/12/2008) (Entered: 05/14/2008) |
| 06/26/2008 | 3 | ORDER OF DISMISSAL. Signed by Judge Maxine M. Chesney on June 26, 2008. (mmcsec, COURT STAFF) (Filed on 6/26/2008) (Entered: 06/26/2008) |
| 06/26/2008 | 4 | JUDGMENT: The above-titled action is hereby DISMISSED without prejudice. (tl, COURT STAFF) (Filed on 6/26/2008) (Entered: 06/26/2008) |

C08-        MMC
EXHIBITS
TAPES
(KEEP IN COURT FILE - for FRC)

U.S

PRIORITY® MAIL

UNITED STATES POSTAL SERVICE

Visit us at usps.com

Label 107R, January 2008

UNITED STATES POSTAL SERVICE

0000

94102

U.S. POSTAGE
PAID
SAN RAMON CA
94583
AUG 14 09
AMOUNT
$0.00
00033747-47

MINNESOTA

USPS
AUG 14 2008
SAN RAMON CA 9458

USPS
AUG 2008
RAMON CA 9

RECEIVED

AUG 18 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

MR. R.J. Alexander III
POTOTI, AYC-552
5325 Broder Bl. 9B-14
Dublin, CA. 99568
Pro-Se

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVE.
San Francisco, CA. 94102
Federal Building & U.S. courthouse

TO:
court clerk;
re: MAXINE M. CHESNEY
{United States District Judge}

IATI

Confidential & Personal



FOREVER

Twenty
First-Class
Stamps

(a) Two
* Cassette Tapes enclosed *

* Legal Documents/TranScripts

8-10-08

P07071 & AYC 352

IN Pro·Per

- U.S. LEGAL MAIL -

PERSONAL & CONFIDENTIAL

- U.S. LEGAL MAIL -